1  **JOE HILL**

2  HILL LAW OFFICES
   P.O. Box 500917

3  Saipan, MP 96950
   Tel.: (670) 234-6806/7743

4  Fax:  (670) 234-7753

5  Attorney for Plaintiffs

6

7  **IN THE UNITED STATES DISTRICT COURT**
   **FOR THE**

8  **NORTHERN MARIANA ISLANDS**

9

**CV 05    0010**

Civil Action No. 05-_____

**COMPLAINT**

1. **ABELLANOSA, JOANNA**
2. **ALVARADO, MARISSA**
3. **ANTATICO, NORA**
4. **APIT, LOLY**
5. **AQUINO, RUSSEL**
6. **ARANDA, MARLOU**
7. **ARCEGA, PRECILLA**
8. **ASIA, ANGELITA**
9. **BAAY, CRISTINA**
10. **BALBIDO, MARISSA**
11. **BALCITA, AMALIA**
12. **BALICHA, ESTELITA, E.**
13. **BANAAG, EVELYN**
14. **BANGUILAN, TERESITA**
15. **BANTILLO, DELMA**
16. **BASTO, ZENAIDA**
17. **BAUTISTA, CONSOLITA**
18. **BERNARDINO, EVA**
19. **BUTIC, TERESITA**
20. **CABANIT, ANASTACIA**
21. **CAPACITE, EMERITA**
22. **CARAIT, RUBY**
23. **CAVA, MARITA**

F I L E D
Clerk
District Court

MAR 31 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**JOE HILL**
Attorney at Law
Hill Law Offices ~ Susupe
P.O. Box 500917 ~ Saipan MP 96950 ~
TEL: (670) 234-6806/7743 ~ FAX: (670) 234-7753

ORIGINAL

24. CHAVEZ, EVANGELINE
25. CONCEPCION, ANDREA
26. CONTEMPLACION, NELIDA
27. CORREA, HAIDE
28. CRUZ, HELEN
29. CRUZ, AGNES
30. DELA CRUZ, MA. ROSARIO
31. DELOS SANTOS, ELENA
32. DOMINE, CORAZON
33. DUGAY, NOMIELADA
34. FAJARDA, AMELITA
35. GADIANE, MARILYN
36. GASES, NENITA
37. GELERA, EIREEN
38. GONZALES, GUADALUPE
39. HERNANDEZ, WENDELINE
40. INOPIQUEZ, ROSALINDA
41. LADIA, VICTORIA
42. LEJANO, ANGELA
43. LOZANO, NELIA
44. MACLANG, MARIDETH
45. MAGNAYE, BEATRIZ
46. MANZANILLA, EDELITA
47. MATEO, MARLA
48. MENDOZA, BELINDA
49. MIRANDA, AMALIA
50. MOLINA, ELIZABETH
51. MONSALUD, EVA
52. NABOR, CELESTINA
53. NAVIDA, MARICHU
54. NIMO, EULALIA
55. NIPAYA, LEONILA
56. NISPEROS, JENITA
57. NUEVA, MARITES
58. OLERMO, RUBY
59. PANGAN, MARITA
60. PANGELINAN, TERESITA
61. PASCUA, DYNA
62. PASCUAL, MYRNA
63. PELEGRINO, ADORACION
64. PERFECTO, CHARITO

65. POMAREJOS, GLORIA
66. QUIPOT, MERCIA
67. RELEVANTE, ADORA MAE
68. REYES, AMELIA
69. SALVADOR, JANNA
70. SAPIANDANTE, MILA
71. SORIANO, MARIETTA
72. TAPIADOR, TERESA
73. TEBERIO, JESSICA
74. TOBIAS, JOCELYN
75. VALDOZ, SHEROWIN
76. VILLANUEVA, MARIBEL,

Plaintiffs,

v.

L&T INTERNATIONAL
CORPORATION,

Defendant.

NOW COMES the Plaintiffs, by and through counsel, and as their claims and causes of action against Defendant L&T International Corporation (L&T), allege and aver as follows:

# I
## JURISDICTION AND VENUE

1.    This action is brought under the Fair Labor Standards Act, 29

U.S.C. §§ 201 *et seq.* (hereinafter designated as "FLSA") made applicable to this action by the COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA, Article V, § 502(a)(2). Specifically, jurisdiction is conferred upon this Court pursuant to Section 16(b) of the FLSA, 29 U.S.C. Section 216(b).

2.    The Court is granted jurisdiction over Plaintiffs' FLSA claims under 28 U.S.C. § 1331 (federal question jurisdiction), and as proceedings arising under an Act of Congress regulating commerce pursuant to 28 U.S.C. § 1337(a).

3.    The Court has jurisdiction over Plaintiffs' wage claims pursuant to 29 U.S.C. § 216(b).

4.    The Court also has jurisdiction based on diversity of citizenship in that each plaintiff is a citizen of the Republic of the Philippines while, on information and belief, Defendant L & T Corporation is a corporation organized and existing under the laws of, and with its main office located in, Saipan, CNMI and is a domiciliary of the CNMI. The individual claims of each plaintiff against the defendant in this matter, exceed and is more than $

75,000.00, exclusive of costs and interest, pursuant to 28 U.S.C. § 1332.

5.     The Court's jurisdiction over plaintiffs' non-FLSA claims is granted pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

6.     The Court's authority to issue declaratory relief in this action is conferred by 28 U.S.C. § 2201 and § 2202.

7.     Venue is properly placed in this United States District Court for the Northern Mariana Islands in that all parties were present in, and all acts alleged and complained of occurred in the CNMI.

## II
## PARTIES AND CAPACITIES

8.     Plaintiffs are, each and all, citizens of the Philippines and, at all relevant times, resided in the CNMI and were employed by or suffered to work by defendant variously pursuant to written contracts for a fixed period of employment of one (1) year each, duly approved by the CNMI Department of Labor (DOL) pursuant to the Nonresident Workers Act (NWA), 3 N.Mar.I.Code § 4411, *et. seq.*

9.     Plaintiffs, at all pertinent times, were employed and worked as packers of garments by and for defendant in an enterprise engaged in

Page 5

commerce and the production of goods for interstate and international commerce, such that garments worked on and made by plaintiffs were shipped by defendant in interstate and international commerce from the CNMI to various places in the United States of America and other countries.

10.    Defendant **L&T International Corporation**, on information and belief, at all pertinent times, was a domestic corporation with its head office and factory located in Saipan, CNMI, whose primary business was and is the production of garments for interstate and international distribution and sale outside of the CNMI and was and is engaged in the business of production of goods for and shipment in, interstate and international commerce.

11.    Defendant L&T was the employer of each plaintiff, at all pertinent times herein, within the meaning of FLSA § 203(e)(1) and the Minimum Wage and Hours Act (MWHA), 4 N.Mar.I.Code §9211, *et. seq*.

### III
### FACTUAL BACKGROUND

### A.
### Facts in Common to Each Individual Plaintiff

12.    Each plaintiff is female, an alien, a foreign national, and a citizen

of the Republic of the Philippines.

13.    Certain of the plaintiffs were authorized to work for L&T by the Department of Labor's approval of Conditional Grant of Transfer, premised on L&T's promises and representations set forth in the Department of Labor (DOL) form entitled Declaration of Accepting Employer, executed and signed by defendant and each of the said-certain plaintiffs and approved by DOL on various dates between March 2004 to May 2004.  Attached as **EXHIBIT "1"** hereto and incorporated herein by this reference is a list of those plaintiffs hired pursuant to Conditional Grants of Transfer.

14.    Certain of the plaintiffs were authorized to work for L&T by DOL's approval of Consensual Grant of Transfer agreements between the workers' previous employers and the new employer, Defendant L&T. Attached as **EXHIBIT "2"** hereto and incorporated herein by this reference is a list of those plaintiffs hired pursuant to Consensual Grants of Transfer agreements.

15.    Defendant L&T, by and through its employee and agent, Baby Lopez, employed by defendant in its Human Resources Department, required and demanded as a condition to hiring, employing, and contracting

of each plaintiff with L&T, that each plaintiff must provide for and/or pay their physical examination and health clearance fees. Implicit in this demand and condition was that plaintiffs would not be hired unless plaintiffs agreed to and provided for or paid for said examination and health fees.

16.    As an inducement for each plaintiff agreeing to pay for their said first year examination and health clearance fees, Defendant L&T, by and through its agent, Ms. Lopez, promised and represented to each plaintiff that L&T would pay for each plaintiff's physical examination and health clearance fees, beginning with their second year of employment with L&T. Implicit in Lopez' statement was that plaintiffs would have and would be given employment and work during their respective one (1) year contracts and that thereafter plaintiffs would be renewed unless plaintiffs were terminated for good cause.

17.    In committing and making the above described acts, promises, and statements, Ms. Lopez was acting as an agent of L&T and within the scope of her authority or on the express instruction and direction of L&T and/or L&T ratified said acts and conduct.

18.    Defendant L&T made the aforesaid promises and representations

through its agent, Ms. Lopez or ratified the same for the purpose of inducing each plaintiff to accept employment with and to work for L&T for defendant's benefit, and to take advantage of each plaintiff's experience, expertise, and labor.

19.    As a result of defendant's and its agent's representations and promises, each plaintiff was reasonably led to believe, rely on and understand that they would be renewed and employed with L&T for a minimum of one (1) year and that their contract would be renewed for a second term of one year upon expiration.

20.    Each plaintiff accepted employment with L&T in reliance upon defendant's representations and implicit promise that plaintiffs would be renewed at the end of their first year contract, if plaintiffs' work performance were satisfactory and plaintiffs were not terminated for good cause.

21.    Based on said Defendant L&T and its agent's representations and promises of continued employment and employment renewal, each plaintiff reasonably relied thereon and were led to believe that they would be renewed and employed with L&T for a minimum of one (1) full year .

22.    Certain of the plaintiffs in reliance on said representations and promises of L&T and its agents, paid for both their physical examination and

Page 9

health clearance fees in reliance on and believing their employment would be for a full year's work. Attached as **EXHIBIT "3"** hereto and incorporated herein by this reference is a list of those plaintiffs who paid both said physical examination and health clearance fees.

23.   Certain of the plaintiffs, in order to obtain employment with L&T, and relying on its representations and promises, paid their own physical examination fees.   Attached as **EXHIBIT "4"** hereto and incorporated herein by this reference is a list of those plaintiffs who paid their physical examination fees.

24.   Certain of the plaintiffs, in order to obtain employment with L&T were required by L&T and its agents to use their then yet valid health clearance certificates from their previous employment in lieu of the employer, L&T, paying for said cost and fees. Attached as **EXHIBIT "5"** hereto and incorporated herein by this reference is a list of those plaintiffs required by L&T to so use their own previously obtained health clearance certificates.

25.   On information and belief, a majority of the workers employed by Defendant L&T are Chinese nationals and citizens but their contracts and employment were and are not so conditioned on said Chinese workers

providing or paying for said physical examination and health certificate fees, as those of the plaintiffs. Furthermore, on information and belief, there are no other employees of Defendant L&T whose employments or contracts were and are so conditioned, except for plaintiffs who are Filipinos.

26.    Prior to and at the time each plaintiff individually executed and signed their respective employment contract with L&T, plaintiffs were lawful residents of the CNMI, each having been granted lawful entry under earlier approvals/entry authorization(s) by DOLI.

27.    Each plaintiff and Defendant L&T executed and entered into written employment contracts for a term of one (1) year.

28.    Under their respective contracts, L&T promised to pay each plaintiff $ 3.05 per hour and time and a half for overtime work, payable bi-weekly.

29.    Under the said employment contracts, Defendant prohibited each individual plaintiff from "without the consent of the [L&T] in writing first obtained, for a period of one year after [plaintiffs'] employment ceases either by resignation, termination, expiration of permit, or other causes, enter the employ of or render services to any person, firm, partnership, or corporation dealing in products or services which compete with any products

of or services of L&T or engage in any competing business on [plaintiffs']
own account or become interested therein as director, principal,
representative, employee or in any relationship or capacity."

30.    The said referenced employment contract(s) was a form contract
and, on information and belief, a contract of adhesion, prepared and drafted
in advance by defendant and/or its counsels and presented to each plaintiff
on a take it or leave it basis without negotiation.  Attached as **EXHIBIT "6"**
hereto and incorporated herein by this reference is a representative copy of
said contract form.

31.    On information and belief, defendant, as required by the NWA,
executed with the Director of Labor, for each Plaintiff, an Employer's Non-
Resident Worker Agreement, to which each Plaintiff is a third-party
beneficiary.  Attached as **EXHIBIT "7"** hereto and incorporated herein by
this reference is a standard form of said Non-Resident Worker Agreement.

32.    Under the said third-party beneficiary agreement, defendant shall
be responsible for all "expenses required by law of any nonresident worker"
which include physical examination and health clearance fees.

33.    The said third-party beneficiary agreement also requires
defendant to provide each plaintiff a minimum of forty (40) hours of work

per week, at all times, for the duration of each Plaintiff's respective employment contract.

34. On or about May 12, 2004, Ma. Luisa Dela Cruz-Ernest, as the Human Resources Manager and agent of Defendant L&T, gave each plaintiff a document entitled "Notice of Termination" based on the stated ostensible grounds and reasons of "due to the on-going re-engineering and reduction in force due to economic necessity." Attached as **EXHIBIT "8"** hereto and incorporated herein by this reference is a representative copy of the said termination notice.

35. Defendant L&T terminated plaintiffs *en masse*, without individualized considerations of the legal rights, status, and condition of each plaintiff under their respective contracts, without and in contravention of each plaintiff's rights to due process. Furthermore, defendant did not consider or interview each plaintiff about their respective qualifications for other jobs and positions available through L&T, its affiliate and sister companies including Tan Holdings Corporation, and did not in good faith explore other alternatives to firing plaintiffs.

36. On information and belief, Defendant L&T, after plaintiffs' termination hired and brought into the CNMI new Chinese workers from

the People's Republic of China to fill various positions in the company (L&T), its subsidiaries, and other garment factories affiliated with, owned or controlled by L&T.

## V
## CAUSES OF ACTION

**First Cause of Action**
Defendant's Breach of Contract by Requiring Plaintiffs to
Pay for Costs of Physical Examination and Health Clearance

37.    The allegations in paragraphs 1 through 36 are re-alleged and incorporated by reference in this First Cause of Action.

38.    At all relevant times herein, defendant was required by 3 CMC § 4438(b) and the employment contract, to pay the cost of required physical examinations and for health clearance certificates of plaintiffs as nonresident workers.

39.    At all relevant times herein, defendant was required by the Non-Resident Worker Agreement to which each plaintiff is a third-party beneficiary, to be responsible for payment of each plaintiff's physical examination and health clearance fees which are employer expenses.

40.    Each plaintiff was required to either pay or provide for, her physical examination fees or health clearance fee or both, by defendant, as set forth in EXHIBITS "3," "4" and "5" attached hereto.

41.    Notwithstanding, L&T shifted its burden and obligation to pay or provide for said examinations and fees to plaintiffs by requiring that plaintiffs pay for or provide said services as a condition to their employment.

42.    Defendant's failure and refusal to pay for or provide the physical examination and health clearance fees of plaintiffs was in breach of contract and of the specific promise of defendant to pay said fees as set forth in the Non-Resident Worker Agreement between defendant and the Director of Labor.

43.    Defendants' failure and refusal to pay the physical examination and health clearance certificate fees of plaintiffs, was a breach of their respective employment contracts and the Employer's Agreement executed by Defendant L&T and the Director of Labor of which plaintiffs are third-party beneficiaries, and constituted a violation of Section 4438(b) of the NWA.

44.    Defendant is thus liable to plaintiffs for the amount or value of the physical examination fees and health clearance fees paid by plaintiffs, plus prejudgment interest, and an additional amount as liquidated damages thereon under the NWA.

**Second Cause of Action**
Failure to Pay Under FLSA and the NWA

45.    The allegations in paragraphs 1 through 44 are re-alleged and

1    incorporated by reference in this Second Cause of Action.

2        46.    As a result of defendant requiring plaintiffs to pay or provide for

3    their respective physical examination and health clearance fees, said plaintiffs

4    received or were paid less than the minimum wage and overtime wages

5    prescribed under FLSA and the NWA for the respective pay periods.

6

7        47.    Alternatively, defendant's acts in requiring plaintiffs to pay or

8    provide said fees and services constitute and are deemed unauthorized

9    deductions from wages resulting in each plaintiff being paid less than the

10    minimum wage and applicable overtime wage rate.

11

12                    **Third Cause of Action**
                Supplemental Claim for Unlawful Termination
13                    and Bad Faith Breach of Contract

14        48.    The allegations in paragraphs 1 through 47 are re-alleged and

15    incorporated by reference in this Third Cause of Action.

16

17        49.    Defendant's termination of plaintiffs was unlawful and a breach

18    of each plaintiff's respective employment contract and the Non-Resident

19    Worker Agreement, because there was no just or valid cause for termination

20    and the terminations were in contravention of the employment contracts and

21    the Department of Labor's rules and regulations regarding termination.

22        50.    Defendant did not consider or explore other alternatives to the

23
                            Page 16

*en masse* termination of plaintiffs, such as re-assignment to other work, jobs or positions within the company or its subsidiaries or its other affiliated, owned or controlled companies, the defendant's acts and terminations were thus not done in good faith, were pretextual, unlawful, and taken in bad faith.

51.    Plaintiffs are therefore entitled to recover from defendants as damages their full contract wages and other lost benefits under their employment contracts had plaintiffs been allowed to perform and work through the unexpired term of their respective employment contracts, in an amount to be proven at trial.

### Fourth Cause of Action
Supplemental Claims for Breach of Express, Implied-in-Fact and Implied-in-Law Covenants of Good Faith and Fair Dealing

52.    The allegations in paragraphs 1 through 51 are re-alleged and incorporated by reference in this Fourth Cause of Action.

53.    Plaintiffs' employment contracts each contained express, implied-in-fact and implied-in-law covenants of good faith and fair dealing that neither party would do anything to prevent the other from performance under the contract or to enjoy the benefits of the contract.

54.    In terminating plaintiffs without good and valid cause as herein

described, defendant acted in bad faith and breached said covenants of good faith and fair dealing of the contracts, with the intent of depriving plaintiffs of the benefits that each plaintiff reasonably expected to receive under their respective employment contracts.

55.   As a direct and proximate result of defendant's actions and conduct, plaintiffs suffered substantial and severe economic loss in benefits and wages under their contract.

56.   Alternatively, the promises and representations of defendant and its agents described herein constituted a representation and promise by defendant that each plaintiff would be employed and given work for one full year, and that thereafter the contracts would be renewed for an additional year.

57.   Defendant L&T, its agents and employees, in representing and telling plaintiffs that if plaintiffs paid or provided for their medical examination and health certificate fees for the first year, that the company, L&T, would pay said fees thereafter, beginning with the first renewal of their one-year contract, made said promises and representations knowing or reasonably should have known that Plaintiffs would rely on said defendant's promise and assurance that each plaintiff's contract would be renewed for an

additional year upon expiration of the first year contract.

58.    Plaintiffs did in fact act in reliance on defendant's promises and representations to their detriment and damage.

59.    Defendant's conduct and acts were done intentionally, maliciously, and oppressively and in conscious disregard of plaintiffs' rights and constituted a willful breach of the express and implied covenants of good faith and fair dealing of the contracts, thus, entitling each plaintiffs to an award of special, compensatory, consequential, and exemplary damages in an amount to be proven at trial and an equitable award of attorney's fees.

### Fifth Cause of Action
Intentional Infliction of Emotional Distress

60.    The allegations in paragraphs 1 through 59 are re-alleged and incorporated by reference in this Fifth Cause of Action.

61.    Defendant's acts and conduct in terminating plaintiffs, without just or valid cause , were malicious, deliberate and intentional and designed to, and defendants knew or should have reasonably known would, cause plaintiffs severe emotional distress, mental anguish, and did cause such distress and damage.

62.    Defendant in so terminating plaintiffs acted without care for

1  of attorney's fees for defendant's intentional infliction of emotional distress,

2  in an amount to be proven at trial.

3

4  ## Sixth Cause of Action
Fraud and Deceit

5

6  66.    The allegations in paragraphs 1 through 65 are re-alleged and

7  incorporated by reference in this Sixth Cause of Action.

8  67.    At the time defendant and it agents made said promises,

9  representations and executed the employment contract with plaintiffs, it

10  knew or should have reasonably known that because of its ostensible "on

11  going re-engineering" and "reduction in force due to economic necessity", it

12  could not, or did not, want to employ plaintiffs with full-time employment

13  of 40 hours a week under one-year renewable contracts.

14

15  68.    On information and belief, at all pertinent times, defendant was

16  thus aware of its true economic condition and that it would not be able to

17  employ and provide work to plaintiffs under their said contracts for a term

18  of one (1) year.

19

20  69.    Notwithstanding, defendant, with knowledge of its economic

21  and financial condition represented and misrepresented to plaintiffs that they

22  could reasonably rely on and expect employment for at least one year, with

23

Page 21

their individual rights and without consideration of each plaintiff's individualized needs, merits, experience under each plaintiff's respective contract. Defendant terminated plaintiffs *en masse* in complete disregard, violation and breach of the express and implied covenants of good faith and fair dealing of each contract.

63.    Defendant's acts and conduct were deliberate, intentional, malicious, and outrageous, and were so extreme, atrocious, and outrageous, they shock the conscience and go beyond all bounds of decency and cannot be tolerated in a civilized community, and were done with the intent to, and in fact did cause, each plaintiff severe emotional distress and mental anguish.

64.    As a direct and proximate result of defendant's deliberate, intentional, malicious, outrageous, and atrocious acts, each plaintiff suffered, now suffers, and will continue to suffer physical, psychological, and severe and extreme emotional distress, anxiety, insomnia, mental anguish, and fear, that no reasonable person should be expected to endure, as a result of which each plaintiff has suffered damages, and in the future will continue to suffer damages.

65.    Plaintiffs are therefore entitled to recover from defendant an award of special, compensatory, and punitive damages and an equitable award

a promise of renewal for an additional second year with defendant.

70.    The statements made by L&T to plaintiffs, through its agent Lopez, that <u>beginning with plaintiffs' second year or renwal contract</u>, defendant would pay each year thereafter plaintiffs' medical examination and health certificate fees was false when made or defendant and Lopez failed to exercise reasonable care or competence in communicating to plaintiffs that the company (L&T) intended and would pay said fees beginning with their first renewal contract. Lopez had the means to know, ought to have known or had the duty to know that her statement was a misrepresentation to plaintiffs. Plaintiffs justifiedly relied on Lopez' statement to their detriment.

71.    As the result of the said actions and conduct of defendant, Plaintiffs were caused and have suffered lost pay and benefits, mental pain and anguish, loss of esteem, physical pain and suffering. The plaintiffs therefore seek and are entitled to compensatory and punitive damages, costs and an equitable award of attorney's fees.

72.    The foregoing described deceit, failure to communicate, acts and conducts of defendant constitute fraud and were done willfully, maliciously, fraudulently, and with reckless disregard for plaintiffs' rights.

73.    As a result of defendant's misrepresentation, fraud and deceit,

1    each plaintiff suffered damages, including but not limited to lost income,

2    benefits, special and consequential damages in an amount to be proven at

3    trial.

4

5                        **Seventh Cause of Action**
                Claim for Declaratory Relief for Return Air Fare
6

7        74.    The allegations in paragraphs 1 through 73 are re-alleged and

8    incorporated by reference in this Seventh Cause of Action.

9        75.    Under the contracts of each plaintiff and pursuant to the NWA,

10   defendants are obligated to provide and pay for the return transportation fare

11   of each plaintiff to their point of hire in the Philippines.

12
     76.    Plaintiffs therefore seek and are entitled to a declaration of the
13
14   Court, of their rights and entitlement to have defendants pay and provide for

15   their return transportation cost to their point of hire in the Philippines.

16

                            **PRAYER FOR RELIEF**
17

18       **WHEREFORE**, Plaintiffs pray for relief as follows:

19       1.    An award of compensatory damages and reimbursements of fees

20   paid or the reasonable costs of said physical examination and health certificate

21   fees, an equal amount as liquidated damages, and prejudgment interest, under

22
     the First Cause of Action;
23

2.    An award of compensatory damages, plus an equal amount as liquidated damages, prejudgment interest, costs and reasonable attorney's fees under the Second Cause of Action;

3.    An award of compensatory damages for lost wages and benefits through the unexpired term of each plaintiff's respective employment contract, in an amount to be proven at trial, plus an equal amount as liquidated damages, costs and reasonable attorney's fees, and prejudgment interest under the Third Cause of Action;

4.    An award of special, compensatory, consequential, and exemplary damages in an amount to be proven at trial, an equal amount as liquidated damages, prejudgment interest, costs, and an equitable award of reasonable attorney's fees under the Fourth Cause of Action;

5.    An award of special, compensatory, and punitive damages in an amount to be proven at trial, an equal amount as liquidated damages and prejudgment interest, costs, and reasonable attorney's fees  under the Fifth Cause of Action;

6.    An award for lost wages, benefits, special, consequential, punitive damages, and attorney's fees in an amount to be proven at trial under the Sixth Cause of Action;

7. For a declaration that defendants are obligated to pay for the costs of the return transportation of plaintiffs under their contracts and pursuant to the NWA under the Seventh Cause of Action.

8. For temporary work authorization during the pendency of this matter;

9. For transfer relief; and

10. Such other and further relief as may be deemed proper at law and in equity.

SIGNED this 31st day of March 2005.

_____
JOE HILL
Attorney for Plaintiffs

c:DC.C.A.05.tan holdings.complaintt/mario

Page 25