FILED
Clerk
District Court

SEP 01 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

Colin M. Thompson, Esq.
Law Offices of Colin M. Thompson
J.E. Tenorio Building
PMB 917 Box 10001
Saipan, Mariana Islands 96950
Telephone: (670) 233-0777
Facsimile:  (670) 233-0776

*Attorney for Defendant*

## IN THE DISTRICT COURT

## FOR THE

## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ABELLANOSA, JOANNA, ET.AL. ) | Civil Action No. 05-0010 |
| ) | |
| Plaintiffs, ) | |
| ) | MEMORANDUM IN SUPPORT |
| vs. ) | OF MOTION TO DISMISS |
| ) | |
| L & T INTERNATIONAL CORPORATION. ) | |
| ) | Date : September 29, 2005 |
| ) | Time : 9:00 a.m. |
| Defendant. ) | Judge : Hon. Alex R. Munson |
| _____ ) | |

### MEMORANDUM

On March 31, 2005, Plaintiff filed the Complaint. Defendant, L&T International Corporation ("L&T") now moves to dismiss Plaintiffs' entire causes of action for the First, Second, and Seventh causes of action.

### ARGUMENT

In ruling on a motion to dismiss, all allegations of material fact are to be construed as true and the court should not dismiss a plaintiff's claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gilligan v. Jamco Development Corp.,* 108 F.3d 246, 248 (9th Cir.1997). "The Supreme Court has explained that it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test. In

1

reviewing the sufficiency of a complaint, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* at 249 (internal quotation marks and citations omitted). A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988). Dismissal is warranted where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984). In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers,* 812 F. 2d 1173, 1177 (9th Cir. 1987). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents are attached to the complaint and matter of which the court takes judicial notice. *Venettan Casino Resort L.L.C. v. Cortez,* 96 F. Suppp.2d 1102, 1106 (D. Nev. 2000). Leave to amend may be granted where the court can "conceive of facts that would render plaintiff's claim viable" or "if it appears at all possible that the plaintiff can correct the defect" and the court can "discern from the record no reason why leave to amend should be denied." *Balistreri* at 701. For the reasons stated below, the First, Second and Seventh causes of action should be dismissed.

A.  **PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION SHOULD BE DISMISSED**

The Plaintiffs' first and second causes of action rely fundamentally on the faulty legal proposition that L&T was required to pay for the costs of physical exams and health clearance

certificates for the plaintiffs. Plaintiffs rely on the CNMI statute 3 CMC §4438 (b) to support their proposition. (Complaint at ¶ 38.) 3 CMC §4438 (b) provides

> "The secretary may require the worker, together with any accompanying family member, to undergo a physical examination in the Commonwealth performed by any medical physician licensed to practice general medicine in the Commonwealth by the Commonwealth Medical Professional Licensing Board, within 10 working days of initial entry into the Commonwealth of a nonresident worker for employment under this chapter or, if the worker is already present in the Commonwealth for some other purpose, within 10 working days after the director issues a nonresident worker identification certificate for the worker. Any family member preceding or following the nonresident worker to the Commonwealth may also be required to undergo a medical examination by a medical physician licensed to practice general medicine in the Commonwealth by the Commonwealth Medical Professional Licensing Board within 10 working days after entry into the Commonwealth. **The cost of any examination of a nonresident worker shall be borne by the employer.** The cost of any examination of a member of the family of any nonresident worker shall be borne by either the worker or the employer, as the employment contract shall provide. The director shall by regulation provide for annual physical examination of nonresident workers and family members in the Commonwealth by any medical physician licensed to practice general medicine in the Commonwealth by the Commonwealth Medical Professional Licensing Board when employment under this chapter will continue for more than one year. The cost of all examinations under this section shall reflect the total cost, including physician fees, of providing the examinations. Any nonresident worker or immediate family member who fails to comply with this section shall be subject to immediate deportation to the point of origin. All costs of repatriation of the nonresident worker shall be the responsibility of the employer." (Emphasis added)

As alleged, this statute is inapplicable to the Plaintiffs because they were not employees at the relevant time.

L&T does not dispute that an employer must cover the costs of an employees medical exam. However, as evident from the complaint pursuant to the standards applicable to this Rule 12 motion, the

plaintiffs were not employees at the time L&T requested them to pay for their medical exams and health clearances. Plaintiffs allege that L&T required "plaintiffs pay for or provide said services as a condition to their employment." (Complaint at ¶ 41.) Allegations elsewhere in the complaint confirm that this was a <u>condition precedent</u> to employment. Paragraph 15 of the Complaint alleges: " Defendant, L&T, by and through its employee and agent, Baby Lopez, employed by defendant in its Human Resources Department, required and demanded <u>as a condition to hiring, employing and contracting of each plaintiff with L&T</u>, that each plaintiff must provided for and/or pay their physical examination and health clearance fees. Implicit in this demand and condition was that plaintiffs would not be hired unless plaintiffs agreed to and provided for or paid for said examination and health fees." Because the Plaintiffs were not employees, L&T was not required to pay for their medical exams and/or health clearances.

Furthermore, as is clear from the allegations of the Complaint,[1] all of the plaintiffs were, at the time hired by L&T, non-resident workers with employers in the Commonwealth of the Northern Mariana Islands. Therefore, under the law cited in the Complaint for the proposition that L&T charged an illegal fee, it is clear that each of the plaintiffs' employers prior to transfer were responsible for paying any fees for medical examinations and Health clearances required by their prospective employer, L&T. Accordingly, the First and Second causes of action should be dismissed.

B.  **<u>PLAINTIFF'S CLAIM FOR NEGLIGENT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED</u>**

To maintain a cause of action for the intentional infliction of emotional distress requires proof of four elements: (1) that the conduct complained of was outrageous; (2) that the conduct was intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. See *Arriola v.*

---

[1] Exhibits 1 and 2 to the Complaint set forth the names of the plaintiffs who transferred from another CNMI employer to L&T.

*Insurance Company of North America,* 2 C.R. 113, 121 (Com.Tr.Ct. 1985), citing *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 at 1273 (10th Cir. 1979). Other jurisdictions have stated the requirements of a prima facie showing of intentional infliction of emotional distress as follows: (1) defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct, (2) conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community, (3) actions of defendant caused plaintiff's emotional distress, and (4) emotional distress suffered by plaintiff was so severe that no reasonable person could be expected to endure it. *Smith v. Heritage Salmon, Inc.,* 180 F. Supp. 2d 208 (D. Me. 2002). In the employment context, under Arkansas law, plaintiff employee was required to show that (1) defendant employer intended to inflict emotional distress or knew or should have known emotional distress was likely result; (2) employer's conduct was extreme, outrageous, and utterly intolerable in civilized community; (3) employer's actions caused anguish or distress to employee; and (4) emotional distress suffered was severe and of a type that no reasonable person should be expected to endure. *Rorie v. United Parcel Service, Inc.,* 151 F.3d 757, 77 Fair Empl. Prac. Cas. (BNA) 512, 73 Empl. Prac. Dec. (CCH) ¶ 45425 (8th Cir. 1998), reh'g and suggestion for reh'g en banc denied, (Sept. 4, 1998). Case law throughout all jurisdictions almost uniformly rejects the application of intentional infliction of emotional distress to employment termination cases because termination of employment, although usually unpleasant, is not usually so outrageous as to exceed all possible bounds of decency, regarded as atrocious and utterly intolerable in a civilized community.

Comment to Restatement §46 reserves for the courts to the duty to guard the gateway for a causes of action for intentional infliction of emotional distress. Historically, courts are reluctant become embroiled in petty disputes that cause someone to feel emotionally disturbed and distressed. It

is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Testing the facts pleaded in the instant case against the threshold requirements for the statement of a cause of action, the court should find that the defendant's conduct was not sufficiently outrageous severe to raise jury questions as to liability.

Restatement (Second) of Torts § 46 governs a claim for infliction

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time, 15 whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm.

The commentary to Restatement § 46 states that:

> d.. *Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the ease is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The conduct of L & T can not be characterized as outrageous. In *Hirschheimer v. Associated*

*Metals & Minerals Corp.,* 1997 U.S. Dist. LEXIS 12838 (S.D. N.Y. 1997) "six-month "campaign of harassment"... leading to his unlawful termination... falls far short of the extreme and outrageous conduct "utterly intolerable in a civilized society" that is necessary for an intentional infliction of emotional distress claim." See also *Sigmon v. Parker Chapin Flattau & Klimpl,* 901 F. Supp. 667 (S.D.N.Y. 1995) (allegations in Title VII case that plaintiff was subjected to discriminatory comments due to her pregnancy and gender, criticized falsely for her attitude and work product, subjected to false rumors about her lack of work ethic, was not given work despite requests for more work, not invited to participate in certain firm activities in which she previously participated, and unlawfully terminated because of her gender and her pregnancy did <u>not</u> constitute claim for intentional infliction of emotional distress). Allegations in the Complaint are less egregious than the above cited cases and therefore the cause of action should be dismissed.

- The Plaintiffs contend that the circumstances of their termination was outrageous. Defendant's act and conduct in terminating plaintiffs, without just or valid cause, were malicious, deliberate and intentional and designed to, and defendants knew or should have reasonably known would, cause plaintiffs severe emotional distress, mental anguish, and did cause such distress and damage [Complaint at ¶ 61].

- Defendant in so terminating plaintiff acted without care for their individual rights and without consideration of each plaintiff's individualized needs, merits, experience under each plaintiff's respective contract. Defendant terminated plaintiffs en masse in complete disregard, violation and breach of the express and implied covenants of good faith and fair dealing of each contract [Complaint at ¶ 62].

These allegations are insufficient. Other Courts have found that the cause of action for intentional infliction of emotional distress could not survive. For example, a former teacher, terminated amidst rumors of sexual misconduct, failed to establish intentional infliction of emotional distress claim against school board under Illinois law based on his termination in allegedly illegitimate reduction-in-force (RIF), notwithstanding his contentions that RIF was pretextual and that school board defamed him. *Strasburger v. Board of Educ., Hardin County Community Unit School Dist. No. 1*, 143 F.3d 351, 126 Ed. Law Rep. 577, 13 I.E.R. Cas. (BNA) 1687 (7th Cir. 1998), reh'g and suggestion for reh'g en banc denied, (June 26, 1998) and cert. denied, 1999 WL 8065 (U.S. 1999). Another court held that the employer was not liable under Texas law for intentional infliction of emotional distress to sales representative terminated in reduction in force, based on representative's allegations that his sales figures were altered by employer to cast him as an incompetent and ineffective sales representative, that supervisor gave him a false sense of security, and that employer's defense counsel threatened to subpoena his current employer for his personnel records if he refused to produce them voluntarily. *Lupo v. Wyeth-Ayerst Laboratories*, 4 F. Supp. 2d 628 (E.D. Tex. 1997), related reference, 4 F. Supp. 2d 642 (E.D. Tex. 1997). In yet another example an employer's termination of 48-year-old employee did not even approach the level of outrageous, extreme, atrocious, or utterly intolerable conduct that would allow a jury to find liability on claim of intentional infliction of emotional distress, under Louisiana law. *Syle v. HSPV, L.L.C.*, 2 F. Supp. 2d 837 (E.D. La. 1998). Finally, a former employee failed to state cause of action for intentional infliction of emotional distress arising out of termination of employment, where employee failed to produce any evidence to show that employer acted in outrageous manner and employer had right to terminate employment under state law. *Marshall v Circle K Corp.* (1989, MD La) 715 F Supp 1341, 4 BNA IER Cas 947, affd without op (CA5 La) 896 F2d 550.

To be sustainable, a claim for outrageous conduct must be based upon action that is more egregious than either the conduct underlying a bad faith breach of contract claim or a willful and wanton breach of contract claim. *Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126 (Colo. Ct. App. 1998). In *Murphy v. American Home Products Corp.*, the Court of Appeals upheld dismissal of intentional infliction of emotional distress claim despite allegations that plaintiff was demoted for reporting fraud, informed he would never advance because of his age, discharged, ordered to leave immediately, forcibly and publicly escorted from the workplace by company guards when he returned to pick up his belongings, and subjected to having his belongings dumped into the street, because the alleged conduct fell "far short" of the standard of conduct necessary for such a cause of action), 58 N.Y.2d 293, 461N.Y.S.2d 232, 448 N.E.2d 86 (N.Y. Ct. App. 1983). In Connecticut, an employee did not allege that his termination was done in a manner that was so egregious or oppressive as to rise to the level of extreme and outrageous conduct, sufficient to permit reasonable jury to infer that employer's conduct was sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress. *Rose v. James River Paper Co.*, 2 F. Supp. 2d 245 (D. Conn. 1998). In Hawaii, allegations that employer discriminated against employees because of their Asian/Pacific Islander race were insufficient to state claim for intentional infliction of emotional distress under *Hawai'i law*. *Kahale v. ADT Automotive Services, Inc.*, 2 F. Supp. 2d 1295 (D. Haw. 1998). The allegations in the instant case do not support the cause of action for intentional infliction of emotional distress.

In sum, the Complaint alleges facts that fail to meet the threshold of outrageous behavior. The allegations are essentially those of a breach of contract. Accordingly, this Court should dismiss the Seventh cause of action with prejudice.

## **CONCLUSION**

Based on the foregoing, Defendant respectfully requests and order granting the motion to dismiss Plaintiffs' the First, Second and Seventh causes of action.

Respectfully submitted this 1st day of September, 2005.

_____
COLIN M. THOMPSON, ESQ.
Attorney for L&T International Corporation