**JOE HILL**
**HILL LAW OFFICES**
P.O. Box 500917
Saipan, MP 96950
Tel.: (670) 234-6806/7743
Fax: (670) 234-7753

Attorney for Plaintiffs

FILED
Clerk
District Court

SEP 15 2005

For The Northern Mariana Islands
By________
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN MARIANA ISLANDS**

**ABELLANOSA, JOANNA, *et. al.*,**

**Plaintiff,**

**v.**

**L & T INTERNATIONAL CORPORATION,**

**Defendant.**

**Civil Action No. 05-0010**

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**Date: September 29, 2005**
**Time: 9:00 a.m.**
**Judge: Hon. Alex R. Munson**

Plaintiffs hereby oppose Defendant's motion to dismiss the Complaint filed in the above-entitled matter.

## STANDARD OF REVIEW

Defendant moves to dismiss Plaintiffs' first, second, and seventh[1/] causes

[1/] The Seventh Cause of Action of the Complaint is for declaratory relief for return air fare. Defendant in its motion presented no argument or authority relative to the Seventh Cause of Action and the Court may and should deny Defendant any relief thereto.

JOE HILL
Attorney at Law
Hill Law Offices ~ Susupe
P.O. Box 500917 ~ Saipan MP 96950 ~
TEL: (670) 234-6806/7743 ~ FAX: (670) 234-7753

ORIGINAL

of action for failure to state a claim upon which relief can be granted. Specifically, Defendant asserts that the First and Second Causes of Action should be dismissed because they "rely fundamentally on the faulty legal proposition that L&T was required to pay for the costs of physical exams and health clearance certificates for the Plaintiffs." See, Memorandum in Support of Motion to Dismiss at pp. 2-4. Defendant further asserts that Plaintiffs' Seventh Cause of Action should also be dismissed because it "fails to meet the threshold of outrageous behavior." Id. at pp. 4-9.

In such a motion, all well-pleaded allegations of materials facts are taken as true and construed in the light most favorable to the plaintiff. Roe v. City of San Diego, 356 F.3d 1108 (9th Cir., 2004); American Family Association, Inc. v. City and County of San Francisco, 277 F.3d 1114 (9th Cir. 2002); *see also*, Sablan v. Tenorio, 4 N.M.I. 351, 355 (1996). Defendants can only prevail if Plaintiff can prove no set of facts under the alleged causes of action sufficient to state a claim for relief. Williamson v. General Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir., 2000).; *see also* Parks School of Business v. Symington, 51 F.3d 1480, 1484 (9th Cr. 1995); Steckman v. Hart Brewing, Inc., 143 F.3d 1293 (9th Cir. 1998). In a motion to dismiss, the burden is on the movant to prove that even in light of the facts and the reasonable inferences therefrom, Plaintiff's Complaint still fails to state a valid legal claim for relief. Gilligan v. Jamco Development Cor., 108 F.3d 246, 249 (9th

Cir. 1997) ("The Supreme Court has explained that it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test. In reviewing the sufficiency of a complaint, the issue is not whether a Plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."); *see also*, Govendo v. Marianas Public Land Corp., 2 N.M.I. 482, 490 (1992).

## ARGUMENTS

### I
### Defendant L&T, as an employer, is required by law and contract to pay for the costs of physical exams and health clearance certificates for the Plaintiffs pursuant to 3 CMC § 4438(b).

Defendant L&T concedes that pursuant to 3 CMC § 4438(b) "an employer must cover the costs of an employees [sic] medical exam." See, Memorandum in Support of Motion to Dismiss at p. 3, line 24. Defendant, however, contends that said statute is "is inapplicable to the Plaintiffs because they were not employees at the relevant time." Id. at p. 3, lines 22-23. (Emphasis added). This argument simply begs the question. Notably, Defendant fails to delineate what it contends to be the alluded "relevant time." Thus, as posited by Defendant, the determination of whether Plaintiffs are or were employees at the relevant times presents a mixed question of law and facts. The gravamen of L&T's argument is its bare contention that "[t]herefore, under the law cited in the Complaint for the

proposition that L&T charged an illegal fee, it is clear that each of the plaintiffs' employers prior to transfer were responsible for paying any fees for medical examinations and health clearances required by their prospective employer, L&T." Id. at p. 4, lines 14-15. This supposition is unsupported and in contravention of the plain reading of the NWA. 3 CMC § 4438(b), in relevant parts, reads:

> **The secretary may require the worker**, together with any accompanying family member, **to undergo a physical examination in the Commonwealth** performed by any medical physician licensed to practice general medicine in the Commonwealth by the Commonwealth Medical Professional Licensing Board, **within 10 working days of initial entry into the Commonwealth of a nonresident for employment under this chapter** or, **<u>if the worker is already present in the Commonwealth</u> for some other purpose, within 10 working days after the director issues a nonresident worker identification certificate for the worker**. * * * **<u>The cost of any examination of a nonresident worker shall be borne by the employer</u>**. * * *

There are two categories of workers identified and envisioned under Section 4438(b), i.e., (1) those aliens initially seeking entry for employment, and (2) those alien workers already present in the CNMI "for some other purpose." Section 4438(b), thus, does not distinguish between those workers who initially came into the CNMI and those "already present in the Commonwealth" so far as it relates to the employer's responsibility of paying for the subject medical examination costs. For both classes of workers, 3 CMC § 4438(b), unqualifiedly provides that

"[t]he cost of any examination of a nonresident worker" shall be borne by the employer." The mandate of the statute and the legislative intent is thus crystal clear; the statute on its face is unambiguous and is not in need of judicial interpretation to reach the conclusion that the "cost of any examination of its nonresident workers shall be borne by the employer." A reasonable and logical interpretation of this Code Section 4438(b) is that the person or company then presenting for approval an employment application to DOL to employ (hire) the potential alien worker, is the referenced "employer" to bear the examination costs of its intended worker.

L&T's attempt and argument to shift its responsibility to pay for its workers statutorily required medical examinations, is disingenuous, and, in light of the clarity of Section 4438(b) and the widely known practice and policy of DOL in requiring the employers submitting the employment application to pay the medical examination fees, frivolous and made in bad faith. See, Fed. R. Civ. P. Rule 11. Notably, L&T cites no supporting case authority or other authority in support of its strained and contrived proffered interpretation of the law.

Defendant L&T further attempts to find refuge in Plaintiffs' allegations to support its "not employees" theory. It asserts that Plaintiffs' allegation in the Complaint that the payment of the medical exams and health clearance fees was a "condition to [Plaintiffs'] employment" and that it was "a condition to hiring,

employing and contracting of each plaintiff with L&T," supports Defendant's position that Plaintiffs were not employees at that point in time, and therefore 3 CMC § 4438(b) is not applicable. Defendant alleged, in pertinent parts, as follows:

> [A]s evident from the complaint pursuant to the standards applicable to this Rule 12 motion, the plaintiffs were not employees at the time L&T requested them to pay for their medical exams and health clearances. Plaintiffs allege that L&T required "plaintiffs pay for or provide said services as condition to their employment."... Allegations elsewhere in the complaint confirm that this was a condition precedent to employment. Paragraph 15 of the Complaint alleges: "Defendant L&T . . . required and demanded as a condition to hiring, employing and contracting of each plaintiff with L&T, that each plaintiff must provided for and/or pay their physical examination and health clearance fees. Implicit in this demand and condition was that plaintiffs would not be hired unless plaintiffs agreed to and provided for or paid for said examination and health fees." Because the Plaintiffs were not employees, L&T was not required to pay for their medical exams and/or health clearances. (Internal references omitted) (Emphasis in original)

See, Memorandum at pp. 3-4, lines 24-25; lines 1-11.

Implicit in Defendant L&T's ludicrous claim that "plaintiffs were not employees at the time L&T requested them to pay for their medical exams and health clearances" was of course its contention that L&T is or was not an "employer" for purposes of 3 CMC § 4438(b). This is flawed and runs afoul of the clear and plain meaning of the term "employer" under Section 4412 (h) of the

Nonresident Workers Act, 3 CMC §4411, et. seq. which provides as follows:

> (h)    "Employer" means any individual, partnership, association, or corporation **hiring, employing, or otherwise engaging for compensation** any resident worker or **nonresident worker** to perform services or labor within the Commonwealth, including any branch, agency, or instrumentality of the Commonwealth, but does not include the Trust Territory of the Pacific Islands or United States government.

It is notable that paragraph 15 of Plaintiffs' complaint, quoted by L&T in its moving papers (i.e. "**hiring, employing and contracting**") tracked substantially the same language used in defining "employer" in Section 4412 (h), i.e. "**hiring, employing, or otherwise engaging for compensation**." In any event, under Section 4412(h) of the NWA, an employer includes a corporation which is "**hiring ...a nonresident worker**." Section 4412(h), read in tandem with 3 CMC § 4438(b), simply means that Defendant L&T, a hiring "employer", is responsible for the "cost of any examination of a nonresident worker" including the cost for obtaining health certificates.

The Court may take judicial notice of DOL practices and policies concerning submission and processing of nonresident worker employment applications, that the medical examination is a requirement and part of the hiring process and the health certificate of the worker is one of the requirements to be met and submitted during and for the "hiring" and "employment" of nonresident

workers. The CNMI (DOL) form called "Prescreen Checklist. Transfer. Consensual/Administrative/Expiration (attached hereto as **Exhibit "A"**)shows that the "Health Certificate" is one of the prescribed requirements. Davis v. Bayless, 70 F.3d 367, 372 n.3 (5th Cir. 1995) ("Federal Courts are permitted to refer to matters of public record when deciding [an FRCP] 12(b)(6) motion to dismiss.") Under the NWA an employer or potential employer who files an employment application for his prospective employee is required nonetheless to pay for the application fee and medical examination of the intended worker even if the employment application is denied by DOL. 3 CMC § 4438(b).

In any event, Defendant L&T's argument fails based on established rules governing pleading requirements. The Court is invited to look into all the factual allegations asserted in the Complaint and ascertain if the allegations can sustain recovery on any legal theory, even if it is not the theory suggested by the pleader. Fed. R. Civ. P. Rule 8. In Mcmanus v. Fleetwood Enters. Inc. , 320 F.3d 545, 551 (5th Cir. 2003) the Court determined that "[t]he notice pleading requirements of [FRCP] 8 and case law do not require an inordinate amount of detail or precision. The plaintiff need not correctly specify the legal theory, so long as the plaintiff alleges facts upon which relief can be granted."; *see also* Independent Enter. Inc. v. Pittsburg Water & Sewer Auth., 103 F.3d 1165, 1175 (3rd Cir. 1997) ("FRCP 8(e)(2) permits inconsistency in both legal and factual allegations, and has been

interpreted to mean a court 'may not construe [a plaintiff's] first claim as an admission against another alternative or inconsistent claim.'"); *see also*, In re Adoption of Magofna, 1 N.M.I. 449, 454 (1990) (The complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.) Similarly, in Mccalden v. Cal. Library Ass'n, 955 F.2d 1214 (9th Cir. 1992), the Court held that the district court's order dismissing the complaint was error, because the plaintiff "is not required to state the statutory or constitutional basis for his claim, only the facts underlying it." Id. at 1223. These holdings comported with the admonition that courts are to construe pleadings to do substantial justice. Charfauros v. Bd. of Elections, 249 F.3d 941, 956-57 (9th Cir. 2001) (*en banc*).

## II
## Plaintiffs' Allegations on Outrageous Conduct Sufficiently State a Claim Upon Which Relief May Be Granted.

At the outset, it should be noted that the cases cited by Defendant L&T involve not Rule 12(b)(6) motion to dismiss, but Rule 56 summary judgment motions. In the instant case, consideration must be given to the fact that the motion to dismiss is being filed both prior to answering or any discovery.

In any event, Plaintiffs agree that the Court eventually must make an initial

determination as to whether reasonable men could differ on the issue of outrageous conduct. However, that determination should be made after the Court has had the opportunity to view all of the evidence in the case rather than on a motion to dismiss. At that point, if the Court concludes that reasonable men would agree that the conduct does not rise to the requisite level, then the Court may dismiss it. However, at this stage of the proceedings, the Court must accept all of the allegations of the Complaint as true.

In Miller v. Currie, 50 F.3d 373 (6th Cir., 1995), the district court granted defendant's motion to dismiss the claim of intentional infliction of emotional distress pursuant to Fed. R. Civ. P. 12(b)(6). In dismissing the claim, the district court found that even if plaintiff could prove all of her allegations about defendants' conduct, the actions did not rise to the level of "extreme and outrageous" behavior required to successfully assert an intentional infliction of emotional distress claim. On appeal, the Sixth Circuit sets out the following standard in reviewing the sufficiency of a complaint:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence . . . its task is necessarily a limited one. The issues is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claim. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed.2d 90, 94 S. Ct. 1683 (1974). It is not the function of the court to weigh evidence or

> evaluate the credibility of witnesses. Cameron v. Seitz, 1994 WL 575446, *5 (6th Cir. 1994); instead, the court should deny the motion unless it is clear that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. Cameron, 1994 WL 575446, *5 (quoting Conley v. Gibson, 355 U.S. 41,45-46, 2 L.Ed.2d 80, 78 S.Ct. 99. (Emphasis added).

Miller, 50 F.3d 373, 377.

While noting that the detailed circumstances surrounding plaintiff's claim for intentional infliction of emotional distress are not all laid out in the complaint, the Sixth Circuit in Miller reversed the district court's grant of defendants Rule 12(b)(6) motion and reasoned as follows:

> Nevertheless, we find that in the particular circumstances of this case, the district court erred in dismissing under Fed. R. Civ. P. 12(b)(6) Miller's claim for intentional infliction of emotional distress. The complaint alleged that on three separate occasions defendants intentionally and malicious hid her mother when Miller came to visit her, and on one occasion caused her to be arrested when she came to visit her mother. While the circumstances surrounding the event s at the nursing home are, naturally, not all laid out in the complaint, we do not agree with the district court that Miller could not conceivably prove any set of facts, in support of her allegations that would entitle her to relief. It is certainly within the realm of imagination that hiding a ninety-eight year old, physically infirm mother from her adult daughter, and causing the daughter to be arrested for attempting to visit her mother, could under some set of facts constitute "extreme and outrageous" conduct, and present a case "in which the recitation of the facts to an average member of the community would arose his resentment against the actor, and lead him to exclaim,

> 'Outrageous!'" Yeager, 453 N.E.2d at 671 (quoting Restatement of the Law 2d, Torts (1965) 71, Section 46, commend (d).

Miller, 50 F.3d 373, 378.

In the case at bar and contrary to Defendant L&T's assertions, the acts and conducts of L&T that could support or give rise to a finding or conclusion of outrageousness are set forth and hereafter summarily outlined.

> ■ Defendant L&T, by and through its employee and agent, Baby Lopez, employed by defendant in its Human Resources Department, required and demanded as a condition to hiring, employing, and contracting of each plaintiff with L&T, that each plaintiff must provide for and/or pay their physical examination and health clearance fees. . . . Id. at ¶ 15.
>
> ■ As an inducement for each plaintiff agreeing to pay for their said first year examination and health clearance fees, Defendant L&T, by and through its agent, Ms. Lopez, promised and represented to each plaintiff that L&T would pay for each plaintiff's physical examination and health clearance fees, beginning with their second year of employment with L&T. Implicit in Lopez' statement was that plaintiffs would have and would be given employment and work during their respective one (1) year contracts and that thereafter plaintiffs would be renewed unless plaintiffs were terminated for good cause. Id. at ¶ 16.
>
> ■ Defendant L&T made the aforesaid promises and representations through its agent, Ms. Lopez or ratified the same for the purpose of inducing each plaintiff to accept employment with and to work for L&T for defendant's benefit, and to take advantage of each plaintiff's experience, expertise, and labor. Id. at ¶ 18.

■ As a result of defendant's and its agent's representations and promises, each plaintiff was reasonably led to believe, rely on and understand that they would be renewed and employed with L&T for a minimum of one (1) year and that their contract would be renewed for a second term of one year upon expiration. Id. at ¶ 19.

■ Each plaintiff accepted employment with L&T in reliance upon defendant's representations and implicit promise that plaintiffs would be renewed at the end of their first year contract, if plaintiffs' work performance were satisfactory and plaintiffs were not terminated for good cause. Id. at ¶ 20.

■ Based on said Defendant L&T and its agent's representations and promises of continued employment and employment renewal, each plaintiff reasonably relied thereon and were led to believe that they would be renewed and employed with L&T for a minimum of one (1) full year. Id. at ¶ 21.

■ Certain of the plaintiffs in reliance on said representations and promises of L&T and its agents, paid for both their physical examination and health clearance fees in reliance on and believing their employment would be for a full year's work. Id. at ¶ 22.

■ Certain of the plaintiffs, in order to obtain employment with L&T, and relying on its representations and promises, paid their own physical examination fees. Id. at ¶ 23.

■ Certain of the plaintiffs, in order to obtain employment with L&T were required by L&T and its agents to use their then yet valid health clearance certificates from their previous employment in lieu of the employer, L&T, paying for said cost and fees. Id. at ¶ 24.

- On information and belief, a majority of the workers employed by Defendant L&T are Chinese nationals and citizens but their contracts and employment were and are not so conditioned on said Chinese workers providing or paying for said physical examination and health certificate fees, as those of the plaintiffs. Furthermore, on information and belief, there are no other employees of Defendant L&T whose employments or contracts were and are so conditioned, except for plaintiffs who are Filipinos. Id. at ¶ 25.

- Each plaintiff and Defendant L&T executed and entered into written employment contracts for a term of one (1) year. Id. at ¶ 27.

- Under the said employment contracts, Defendant prohibited each individual plaintiff from "without the consent of the [L&T] in writing first obtained, for a period of one year after [plaintiffs'] employment ceases either by resignation, termination, expiration of permit, or other causes, enter the employ of or render services to any person, firm, partnership, or corporation dealing in products or services which compete with any products of or services of L&T or engage in any competing business on [plaintiffs'] own account or become interested therein as director, principal, representative, employee or in any relationship or capacity." Id. at ¶ 29. (Emphasis added)

- The said referenced employment contract(s) was a form contract and, on information and belief, a contract of adhesion, prepared and drafted in advance by defendant and/or its counsels and presented to each plaintiff on a take it or leave it basis without negotiation. Id. at ¶ 30.

- On information and belief, defendant, as required by the NWA, executed with the Director of

Labor, for each Plaintiff, an Employer's Non-Resident Worker Agreement, to which each Plaintiff is a third-party beneficiary. Id. at ¶ 31.

- Under the said third-party beneficiary agreement, defendant shall be responsible for all "expenses required by law of any nonresident worker" which include physical examination and health clearance fees. Id. at ¶ 32.

- The said third-party beneficiary agreement also requires defendant to provide each plaintiff a minimum of forty (40) hours of work per week, at all times, for the duration of each Plaintiff's respective employment contract. Id. at ¶ 33.

- Defendant L&T terminated plaintiffs *en masse*, without individualized considerations of the legal rights, status, and condition of each plaintiff under their respective contracts, without and in contravention of each plaintiff's rights to due process. Furthermore, defendant did not consider or interview each plaintiff about their respective qualifications for other jobs and positions available through L&T, its affiliate and sister companies including Tan Holdings Corporation, and did not in good faith explore other alternatives to firing plaintiffs. Id. at ¶ 35.

- On information and belief, Defendant L&T, after plaintiffs' termination hired and brought into the CNMI new Chinese workers from the People's Republic of China to fill various positions in the company (L&T), its subsidiaries, and other garment factories affiliated with, owned or controlled by L&T. Id. at ¶ 36.

Defendant L&T caused to be inserted, as a condition of each Plaintiff's contract, a provision prohibiting each Plaintiff from working for any other garment company or rendering services to any person or company dealing in

products or services which compete with any products of or services of L&T, for a period of one year, after each Plaintiff's termination by L&T. L&T terminated Plaintiffs approximately only 2 to 3 months into their one (1) year contracts and reasonably knowing and being aware that each Plaintiffs, all being garment workers, would by said restriction, not be able to obtain employment with another garment company or service in the CNMI, and that this would cause each alien-Plaintiff severe and extreme emotional distress. Said contractual provision was part of Defendant L&T's contract of adhesion. Complaint, page 12 at ¶ 30. Thus, when all the allegations of the Complaint are read and considered in a light most favorable to each Plaintiff, especially at this prediscovery stage, it can not be reasonably concluded or said that a reasonable trier of fact, after considering all allegations of the Complaint, could not come to believe and decide that, given the totality of the Defendant's conduct, Defendant, under the circumstances given, Defendant acted shockingly and outrageously.

The above allegations, taken as true, must be considered in view of the special relationship existing between Defendant and Plaintiffs as required under the Restatement hereinafter discussed.

## III
## Plaintiffs Meet the Required Standards Generally for Intentional Infliction of Emotional Distress Claims Under the Restatements.

Plaintiffs recognize that intentional infliction of emotional distress claims

may be dealt with by a motion for summary judgment or by a motion to dismiss. Miller v. Currie, 50 F.3d 373 (6th Cir. 1995). However, Plaintiffs contend the Complaint and supporting documents thereto meets the prescribed standard for such claim in the Commonwealth.

In Charfauros, et. al v. Board of Elections, et. al. 1998 MP 16, 5 N.M.I. 188 (1998), the CNMI Supreme Court (1998), the CNMI Supreme Court sets out the standard and test to prevail on a claim for intentional infliction of emotional distress in the CNMI as follows:

> "In our Commonwealth the common law is drawn from the Restatements. 7 CMC § 3401... (In the absence of contrary statutory or customary law this ourt applies the common law as expressed in the Restatements."). . .. The action asserted by Plaintiffs is defined in the Restatement (Second) Torts, §46 (1965) (hereinafter Restatement) as "Outrageous Conduct Causing Severe Emotional Distress," and is, in relevant part, as follows:
>
> > One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it for such bodily harm.

Charfauros, 5 N.M.I. 188, 201.

"To maintain a cause of action for the intentional infliction of emotional distress requires proof of four elements: (1) that the conduct complained of was outrageous; (2) that the conduct was intentional or reckless; (3) it must cause

emotional distress; and (4) the distress must be severe." Chaurfauros, supra. (Internal citations omitted).

Plaintiffs, like Defendant L&T, recognize the court's important duty to guard the gateway to the cause of action for intentional infliction of emotional distress. Comment h. to Restatement §46 requires the court to judge the sufficiency of the conduct alleged to have caused the emotional distress before allowing the case to proceed to a full trial, thusly:

> It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. . .

"In light of this gatekeeping function, Comment c. to Restatement §46 reminds Courts, however, that 'the law is still in a stage of development, and the ultimate limits of this tort are not yet determined.' The cause of action is thus 'fully open to the possibility of further development of the law, and the recognition of other situations in which the liability might be imposed." Charfauros, supra. (Internal citations and references omitted). "Comment h. to Restatement §46, supra, goes on to further delineate the gatekeeping function:

> Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

The CNMI Supreme Court in Charfauros found that the acts of the Commonwealth Board of Elections against Plaintiffs might be found "extreme

and outrageous" within the meaning of Restatement §46. The Court observed:

> Comment d. to section 46 states that "[t]he cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous." Comment d. goes on to say,
>
> > Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized society. Generally, the case is one in which the recitation of the facts to an average member of the community would arose his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> This rather restrictive language of comment d., above, is modified by the language of comment e. to Restatement §46. Comment e. indicates that the nature of the relation between the parties must be factored into the judgment whether the conduct was outrageous as a matter of law:
>
> **The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or a power to affect his interests.** (Emphasis added)

Charfauros, 5 N.M.I. 188, 202.

Comment c. to Restatement §46 finds particular importance in the case at bar where by the relationship of Defendant L&T as an accepting employer, Defendant possesses and wields a great deal of influence and control over the Plaintiffs's lives, employment and eligibility of these workers to remain and live

and work in the Commonwealth, thus making them particularly vulnerable to abusive acts and conducts of Defendant L&T. Thus, when the special relationship between Defendant and Plaintiff is factored in, it cannot, at least at this early stage, be determined or said that the conduct was not outrageous as a matter of law.

## CONCLUSION

Based on the foregoing, Plaintiffs pray that Defendant's Partial Motion to Dismiss be denied in its entirety. Plaintiffs further request that the Court determine Defendant's Motion to Dismiss as to Plaintiffs' First and Second Causes of Action as without merit and frivolous and award Plaintiffs reasonable attorney's fees and costs.

**SIGNED** this 15th day of September 2005.

**JOE HILL**
Attorney for Plaintiffs

c:DC.C.A.05.Abellanosa.opposition.mario

***DO NOT DETACH THIS SHEET FROM APPLICATION!!***

**Name of Employer/Agent** ______________________

**Name of Employee** ______________________

## PRESCREEN CHECKLIST
## TRANSFER
## CONSENSUAL / ADMINISTRATIVE / EXPIRATION

### A. FOR DIVISION OF LABOR

- ☐ Copy of CT / Administrative Order
- ☐ Original Permit / Affidavit of Permit (Notarized)
- ☐ Non-Resident Workers Affidavit with Color Photo
- ☐ Certificate of Employment (2 Yrs. Experience)
- ☐ Employment Contract
- ☐ Birth Certificate
- ☐ Marriage Certificate (if applicable)
- ☐ Police Clearance
- ☐ Health Certificate
- ☐ Copy of Passport
- ☐ Employers Agreement
- ☐ Original - Certified Job Vacancy Announcement with News Ads
- ☐ Copy of Valid Business License
- ☐ Copy of BGR & Withholding Tax (Past 4 Qtrs.)
- ☐ Original Sworn Statement of Compliance
- ☐ Original Waiver 1 to 1 20% (if applicable)
- ☐ Bank Certification
- ☐ Map to Business Establishment
- ☐ Proof of Project (6 mos. to a Year)
- ☐ Original Bond / Cash Bond
- ☐ Other Requirement as Requested
- ☐ Living Quarter or Self-Arrange Housing (Affidavit)

### B. EMPLOYER'S COPY (Must be Provided)

- ☐ Copy - Nonresident Worker's Affidavit
- ☐ Copy - Employment Contract
- ☐ Copy - Employer's Agreement

☐ **ACCEPTED FOR SUBMISSION DATE** ________

☐ **REJECTED FOR SUBMISSION DATE** ________

**REVIEWER NAME**

EXHIBIT "A"