Clerk
District Court

SEP 3 0 2005

For The Northern Mariana Islands
By_____
    (Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOANNA ABELLANOSA, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. CV-05-0010-ARM |
| ) | |
| v. ) | |
| ) | ORDER ON MOTION TO DISMISS |
| L & T INTERNATIONAL CORPORATION, ) | AND REQUEST FOR DEFAULT |
| ) | JUDGMENT |
| Defendant. ) | |
| ) | |

This matter is before the Court on the Motion to Dismiss the First, Second and Seventh[1] Causes of Action (Doc. ##3-4) filed by the defendant, L & T International Corporation, and the Request for Entry of Default Judgment (Doc. #10) filed by the plaintiffs. Upon consideration of the memoranda of the parties, the argument of counsel and the applicable law, the Court makes the following disposition.

## I. BACKGROUND

Plaintiffs in this case are female citizens of the Republic of Philippines legally living in the Commonwealth of the Northern Mariana Islands ("CNMI") and authorized to work therein. (Compl. ¶¶ 8, 12). The defendant, L & T International Corporation ("L& T"), is a domestic corporation with its head office and factory located on the island of Saipan, CNMI, whose primary business is the production of garments for interstate and international distribution and sale. (Compl. ¶ 10). Plaintiffs allege, in relevant part, that:

13.    Certain of the plaintiffs were authorized to work for L & T by the [CNMI]

---

[1] See page 5, line 11-21 of this decision.

Department of Labor's approval of Conditional Grant of Transfer, premised on L & T's promises and representations set forth in the Department of Labor (DOL) form entitled [sic] Declaration of Accepting Employer, executed and signed by defendant and each of the said-certain plaintiffs and approved by DOL on various dates between March 2004 and May 2004...

14. Certain of the plaintiffs were authorized to work for L & T by DOL's approval of Consensual Grant of Transfer agreements between the workers' previous employers and the new employer, Defendant L & T...

15. Defendant L & T, by and through its employee and agent, Baby Lopez, employed by defendant in its Human Resources Department, required and demanded as a condition to hiring, employing, and contracting of each plaintiff with L & T, that each plaintiff must provide for and/or pay their physical examination and health clearance fees. Implicit in this demand and condition was that plaintiffs would not be hired unless plaintiffs agreed to and provided for or paid for said examination and health fees.

16. As an inducement for each plaintiff agreeing to pay for their said first year examination and health clearance fees, defendant L & T, by and through its agent, Ms. Lopez, promised and represented to each plaintiff that L & T would pay for each plaintiff's physical examination and health clearance fees, beginning with their second year of employment with L & T. Implicit in Lopez's statement was that plaintiffs would have and would be given employment and work during their respective one (1) year contracts and that thereafter plaintiffs would be renewed unless plaintiffs were terminated for good cause.

* * *

18. Defendant L & T made the aforesaid promises and representations through its agent, Ms. Lopez or ratified the same for the purposes of inducing each plaintiff to

2

accept employment with and work for L & T for defendant's benefit, and to take advantage of each plaintiff's experience, expertise and labor.

19. As a result of defendant's and its agent's representations and promises, each plaintiff was reasonably led to believe, rely on and understand that they would be renewed and employed with L & T for a minimum of one (1) year and that their contract would be renewed for a second term of one year upon expiration.

20. Each plaintiff accepted employment with L & T in reliance upon defendant's representations and implicit promise that plaintiffs would be renewed at the end of their first year contract, if plaintiffs' work performance were satisfactory and plaintiffs were not terminated for good cause.

21. Based on said Defendant L & T and its agent's representations and promises of continued employment and employment renewal, each plaintiff reasonably relied thereon and were led to believe that they would be renewed and employed with L & T for a minimum of one (1) full year.

22. Certain of the plaintiffs in reliance on said representations and promises of L & T and its agents, paid for both their physical examination and health clearance fees in reliance on and believing their employment would be for a full year's work...

23. Certain of the plaintiffs, in order to obtain employment with L & T, and relying on its representations and promises, paid their own physical examination fees...

24. Certain of the plaintiffs, in order to obtain employment with L & T were required by L & T and its agents to use their yet valid health clearance certificates from their previous employment in lieu of the employer, L & T paying for said cost and fees...

\* \* \*

27. Each plaintiff and Defendant L & T executed and entered into written employment contracts for a term of one (1) year.

28. Under their respective contracts, L & T promised to pay each plaintiff $3.05 per hour and time and a half for overtime work, payable biweekly.

29. Under the said employment contracts, Defendant prohibited each individual plaintiff from 'without the consent of [L & T] in writing first obtained, for a period of one year after [plaintiff's] employment ceases either by resignation, termination, expiration of permit, or other causes, enter the employ of or render services to any person, firm, partnership, or corporation dealing in products or services which compete with any products of or services of L & T or engage in any competing business on [plaintiffs'] own account or become interested therein as director, principal, representative, employee or in any relationship or capacity.'

* * *

31. On information and belief, defendant, as required by the [Nonresident Workers Act], executed with the Director of Labor, for each Plaintiff, an Employer's Non-Resident Worker Agreement, to which each Plaintiff is a third-party beneficiary...

32. Under the said third-party beneficiary agreement, defendant shall be responsible for all 'expenses required by law of any non-resident worker' which include physical examination and health clearance fees.

33. The said third part beneficiary agreement also requires defendant to provide each plaintiff a minimum of forty (40) hours of work per week, at all times, for the duration of each Plaintiff's respective employment contract.

34. On or about May 12, 2004, Ms. Luisa Dela Cruz-Ernest, as the Human Resources Manager and agent of Defendant L & T, gave each plaintiff a document entitled [*sic*] 'Notice of Termination' based on the stated ostensible grounds and reasons of 'due to the on-going re-engineering and reduction in force due to economic necessity...'

35. Defendant L & T terminated plaintiffs en masse, without individualized

4

considerations of the legal rights, status, and conditions of each plaintiff under their respective contracts, without and in contravention of each plaintiff's rights to due process...

On March 31, 2005, plaintiffs filed a complaint against the defendant, L & T, setting forth seven causes of action. Among the causes of action advanced, the first alleged that defendant breached its contract with the workers by requiring plaintiffs to pay for the cost of the health examinations; the second alleged that requiring plaintiffs to pay for their health examinations violated the Federal Labor Standard Act, 29 U.S.C. § 201 *et seq.* and the Nonresident Workers Act ("NWA"), 3 N.Mar.I. Code § 4411 *et seq.*; the fifth alleged intentional infliction of emotional distress. On September 1, 2005, defendant filed the present Motion to Dismiss the First, Second and Seventh Causes of Action (Doc. ##3-4). Plaintiffs filed an Opposition to Defendant's Motion to Dismiss (Doc. #5) on September 15, 2005. Defendant filed a reply (Doc. #9) on September 22, 2005. On September 29, 2005, plaintiffs filed a Request for Entry of Default (Doc. #10) pursuant to Fed.R.Civ.P. 55(a).

## II. LAW AND DISCUSSION

### A. Defendant's Fed.R.Civ.P. 12(b)(6) Motion to Dismiss

As a preliminary matter, the Court notes that defendant moves for dismissal of plaintiffs' seventh cause of action. Plaintiffs' seventh cause of action is for declaratory relief under a provision of the NWA. A review of defendant's motion, however, clearly shows that defendant moves to dismiss plaintiffs' claim for intentional infliction of emotional distress, plaintiffs' fifth cause of action. As a result, the Court will construe defendant's motion as one seeking dismissal of plaintiffs' fifth cause of action.

#### (1) Standard of review

Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory or where the complaint

presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

In reviewing a Fed.R.Civ.P. 12(b)(6) motion to dismiss, the court must "accept all factual allegations of the complaint as true and draw all reasonable inferences" in the light most favorable to the nonmoving party. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir.1999). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint and matters of which the court takes judicial notice. *Venetian Casino Resort L.L.C. v. Cortez*, 96 F.Supp.2d 1102, 1106 (D.Nev. 2000).

### (2) First and second causes of action

Plaintiffs' first cause of action alleges that defendant was required by 3 N.Mar.I. Code § 4438(b) and the Employer's Agreement to pay the cost of required physical examinations and for health clearance certificates of plaintiffs. Plaintiffs further allege under the first cause of action that defendant's shifting of its obligation and refusal to pay for the physical examinations constituted a breach of the Employer's Agreement and a violation of 3 N.Mar.I. Code § 4438(b).

Plaintiffs' second cause of action alleges that "requiring plaintiffs to pay or provide for their respective physical examination and health clearance fees, said plaintiffs received or were paid less than the minimum wage and overtime wages prescribed under FLSA and the NWA for the respective pay periods. (Compl. ¶ 46). Plaintiffs further allege in the alternative, that "defendant's acts in requiring plaintiffs to pay or provide said fees and service constitute and are deemed unauthorized deductions from wages resulting in each plaintiff being paid less than the minimum wage and applicable overtime wage rate." (Compl. ¶ 47).

In its motion to dismiss the first and second causes of action, defendant does not dispute that an employer must cover the costs of an employees medical exam. However, defendant argues that in this case the plaintiffs were not employees of L & T at the time L & T requested them to pay for their

medical exams and health clearances. Because the plaintiffs were not employees, L & T was not required to pay for their medical exams and health clearances. Plaintiffs dispute this and argue that 3 N.M.I. Code § 4438(b) required defendant to pay for the physical examinations.

In construing a Commonwealth statute, the Court is bound by the pronouncements of the Commonwealth's highest court. See *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002). If the Commonwealth's highest court has not addressed the issue, then this Court must predict how that court would interpret the statute. *Id.* The CNMI Supreme Court has not yet construed 3 N. Mar.I. Code § 4438(b). Accordingly, the Court's task is to predict how it would interpret that statutory provision.

In the CNMI, as in the Ninth Circuit generally, it is a basic principle of statutory construction that language in a statute must be given its plain meaning. *Commonwealth Ports Authority v. Hakubotan Saipan Enters., Inc.*, 2 N. Mar. I. 212, 221, 1991 WL 258324 (1991) (citations omitted); *see also United States v. Rashkovski*, 301 F.3d 1133, 1136 (9th Cir. 2002) ("Under the rules of statutory construction, [t]he plain meaning of the statute controls ....") (internal quotation marks and citations omitted). If the statutory language is ambiguous, "[i]t is therefore necessary for us to give it the meaning that the legislature intended." *In re Estate of Rofag*, 2 N. Mar. I. 18, 29, 1991 WL 70067 (1991); *see also United States v. Buckland*, 289 F.3d 558, 565 (9th Cir. 2002) (en banc) ("Where the language is not dispositive, we look to the [legislative] intent....").

3 N.Mar.I. Code § 4438(b) states that "[t]he [Secretary of the Department of Labor] may require the worker, together with any accompanying family member, to undergo a physical examination" and that "[t]he cost of any examination of a nonresident worker shall be borne by the employer." 3 N.Mar.I. Code § 4412(h) plainly states that the word "employer" includes any corporation *hiring* a nonresident worker to perform services or labor within the Commonwealth. Construed together, it is reasonable that these sections require corporations that desire to hire a nonresident worker to have to pay for the nonresident worker's health certification physical examination. The nonresident worker does not have to already be employed by the corporation.

Looking at the facts as alleged in the complaint, it does not appear beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Accordingly, defendant's motion to dismiss plaintiffs' first and second claims for relief is denied.

### (3) Fifth Cause of Action

For their fifth cause of action, plaintiffs allege a claim for intentional infliction of emotional distress. In the CNMI the common law is drawn from the Restatements. *See* 7 CMC §3401; *Castro v. Hotel Nikko Saipan*, 4 N.M.I. 268, 272, n.5 (1995) ( "In the absence of contrary statutory or customary law this Court applies the common law as expressed in the Restatements."). The action asserted by plaintiffs is defined in the Restatement (Second) of Torts § 46 (1965) as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it for such bodily harm.

*Id.* Stated another way, to maintain a cause of action for the intentional infliction of emotional distress requires proof of four elements: (1) That the conduct complained of was outrageous; (2) that the conduct was intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. *Charfauros v. Board of Elections*, 5 N.M.I. 188, 201, 1998 WL 34073646 (1998).

In interpreting what constitutes "outrageous" conduct, CNMI courts have relied on Restatement (Second) of Torts § 46 (1965) comment d., which provides: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See *Charfauros*, 5 N.M.I. at 202.

Whether a defendant's conduct rises to the level of being "extreme and outrageous" is a question to be determined by the Court in the first instance. *Id.*; Restatement (Second) of Torts § 46 (1965) comment h. Such a duty is important since "[i]f courts do not in clear cases exercise their review of such claims in the first instance, the standards of outrageousness will be expanded into an unreviewable jury question, diluting the importance of the cause of action and the available relief." *Keiter v. Penn Mutual Ins. Co.*, 900 F.Supp. 1339, 1348 (D.Haw.1995).

Plaintiffs fail to state a claim for relief as to their fifth cause of action. Plaintiffs cite to the paragraphs in their complaint set forth above and argue that defendant's conduct was outrageous within the meaning of the Restatement. The Court disagrees. The facts supporting a claim for intentional infliction of emotional distress must be based upon conduct that is more egregious than the underlying breach of contract claim. See *Munoz v. State Farm Mut. Auto. Ins.*, 968 P.2d 126, 129 (Colo.App. 1998). Here, the alleged conduct of defendant all relates to the breach of contract. Even if the alleged facts were unrelated to the breach of contract, the allegations do not plead sufficient outrageous conduct such as to be actionable. Courts have found no outrageous conduct in a number of cases based on facts far more egregious than that alleged in this case. See, *e.g.*, *Lupo v. Wyeth-Ayerst Laboratories*, 4 F.Supp.2d 628, 642 (E.D.Tex. 1997); *Rose v. James River Paper Co.*, 2 F.Supp.2d 245, 253 (D.Conn. 1998). As a result, the Court finds that plaintiffs fail to state a claim for intentional infliction of emotional distress and will dismiss the claim. However, the Court will provide plaintiffs an opportunity to cure any defects and will grant them leave to amend their fifth cause of action. See *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)(en banc)(stating that a district court should grant leave to amend even if no request to amend the pleading was made...).

### B. Plaintiffs' Request for Entry of Default

Plaintiffs ask the Court to enter default judgment against defendant for its alleged failure to file an answer or respond to the third, fourth, sixth and seventh causes of action of the complaint. As the Court has dismissed plaintiffs' fifth cause of action with leave to amend and allowed defendant ten days to answer or respond (see below) to plaintiffs' complaint, plaintiffs' request is moot and thus denied.

///
///
///
///
///

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) The Motion to Dismiss the First, Second and Seventh (Fifth) Causes of Action (Doc. ##3-4) filed by the defendant, L & T International Corporation, is **DENIED IN PART AND GRANTED IN PART**. It is denied to the extent that first and second causes of action state a claim for relief. It is granted to the extent that plaintiffs' fifth cause of action fails to state a claim for relief. However, the Court grants plaintiffs leave to amend the fifth cause of action. Plaintiff shall file an amended complaint within ten (10) days of the filing of this order. Defendant shall respond to the complaint within ten (10) days of the filing of plaintiffs' amended complaint.

(2) The Request for Entry Default Judgment (Doc. #10) is **DENIED** as moot.

**SO ORDERED** this 30th day of September, 2005

                                                                         _____
                                                                         Alex R. Munson
                                                                         Chief Judge, United States District Court