JOE HILL
HILL LAW OFFICES
P.O. Box 500917
Saipan, MP 96950
Tel.: (670) 234-6806/7743
Fax:  (670) 234-7753

Attorney for Plaintiffs

F I L E D
Clerk
District Court

OCT 1 7 2005

For The Northern Mariana Islands
By_____
     (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

1. ABELLANOSA, JOANNA
2. ALVARADO, MARISSA
3. ANTATICO, NORA
4. APIT, LOLY
5. AQUINO, RUSSEL
6. ARANDA, MARLOU
7. ARCEGA, PRECILLA
8. ASIA, ANGELITA
9. BAAY, CRISTINA
10. BALBIDO, MARISSA
11. BALCITA, AMALIA
12. BALICHA, ESTELITA, E.
13. BANAAG, EVELYN
14. BANGUILAN, TERESITA
15. BANTILLO, DELMA
16. BASTO, ZENAIDA
17. BAUTISTA, CONSOLITA
18. BERNARDINO, EVA
19. BUTIC, TERESITA
20. CABANIT, ANASTACIA
21. CAPACITE, EMERITA
22. CARAIT, RUBY
23. CAVA, MARITA

Civil Action No. 05-0010

FIRST AMENDED
COMPLAINT

Case 1:05-cv-00010   Document 14   Filed 10/17/2005   Page 2 of 11

24. CHAVEZ, EVANGELINE
25. CONCEPCION, ANDREA
26. CONTEMPLACION, NELIDA
27. CORREA, HAIDE
28. CRUZ, HELEN
29. CRUZ, AGNES
30. DELA CRUZ, MA. ROSARIO
31. DELOS SANTOS, ELENA
32. DOMINE, CORAZON
33. DUGAY, NOMIELADA
34. FAJARDA, AMELITA
35. GADIANE, MARILYN
36. GASES, NENITA
37. GELERA, EIREEN
38. GONZALES, GUADALUPE
39. HERNANDEZ, WENDELINE
40. INOPIQUEZ, ROSALINDA
41. LADIA, VICTORIA
42. LEJANO, ANGELA
43. LOZANO, NELIA
44. MACLANG, MARIDETH
45. MAGNAYE, BEATRIZ
46. MANZANILLA, EDELITA
47. MATEO, MARLA
48. MENDOZA, BELINDA
49. MIRANDA, AMALIA
50. MOLINA, ELIZABETH
51. MONSALUD, EVA
52. NABOR, CELESTINA
53. NAVIDA, MARICHU
54. NIMO, EULALIA
55. NIPAYA, LEONILA
56. NISPEROS, JENITA
57. NUEVA, MARITES
58. OLERMO, RUBY
59. PANGAN, MARITA
60. PANGELINAN, TERESITA
61. PASCUA, DYNA
62. PASCUAL, MYRNA
63. PELEGRINO, ADORACION
64. PERFECTO, CHARITO

65. POMAREJOS, GLORIA
66. QUIPOT, MERCIA
67. RELEVANTE, ADORA MAE
68. REYES, AMELIA
69. SALVADOR, JANNA
70. SAPIANDANTE, MILA
71. SORIANO, MARIETTA
72. TAPIADOR, TERESA
73. TEBERIO, JESSICA
74. TOBIAS, JOCELYN
75. VALDOZ, SHEROWIN
76. VILLANUEVA, MARIBEL,

      Plaintiffs,

  v.

L&T INTERNATIONAL CORPORATION,

      Defendant.

NOW COMES the Plaintiffs, by and through counsel, and as their claims and causes of action against Defendant L&T International Corporation (L&T), allege and aver as follows:

# I
# JURISDICTION AND VENUE

1.  This action is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (hereinafter designated as "FLSA") made applicable to this action by the COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA

ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA, Article V, § 502(a)(2). Specifically, jurisdiction is conferred upon this Court pursuant to Section 16(b) of the FLSA, 29 U.S.C. Section 216(b).

2. The Court is granted jurisdiction over Plaintiffs' FLSA claims under 28 U.S.C. § 1331 (federal question jurisdiction), and as proceedings arising under an Act of Congress regulating commerce pursuant to 28 U.S.C. § 1337(a).

3. The Court has jurisdiction over Plaintiffs' wage claims pursuant to 29 U.S.C. § 216(b).

4. The Court also has jurisdiction based on diversity of citizenship in that each plaintiff is a citizen of the Republic of the Philippines while, on information and belief, Defendant L & T Corporation is a corporation organized and existing under the laws of, and with its main office located in, Saipan, CNMI and is a domiciliary of the CNMI. The individual claims of each plaintiff against the defendant in this matter, exceed and is more than $ 75,000.00, exclusive of costs and interest, pursuant to 28 U.S.C. § 1332.

5. The Court's jurisdiction over plaintiffs' non-FLSA claims is granted pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

6. The Court's authority to issue declaratory relief in this action is conferred by 28 U.S.C. § 2201 and § 2202.

7. Venue is properly placed in this United States District Court for the

Northern Mariana Islands in that all parties were present in, and all acts alleged and complained of occurred in the CNMI.

## II
## PARTIES AND CAPACITIES

8. Plaintiffs are, each and all, citizens of the Philippines and, at all relevant times, resided in the CNMI and were employed by or suffered to work by defendant variously pursuant to written contracts for a fixed period of employment of one (1) year each duly approved by the CNMI Department of Labor (DOL) pursuant to the Nonresident Workers Act (NWA), 3 N.Mar.I.Code § 4411, *et. seq.*

9. Plaintiffs, at all pertinent times, were employed and worked as "packager hand" of garments by and for defendant in an enterprise engaged in commerce and the production of goods for interstate and international commerce, such that garments worked on and made by plaintiffs were shipped by defendant in interstate and international commerce from the CNMI to various places in the United States of America and other countries.

10. Each of the plaintiffs was hired by and commenced work as "packager hand" for Defendant L&T on different dates in February 2004 and March 2004 and they were terminated on or about May 12, 2004.

11. Defendant **L&T International Corporation**, on information and

belief, at all pertinent times, was a domestic corporation with its head office and factory located in Saipan, CNMI, whose primary business was and is the production of garments for interstate and international distribution and sale outside of the CNMI and was and is engaged in the business of production of goods for and shipment in, interstate and international commerce and plaintiffs performed work on such products and garments.

12. Defendant L&T was the employer of each plaintiff, at all pertinent times herein, within the meaning of FLSA § 203(e)(1) and the Minimum Wage and Hours Act (MWHA), 4 N.Mar.I.Code §9211, *et. seq.*

## III
## FACTUAL BACKGROUND

### A.
### The Recruitment Process

13. Between January 2004 to March 2004, Defendant L&T, through newspaper and other media, recruited and advertised for persons to work as "packager hand."

14. The plaintiffs, either read L&T's job advertisement(s), learned through the media and/or were informed by others about L&T's job openings, responded and applied for said jobs on various dates at L&T during said period.

15. Defendant L&T, by and through its employee and agent, Ms. Cory

Quin, who, on information and belief, was employed by L&T in its Human Resources Department (HRD), interviewed each plaintiff-applicant regarding their employment and work experience, among other matters, and required each plaintiff-applicant to fill out an application form.

16. On various dates thereafter, Defendant, variously through Ms. Quin and/or Ms. Baby Lopez who, on information and belief, was an employee and agent of L&T in its HRD, contacted each plaintiff-applicant and instructed them to come and report to L&T.

17. Upon reporting, L&T, either through Ms. Lopez or Ms. Quin, informed plaintiffs that L&T would hire them and directed each plaintiff to sign the employment contract form then being presented to them.

### B.
### The Release and Acceptance of Employment Under Grants of Transfer

18. Certain of the plaintiffs, who were either "expiration transferees" or "administrative transferees" were authorized to work for L&T by the Department of Labor's approval of Conditional Grant of Transfer, premised on L&T's promises and representations set forth in the Department of Labor (DOL) form entitled Declaration of Accepting Employer, executed and signed by defendant and each of the said-certain plaintiffs and approved by DOL on various dates

between February 2004 to March 2004. Attached as **EXHIBIT "1"** hereto and incorporated herein by this reference is a list of those plaintiffs hired pursuant to conditional grants of transfer.

19. Under the "Conditional Grant of Transfer," L&T, as the "Accepting Employer" and through its employee and agent Joaquin S. Torres, agreed as follows:

> . . . L&T INTERNATIONAL CORP. . . . knowingly
> and freely accept the transfer of employment of . . .
> from . . . the Employer of Record.

Attached as **EXHIBIT "2"** hereto and incorporated by this reference is a standard form copy of a DOL "Conditional Grant of Transfer" form.

20. At the time L&T recruited and hired those plaintiffs listed in EXHIBIT "1" under conditional grants of transfer, said plaintiffs had the legal right to transfer and to seek and secure other employment for yet an unexpired number of days.

21. At said time, plaintiffs variously were either actively seeking other employment, and/or had pending employment applications with other employers. At the time L&T promised to hire each of said plaintiffs, they variously each had a number of days remaining under their transfer authorization in which to seek other employment. In reasonable reliance on L&T's promised employment, said plaintiffs were caused to give up and forego use of their remaining transfer time

and/or to seek other or more secure employment in the time remaining under their transfer authorization.

22. Certain of the plaintiffs were authorized to work for L&T by DOL's approval of Consensual Grant of Transfer agreements between the workers' previous employers and the new employer, Defendant L&T. Attached as **Exhibit "3"** hereto and incorporated herein by this reference is a list of those plaintiffs hired pursuant to consensual grants of transfer agreements.

23. At the time, L&T recruited and hired those plaintiffs listed in Exhibit "3" under consensual grants of transfer, said plaintiffs were working and had lawful annual employment contracts with other employers.

24. Defendant L&T, through its agents, knew that plaintiffs were so employed and requested that plaintiffs quit those jobs and come to work for L&T.

25. Because of the assurances and representations made by Defendant L&T that plaintiffs listed in Exhibit "3" would be hired and given stable, full-time work and employment for at least one year, Plaintiffs were induced to and reasonably relied on Defendant L&T's promise of secure employment for one to two years, in leaving their employer, for work with L&T.

26. In entering into an employment relationship with Defendant L&T and in agreeing to forego other employment opportunities and to leave their then secure employment in order to work for L&T, each of the plaintiffs listed in

EXHIBITS "1" and "3" sought to obtain financial stability, peace of mind, and future security in Defendant L&T.

27. At all material times, Defendant L&T, through Ms. Quin, assured and represented to each plaintiff that they would be given stable employment and work in L&T as long as they performed satisfactorily and obeyed all reasonable and lawful directions, rules and regulations of Defendant which they did.

28. Defendant L&T knew at the time of recruiting/contracting with, and at the time of termination, that each plaintiff was female, an alien, and a citizen of the Republic of the Philippines.

29. Defendant L&T knew that as alien contract workers, each plaintiff's ability and right to remain/reside in the CNMI, was dependent on plaintiff's maintaining and having a DOL approved employment contract and an employer.

30. Defendant L&T knew that if it terminated plaintiff(s) prior to the natural expiration date of the contract(s) that plaintiffs would not be able to stay or reside in the CNMI unless they were able to get transfer authorization from DOL and timely obtain another annual contract employer.

31. Defendant L&T knew or upon reasonably inquiring should have known, at the time of the May 12, 2004 termination, that: (a) the economy and job market in the garment related industry was and had for sometime been, on a down turn; (b) that there were then a surplus and large numbers of unemployed

garment-related alien workers listed with the DOL Employment Services unable to be placed by the agency and unable to find work; (c) that L&T, on information and belief, prior to termination, made no effort to contact and ask other employers if they could employ any of the plaintiffs; (d) L&T thus knew or, upon reasonably inquiring, would have known that by deliberately choosing to terminate all 76 plaintiffs *en masse* and dumping them in the CNMI unemployment pool at one time, that each plaintiff's chance of finding and obtaining new employment in their job category ("packager hand") would be exacerbated and rendered more difficult and unlikely, such that plaintiffs have been unable to find or secure other contract employment.

### C.
### Physical Examination and Health Clearance Fees

32.   Additionally, Defendant L&T, by and through its employee and agent, Ms. Baby Lopez, required and demanded as a condition to contracting with, hiring, and continuing employment of each plaintiff with L&T, that each plaintiff must provide for and/or pay their physical examination and health clearance fees. Implicit in this demand and condition was that plaintiffs would not be hired or continued in employment unless plaintiffs agreed to and provided for or paid for said examination and health fees.

33.   As an inducement for each plaintiff agreeing to pay for their said first year examination and health clearance fees, Defendant L&T, by and through its