agent, Ms. Lopez, promised and represented to each plaintiff that L&T would pay for each plaintiff's physical examination and health clearance fees, beginning with their second year of employment with L&T. Implicit in Lopez' statement was that plaintiffs would have and would be given employment and work during their respective one (1) year contracts and that plaintiffs would be renewed for at least another year unless plaintiffs were terminated for good cause.

34.    In committing and making the above described acts, promises, and statements, Ms. Lopez was acting as an agent of L&T and within the scope of her authority or on the express instruction and direction of L&T and/or L&T ratified said acts and conduct.

35.    Defendant L&T made the aforesaid promises and representations through its agent, Ms. Lopez or ratified the same for the purpose of inducing each plaintiff to accept employment with and to work for L&T for defendant's benefit, and to take advantage of each plaintiff's experience, expertise, and labor.

36.    As a result of defendant's and its agent's representations and promises, each plaintiff was reasonably led to believe, rely on and understand that they would be renewed and employed with L&T for a minimum of one (1) year and that their contract would be renewed for a second term of one year upon expiration.

37.    Each plaintiff accepted employment with L&T in reliance upon defendant's representations and implicit promise that plaintiffs would be renewed

at the end of their first year contract, if plaintiffs' work performance were satisfactory and plaintiffs were not terminated for good cause.

38.    Based on said Defendant L&T and its agent's representations and promises of continued employment and employment renewal, each plaintiff reasonably relied thereon and were led to believe that they would be renewed and employed with L&T for a minimum of one (1) full year .

39.    Certain of the plaintiffs in reliance on said representations and promises of L&T and its agents, paid for both their physical examination and health clearance fees in reliance on and believing their employment would be for a full year's work. Attached as **EXHIBIT "4"** hereto and incorporated herein by this reference is a list of those plaintiffs who paid both said physical examination and health clearance fees.

40.    Certain of the plaintiffs, in order to obtain employment with L&T, and relying on its representations and promises, paid their own physical examination fees. Attached as **EXHIBIT "5"** hereto and incorporated herein by this reference is a list of those plaintiffs who paid their physical examination fees.

41.    Certain of the plaintiffs, in order to obtain employment with L&T were required by L&T and its agents to use their then yet valid health clearance certificates from their previous employment in lieu of the employer, L&T, paying for said cost and fees. Attached as **EXHIBIT "6"** hereto and incorporated herein by this reference is a list of those plaintiffs required by L&T to so use their own

previously obtained health clearance certificates.

42.   On information and belief, a majority of the workers employed by Defendant L&T are Chinese nationals and citizens but their contracts and employment were and are not so conditioned on said Chinese workers providing or paying for said physical examination and health certificate fees, as those of the plaintiffs. Furthermore, on information and belief, there are no other employees of Defendant L&T whose employments or contracts were and are so conditioned, except for plaintiffs who are Filipinos.

43.   L&T's and its agents' acts in requiring plaintiffs to pay for or shoulder the costs of physical examination and/or health certificates were in violation of CNMI law and the public policy of the Commonwealth.

## D.
## L&T's Restrictive and Oppressive Employment Contracts

44.   Each plaintiff and Defendant L&T executed and entered into written employment contracts for a term of one (1) year.

45.   Under their respective contracts, L&T promised to pay each plaintiff $ 3.05 per hour and time and a half for overtime work, payable bi-weekly.

46.   The said employment contracts contained restrictive and oppressive provisions and language prohibiting plaintiffs from being employed after termination by defendant as follows:

Page 14

> The employee further agree that he/she will not, without the consent of the Company in writing first obtained, <u>for a period of one year after his/her</u> employment ceases either by resignation, <u>termination,</u> expiration of permit, or other causes, enter the employ of or render services to any person, firm, partnership, or corporation dealing in products or services which compete with any products of or services of L&T or engage in any competing business on his/her own account or become interested therein as director, principal, representative, employee or in any relationship or capacity. (Emphasis added)

See CONTRACT, EXHIBIT "7"

47.    The existence and application of the said oppressive covenant, coupled with the fact that L&T, prior to and at the time of termination, had not given any written release/consent from the application of this restrictive provision, caused each plaintiff to reasonably believe they could not seek employment from other garment related companies and/or that other potential employers would not hire them because of such contract restrictions.  Plaintiffs were thus caused great and severe anxiety, severe mental anguish, suffering, and distress.

48.    The said referenced employment contract(s) was a form contract and, on information and belief, a contract of adhesion, prepared and drafted in advance by defendant and/or its counsels and presented to each plaintiff on a take it or leave it basis without negotiation or opportunity for review or consultation with counsel by plaintiffs and without opportunity for translation from English to a language/dialect spoken and understood by plaintiffs.

49.    On information and belief, defendant, as required by the NWA, executed with the Director of Labor, for each plaintiff, an Employer's Non-Resident Worker Agreement, to which each Plaintiff is a third-party beneficiary. Attached as **EXHIBIT "8"** hereto and incorporated herein by this reference is a standard form of said Non-Resident Worker Agreement used by DOL.

50.    Under the said third-party beneficiary agreement, defendant shall be responsible for all "expenses required by law of any nonresident worker" which includes physical examination and health clearance fees.

51.    The said third-party beneficiary agreement also requires defendant to provide each plaintiff a minimum of forty (40) hours of work per week, at all times, for the duration of each Plaintiff's respective employment contract.

### E.
### Plaintiffs' Unlawful Termination
### and their Replacement with Chinese Workers

52.    Plaintiffs pursuant to their agreement with L&T, partly oral and partly written, and the grants of transfer approved by DOL, commenced employment with L&T on various dates between February 2004 and March 2004.

53.    Approximately 2 months after the last plaintiffs began work in March 2004, by letter dated May 12, 2004, Ma. Luisa Dela Cruz-Ernest, as the Human Resources Manager and agent of Defendant L&T, gave each plaintiff a document on L&T's stationery and letterhead entitle "Notice of Termination" based on the

stated ostensible grounds and reasons of "due to the on-going re-engineering and reduction in force due to economic necessity." Attached as **EXHIBIT "9"** hereto and incorporated herein by this reference is a representative copy of the said termination notice.

54.     Defendant L&T terminated plaintiffs *en masse*, without individualized considerations of the legal rights, status, and condition of each plaintiff under their respective contracts, without and in contravention of each plaintiff's rights to due process. Furthermore, defendant did not consider or interview each plaintiff about their respective qualifications for other jobs and positions available through L&T, its affiliate and sister companies including Tan Holdings Corporation, and did not in good faith explore other alternatives to firing plaintiffs.

**F.**
**L&T's Post-Termination Oppressive,**
**Injurious and Outrageous Conduct**

55.     On information and belief, Defendant L&T, after plaintiffs' termination hired and brought into the CNMI new Chinese workers from the People's Republic of China to fill various positions in the company (L&T) aka L&T Group of Companies, Inc., its subsidiaries, and other garment factories affiliated with, owned or controlled by L&T or its parent company, Tan Holdings.

56.     Shortly after Defendant L&T terminated their employment, each of the plaintiffs, in order to support themselves and to mitigate damages resulting from their unlawful termination, started to look for other employment.

Page 17

57.    On various occasions after their May 12, 2004 termination, certain plaintiffs went to the Public Health Liaison Office at the DOL Building in San Antonio to obtain their health clearance certificates then needed by all plaintiffs to facilitate and support their employment application(s) with new prospective employers.

58.    The Public Health Liaison Office refused to release to plaintiffs their health clearances, explaining that Defendant L&T had instructed their office not to release plaintiffs' health clearance to any of the plaintiffs.

59.    As a result of L&T's interference with plaintiffs' right to have and secure their health certificates subsequent to having terminated plaintiffs, by having the Public Health Liaison Office not to release the certificates, defendant unreasonably interfered with plaintiffs' opportunity to obtain other employment.

60.    Since L&T had initially required and demanded, contrary to law, that plaintiffs pay for their health certificates and/or use the health certificates obtained by plaintiffs from their prior (now terminated) employers, L&T's conduct after prematurely and without good cause terminating plaintiffs, in refusing to promptly return/release plaintiffs' health certificates, was outrageous, especially when considered in light of L&T's special relationship and higher duty owed to its employee-plaintiffs as their employer.

\\

# V
## CAUSES OF ACTION

### First Cause of Action
### Defendant's Breach of Contract by Requiring Plaintiffs to
### Pay for Costs of Physical Examination and Health Clearance

61.    The allegations in paragraphs 1 through 60 are re-alleged and incorporated by reference in this First Cause of Action.

62.    At all relevant times herein, defendant was required by 3 CMC § 4438(b) and the employment contract, to pay the cost of required physical examinations and for health clearance certificates of plaintiffs as nonresident workers.

63.    At all relevant times herein, defendant was required by the Non-Resident Worker Agreement to which each plaintiff is a third-party beneficiary, to be responsible for payment of each plaintiff's physical examination and health clearance fees which are employer expenses.

64.    Each plaintiff was required to either pay or provide for, her physical examination fees or health clearance fee or both, by defendant, as set forth in EXHIBIT "4," "5" and "6" attached hereto.

65.    Notwithstanding, L&T shifted its burden and obligation to pay or provide for said examinations and fees to plaintiffs by requiring that plaintiffs pay for or provide said services as a condition to their employment.

66.    Defendant's failure and refusal to pay for or provide the physical

Page 19

examination and health clearance fees of plaintiffs was in breach of contract and of the specific promise of defendant to pay said fees as set forth in the Non-Resident Worker Agreement between defendant and the Director of Labor.

67.    Defendants' failure and refusal to pay the physical examination and health clearance certificate fees of plaintiffs, was a breach of their respective employment contracts and the Employer's Agreement executed by Defendant L&T and the Director of Labor of which plaintiffs are third-party beneficiaries, and constituted a violation of Section 4438(b) of the NWA.

68.    Defendant is thus liable to plaintiffs for the amount or value of the physical examination fees and health clearance fees paid by plaintiffs, plus prejudgment interest, and an additional amount as liquidated damages thereon under the NWA.

### Second Cause of Action
### Failure to Pay Under FLSA, MWHA, and the NWA

69.    The allegations in paragraphs 1 through 68 are re-alleged and incorporated by reference in this Second Cause of Action.

70.    As a result of defendant requiring plaintiffs to pay or provide for their respective physical examination and health clearance fees, said plaintiffs received or were paid less than the minimum wage and overtime wages prescribed under FLSA, MWHA, and the NWA for the respective pay periods.

Page 20

71.    Alternatively, defendant's acts in requiring plaintiffs to pay or provide said fees and services constitute and are deemed unauthorized deductions from wages or kickbacks resulting in each plaintiff being paid less than the minimum wage and applicable overtime wage rate.

72.    Defendant's acts in failing to pay plaintiffs their full minimum and overtime wages, or deducting the same, was done willfully and intentionally.

### Third Cause of Action
### Supplemental Claim for Unlawful Termination and Bad Faith Breach of Contract

73.    The allegations in paragraphs 1 through 72 are re-alleged and incorporated by reference in this Third Cause of Action.

74.    Defendant's termination of plaintiffs was unlawful and a breach of each plaintiff's respective employment contract and the Non-Resident Worker Agreement, because there was no just or valid cause for termination and the terminations were in contravention of the employment contracts and the Department of Labor's rules and regulations regarding termination.

75.    Defendant did not consider or explore other alternatives to the *en masse* termination of plaintiffs, such as re-assignment to other work, jobs or positions within the company or its subsidiaries or its other affiliated, owned or controlled companies, the defendant's acts and terminations were thus not done in good faith, were pretextual, unlawful, and taken in bad faith.

76.    Plaintiffs are therefore entitled to recover from defendants as damages their full contract wages and other lost benefits under their employment contracts had plaintiffs been allowed to perform and work through the unexpired term of their respective employment contracts, in an amount to be proven at trial.

**Fourth Cause of Action**
**Supplemental Claims for Breach of Express, Implied-in-Fact and**
**Implied-in-Law Covenants of Good Faith and Fair Dealing**

77.    The allegations in paragraphs 1 through 76 are re-alleged and incorporated by reference in this Fourth Cause of Action.

78.    Plaintiffs' employment contracts each contained express, implied-in-fact and implied-in-law covenants of good faith and fair dealing that neither party would do anything to prevent the other from performance under the contract or to enjoy the benefits of the contract.

79.    In terminating plaintiffs without good and valid cause as herein described, defendant acted in bad faith and breached said covenants of good faith and fair dealing of the contracts, with the intent of depriving plaintiffs of the benefits that each plaintiff reasonably expected to receive under their respective employment contracts.

80.    As a direct and proximate result of defendant's actions and conduct, plaintiffs suffered substantial and severe economic loss in benefits and wages under their contract.