**Colin M. Thompson, Esq.**
Law Offices of Colin M. Thompson
PMB 917, Box 10001
Saipan, MP 96950
Telephone: (670) 233-0777
Facsimile: (670) 233-0776

**Steven P. Pixley, Esq.**
Attorney at Law
Second Floor, CIC Centre
Beach Road, Garapan
Post Office Box 7757 SVRB
Saipan, M.P. 96950
Telephone: (670) 233-2898/5175
Facsimile: (670) 233-4716

*Attorney for Defendant*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **ABELLANOSA, JOANNA et. al.,** | Civil Action No. 05-0010 |
| **Plaintiffs,** | |
| vs. | **MEMORANDUM AND POINTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| **L&T INTERNATIONAL CORPORATION.** | |
| **Defendant.** | Date: August 31, 2006<br>Time: 9:00 a.m.<br>Judge: Hon. Alex R. Munson |

## INTRODUCTION

On October 27, 2005, Joanna Abellanosa, along with seventy five (75) other individuals (collectively "Plaintiffs"), filed their First Amended Complaint ("FAC") against L&T International Corporation ("L&T"). This case is not a class action. Each plaintiff presents independent claims. Thus, each plaintiff has an independent obligation to prove all necessary elements of each cause of

action asserted.  While some facts and circumstances may be shared among some of the plaintiffs, it remains the burden of each plaintiff to prove all elements of her claim.  In many material instances, certain plaintiffs will not be able to present admissible evidence to support their claims. The absence of evidence for any element, of any claim, for any plaintiff, entitles L&T to summary judgment as to that claim advanced by that plaintiff.

Plaintiffs alleged numerous causes of action and theories of recovery.  Defendant moves for summary judgment on all causes of action, theories of recovery and the lawsuits as a whole.  L&T submits this Memorandum is support of its motion together with declarations filed concurrently as well as evidence that may be produced at the hearing.

L&T moves for summary judgment on the first cause of action titled "Defendant's Breach of Contract by Requiring Plaintiffs to Pay for the Costs of Physical Examination and Health Clearance" because many of the Plaintiffs admitted that they did not pay for their health clearance or physical exams and because L&T was not obligated to pay these fees.

L&T moves for summary judgment on the second cause of action for "Failure to Pay Under FLSA, MWHA and the NWA" in part because many of the Plaintiffs admitted that they did not pay for their health clearance or physical exams.  This fact undermines the premise of Plaintiffs' second cause of action.  Further, Plaintiffs are not able to present admissible evidence to create a genuine issue of material fact because L&T complied with the terms and conditions of the relevant contracts and all relevant laws.

L&T moves for summary judgment on the third cause of action titled "Supplemental Claim for Unlawful Termination and Bad Faith Breach of Contract" because L&T terminated the Plaintiffs in a manner consistent with the employment contract.  Each contract of employment with each Plaintiff provided for termination in the event of a "reduction in force due to adverse economic conditions or economic necessity."  Each plaintiff was terminated on this ground pursuant to the terms of the contracts.

L&T moves for summary judgment on the fourth cause of action titled "Supplemental Claims for Breach of Express, Implied in fact and Implied in Law Covenants of Good Faith and Fair Dealing"

for the same reasons as stated above because this cause of action is nothing more than a restatement of the breach of contract claim as set forth in the first and third causes of action and because L&T acted in good faith.

L&T moves for summary judgment on the fifth cause of action titled "Intentional Infliction of Emotional Distress" because the Plaintiffs cannot show that the behavior of L&T was outrageous or that any of the Plaintiffs suffered severe emotional distress.

L&T moves for summary judgment on the sixth cause of action titled "Fraud and Deceit" because L&T did not make any false promises, Plaintiffs did not rely on any false promises, Plaintiff could not reasonably rely on oral promises, if any were made, in light of the integrated written employment contract and the Plaintiffs suffered no damage in reliance on any of the purported false promises.

L&T moves for summary judgment on the seventh cause of action titled "Claim for Declaratory Relief for the Return Air Fare" because at all relevant times and continuing to the present moment, L&T stands ready, willing and able to provide repatriation for the Plaintiffs at any time.  L&T has tendered return air tickets to any Plaintiff who wants to be repatriated.  The Plaintiffs have never requested repatriation and do not intend to be repatriated, which is a condition precedent to L&T's obligation to provide air tickets.

## STANDARD FOR GRANTING SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law.  *See* Fed. R. Civ. Proc. 56 c).  The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  *See* id.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party does not bear the burden of proof at trial, the initial burden of showing that no genuine issue of material fact remains may be discharged by demonstrating that "there is an absence of evidence to support the non moving party's case." *Id* at 325.  L&T does not bear the burden of proof at trial.  Therefore, L&T must show here that

there is an absence of evidence to support the Plaintiff's case. Here, the Court must examine whether each plaintiff can produce evidence to create a genuine issue of material fact on each element of each cause of action. For example, if one plaintiff can show that she was terminated unlawfully or paid less than she was due under contract and law, it does not satisfy all other Plaintiffs obligation to produce the same evidence. Each plaintiff must meet her burden or summary judgment must be entered against her.

After the moving party makes a properly supported motion, the responding party must present specific facts showing that contradiction of the moving party's presentation of evidence is possible. See *British Airways Bd. V. Boeing Co.*, 585 F. 2d 946, 951 (9th Cir. 1978)). It is not enough for the responding party to point to the mere allegations or denials contained in the pleadings. Instead, it set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial. The evidence must be more than a mere "scintilla"; the responding party must show that the trier of fact could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 US. 242, 252 (1986). Accordingly, summary judgment should be granted "[i]f the [responding party's] evidence is merely colorable ... or is not significantly probative." *Eisenberg v. Insurance Co. of North America*, 815 F. 2d 1285, 1288 (9th Cir. 1987). Based on Plaintiffs inability to produce evidence to support the elements of the causes of action in the FAC, summary judgment should be entered in favor of L&T.

## THE PLAINTIFFS BREACH OF CONTRACT CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT BECAUSE THEY LACK SUFFICIENT EVIDENCIARY SUPPORT.

Plaintiffs first, third, fourth and seventh causes of action are variously titled but are in essence breach of contract claims. Summary judgment should be granted on these causes of action because there is an absence of evidence to support them. Plaintiffs must prove that L&T failed to perform an obligation due under contract. "When performance of a duty under a contract is due, any

- 4 -

nonperformance is a breach.  Restatement (Second) of Contracts § 235(2) (1981). The Restatement is made applicable in the CNMI by 7 CMC § 3401." *Reyes v. Ebeteur,* Civ. No. 88-0744 (Memorandum Decision) April 12, 1990, CASTRO, Judge.  L&T acknowledges the existence of employment contracts between L&T and the Plaintiffs.[1]  All obligations between the parties are set forth in The Employment Contracts.[2]  Plaintiffs' claims of breach of contract fail because L&T performed all duties and obligations due under The Employment Contracts.

In the third cause of action, Plaintiffs claim L&T breached the employment contract by terminating their employment. Plaintiffs claim that the "termination of plaintiffs was unlawful and a breach of each plaintiff's respective employment contract and the Non Resident Worker Agreement, because there was not just or valid cause for termination and terminations were in contravention of the employment contracts..." FAC at ¶74.  First, the Plaintiffs are not parties to the Non Resident Worker Agreement and lack standing to enforce it.  Secondly, Plaintiffs cannot produce evidence to show that L&T breached the Non Resident worker Agreement. Thirdly, The Employment Contracts provided for termination under a number of conditions.[3]  The Plaintiffs contracts were terminated pursuant to the terms and conditions of The Employment Contracts.[4]  The Employment Contracts provide for termination in the event of a "reduction in force due to adverse economic conditions or economic necessity."[5]   As   is   detailed   in   the   declaration   of   Joaquin   S

---

[1] See the Declaration of Joaquin S. Torres filed concurrently with and in support of this motion ("JST Decl.").

[2] JST Decl. at par. 6

[3] JST Decl. at par. 30

[4] JST Decl. at par. 30

[5] JST Decl. at par. 30

Torres, Human Resources Director for L&T, the termination of the Plaintiffs was consistent with and authorized by The Employment Contracts.

In the first cause of action, Plaintiffs allege that L&T breached The Employment Contracts by failing to pay for the Plaintiffs' health clearances and medical exams. "Defendants' [sic] failure and refusal to pay the physical examination and health clearance certificate fees of plaintiffs, was a breach of their respective employment contracts...." FAC ¶ 67. However, at least 34 of the Plaintiffs did not pay for their health clearances. According to the Exhibit 6 of the First Amended Complaint ("FAC") thirty four plaintiffs did not pay for their health clearances or medical exams. By their admission, this claim cannot survive summary judgment for these 34 individuals because even if L&T was obligated to pay for the health clearances, these 34 plaintiffs suffered no damage. Secondly, there is no contractual obligation for L&T to pay for an applicant's health clearance or medical examination. The contract of employment does not provide for the payment of these costs.[6] It is a condition imposed by the CNMI Department of Labor for the processing of a nonresident worker contract.[7] What evidence can the Plaintiffs produce to show that L&T breached a contract by failing to perform a nonexistent contractual duty?

Plaintiffs fourth causes of action is a breach of contract claim. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement 2d of Contracts, § 205. The damages available under this claim are contract damages only. The Commonwealth Supreme Court held that punitive damages are not available in contract actions. "Restatement of Contracts § 355 specifies that a plaintiff may not recover punitive damages for breach of contract "unless the conduct constituting the breach is also a tort for which punitive damages are

---

[6] JST Declaration at exhibit "A"

[7] JST Decl. at par. 11

recoverable." Restatement (Second) of Contracts § 355 (1981). In other words, the breaching party's act must not only be a breach of contract, but must also amount to an independent, intentional tort. *Pangelinan v. Itaman,* 4 N.M.I. 114 at 119. Breach of the duty of good faith and fair dealing is not an independent tort and the only damages available are contact damages. L&T did not breach The Employment Contracts or the implied duty of good faith and fair dealing.[8]

As set forth in the declarations of Joaquin S. Torres and Ma. Corazon Quing, none of the Plaintiffs was terminated based on bad faith.[9] The terminations were the result of a reduction in force necessitated by declining orders as provided for in the employment contracts.[10] L&T complied with all terms of the contracts including the implied duty to act in good faith and fair dealing.

The seventh cause of action is a claim for declaratory relief for the return air fare. The right to return air fair is contractual and the term is present in The Employment Contracts. The Employment Contracts provide that L&T will pay for the repatriation of Plaintiffs.[11] The Plaintiffs cannot present evidence that they requested repatriation or that they want to be repatriated. Thus, Plaintiffs fail to present evidence that L&T failed to perform a duty to repatriate the Plaintiffs under the Employment Contracts.

---

[8] See generally the declarations of Joaquin S. Torres and Corazon Quing filed concurrently and in support of this motion.

[9] Id.

[10] JST Decl. at par. 21

[11] See exhibit "A" to the JST declaration.

## PLAINTIFFS CLAIM FOR FRAUDULENT MISREPRESENTATION
## CANNOT SURVIVE SUMMARY JUDGMENT

L&T moves for summary judgment on Plaintiffs' claim for fraudulent misrepresentation. Each plaintiff must present evidence that L&T intentionally made a misrepresentation to them with the intention to induce action upon which the plaintiff reasonably relied to her damage. As stated by the Commonwealth Supreme Court, "[o]ne who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to them by their justifiable reliance upon the misrepresentation. Restatement (Second) of Torts § *525* (1977); Ada v. K. Sadhwani's, Inc., 3 N.M.I. 303 (1992). Each plaintiff bears a burden in this summary judgment hearing to present admissible evidence to establish a genuine issue of material fact on each element of their claims for misrepresentation. Plaintiffs cannot meet their burden and therefore, summary judgment should be entered.

Each Plaintiff must present sufficient evidence to establish a genuine issue of material fact as to each element of this cause of action. Each and every Plaintiff will be unable to meet their burden. Some of the plaintiffs admit that L&T made no promises other than those in the employment contract.[12] The plaintiff's admission is consistent with L&T position that there were no promises made other than those in The Employment Contracts.[13]

Further, it would be unreasonable for any plaintiff to rely on the alleged statement by Ms. Baby Lopez, that "beginning with plaintiffs' second year or renewal contract, defendant would pay each

---

[12] CMT Decl. at par. 5

[13] JST Decl. at par. 8.

year thereafter plaintiffs' medical examination and health certificate fees". [14] This statement was purportedly made prior to the plaintiffs' signing their employment contracts with L&T.    The Employment Contracts specifically, in writing, state that the period of employment will be only for one year and is terminable under certain circumstances.    It does not make logical sense for the Plaintiffs to rely on some implication from Ms. Lopez's statement in clear contradiction to The Employment Contracts.  In fact, many of the plaintiffs did not actually rely on Ms. Lopez statement or any other verbal promise in deciding to accept employment with L&T.[15]

Ms. Lopez's alleged statement is barred by the parole evidence rule found in Restatement 2d of Contracts, § 213, which reads

§ 213 Effect of Integrated Agreement on Prior Agreements (Parol Evidence Rule)

(1) A binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them.
(2) A binding completely integrated agreement discharges prior agreements to the extent that they are within its scope.
(3) An integrated agreement that is not binding or that is voidable and avoided does not discharge a prior agreement. But an integrated agreement, even though not binding, may be effective to render inoperative a term which would have been part of the agreement if it had not been integrated.

The Commonwealth Supreme Court has adopted Restatement 2d of Contracts, § 213. *See Seol v. Saipan Honeymoon Corp.*, 5 N.M.I. 238 (1999).

Plaintiffs allege that Ms. Lopez misrepresented facts about employment prior to the plaintiffs' signing their agreement.  Even if this is true, there can be no liability for fraud because The Employment Contracts were integrated and the term of employment was within the scope of the contract. "The parol evidence rule provides that a binding, completely integrated, written agreement

---

[14] FAC at ¶ 96

[15] CMT Decl. at par. 5

discharges all other agreements, written or oral, that were made before the completely integrated agreement, to the extent that the prior agreements are within the scope of the completely integrated agreement." RESTATEMENT (SECOND) OF CONTRACTS § 213(2).  There is no doubt that the one year term of employment was within the scope of the employment contract, which specifically stated that the period of employment was for one year.  There can be no doubt that the employment contract was completely integrated.  "An agreement is integrated unless it is established by other evidence that the writing did not constitute a final expression." *Seol v. Saipan Honeymoon Corp.*, 5 N.M.I. 238, 240 (1999) (citing (SECOND) OF CONTRACTS § 210(1).   The Employment Contracts Provide for integration.[16]  Plaintiffs have the burden of showing non-integration.  *Del Rosario v. Camacho*, 2001 MP 3 ¶73.  Plaintiffs cannot claim the contract is not a "final expression" because, as a matter of law, it is the only contract into which the plaintiffs, as nonresident workers, could enter.

## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE SECOND CAUSE OF ACTION

This cause of action seems to incorporate a number of legal theories all premised on the claim that Plaintiffs paid for their own health clearance and medical exams.  As set forth above, 34 plaintiffs did not pay for their health clearances and medical exams.  In addition to this admission by 34 plaintiffs, undermining the factual basis for the alleged liability, Plaintiffs cannot produce sufficient evidence to meet their burden.  Judgment on this cause of action should be entered in favor of the L&T.

---

[16] JST Decl. at Exhibit "A"

## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

When the District Court previously dismissed the Plaintiffs' claim for intentional infliction of emotional distress, it noted that in the Commonwealth, the common-law tort of intentional infliction of emotional distress is discussed in *Charfauros v. Board of Elections*, 5 N.M.I 188 (1998). Order on Motion to Dismiss entered September 30, 2005 at p.8 ("Order"). *Charfauros* states that IIED is "a limited cause of action. It is not available to anyone who feels emotionally disturbed by the acts of others. Rather, it is limited to those instances where the act complained of is outrageous, and the emotional distress suffered is severe." Charfauros v. Bd. of Elections, 1998 MP 16, P60 (N. Mar. I. 1998). In the CNMI, which has adopted Restatement (Second) of Torts § 46, to maintain a cause of action for the intentional infliction of emotional distress requires proof of four elements: (1) that the conduct complained of was outrageous; (2) that the conduct was intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.[17] In setting forth the above rule, the Commonwealth Supreme Court highlighted the "important duty of courts to guard the gateway to the cause of action" for IIED claims, lest the courts "become embroiled in petty disputes that nonetheless

---

[17] Restatement (Second) of Torts § 46 governs a claim for infliction

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>   (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

- 11 -

cause someone to feel emotionally disturbed and distressed." *Id.* at 63. The Commonwealth Supreme Court went on to warn: "If courts do not in clear cases exercise their review of such claims in the first instance, the standards of outrageousness will be expanded into an unreviewable jury question, diluting the importance of the cause of action and the available relief." Id at 64 citing *Keiter v. Penn Mutual Ins. Co.*, 900 F. Supp. 1339, 1348 (D. Haw. 1995).

The law governing the tort of Intentional Infliction of Emotional Distress makes it clear that the plaintiff bears a heavy burden if she is to succeed. *Dulude v. Fletcher Allen Health Care, Inc.*, 807 A.2d 390 (Vt. 2002)  ("A plaintiff's burden on a claim of IIED is '[a] heavy one.'");  *Maxfield v. North American Phillips Consumer Electronics Co.*, 724 F. Supp. 840, 844 (USDC UTAH, CENTRAL DIVISION 1989) ('the plaintiff bears a heavy burden to prove intentional infliction of emotional distress"). The Plaintiffs cannot meet their burden and this Court should enter judgment in favor of defendant on their emotional distress claim.

Further, when this Court dismissed plaintiffs' claim, it noted that other courts had "found no outrageous conduct in a number of cases based on facts far more egregious than that alleged in this case." Order at 9 (*citing Lupo v. Wyeth-Ayerst Laboratories*, 4 F.Supp.2d  628, 642 (E.D.Tex 1997) and *Rose v. James River Paper Co.*, 2 F.Supp.2d 245, 253 (D.Conn 1998).   The case law is replete with situations involving conduct more egregious than that alleged by the present plaintiffs, yet denying emotional distress claims. *See e.g.*, *Atkinson v. Denton Publ. Co.*, 84 F.3d 144, 151 (ca 5 1996) (conduct, including dissemination within the company of false and defamatory reasons for plaintiff's discharge, insufficient to state an intentional infliction of emotional distress claim); *Sperber v. Galigher Ash Co.,* 747 P.2d 1025, 1028-29 (Utah 1987) (lying to employee about reasons for termination is not outrageous conduct); *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 123

---

(b) to any other person who is present at the time, if such distress

- 12 -

(N.C. App. 1986) (finding that refusal to grant pregnancy leave or permission to go to hospital and cursing of pregnant employee, while improper, did not constitute outrageous conduct as a matter of law);

Of particular note is *Pytlik v. Professional Resources, Ltd.,* 887 F.2d 1371, (CA 10 1989), in which an engineer was recruited by an Oklahoma company to work for an Italian corporation. In Italy the engineer was injured during a work-related trip, was unable to obtain workers' compensation benefits from his employer, consulted an attorney, and was fired shortly thereafter. In fact, he was fired while laying in his hospital bed.  He sued for breach of contract, intentional infliction of emotional distress, and wrongful discharge. The district court granted the defendants' motion for summary judgment on the emotional distress count. Affirming, the 10th Circuit said that the employer's conduct in handling the workers' compensation claim and in discharging the plaintiff while he was in the hospital did not, as a matter of law, constitute outrageous behavior. "The allegation that Pytlik was unlawfully terminated while in the hospital is no more than a claim he was fired without good cause and as a result suffered emotional distress. This allegation does not support a claim for intentional infliction of emotional distress." *Pytlik,* at 1379.

It is clear that the above cases demonstrate the principle elucidated by this Court in its Order: "The facts supporting a claim for intentional infliction of emotional distress must be based upon conduct that is more egregious than the underlying breach of contract claim."  Order at 9.   The

results in bodily harm.

- 13 -

Plaintiffs testimony does not present any such evidence.[18]    L&T did not engage in outrageous conduct,[19] and judgment should be entered in favor of L&T.

Assuming, *arguendo*, that in reducing its workforce, L&T had acted beyond any civilized measure and had intentionally caused the Plaintiffs emotional distress, Plaintiffs' claim must still fail because any alleged distress allegedly felt by the Plaintiffs is not severe enough to support a claim of intentional infliction of emotional distress.[20]    The "plaintiffs must demonstrate their injuries were severe" *Charfauros* at 73.

In *Charfauros*, the Commonwealth Supreme Court adopted standards to gauge whether the distress claimed was sever enough to support a claim.

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be

---

[18] See Declaration of Colin M. Thompson filed concurrently and in support of this motion ("CMT Decl.").

[19] See Declarations of Joaquin S. Torres and Corazon Quing.

[20] The commentary to Restatement § 46 states that:

> d *Extreme and outrageous conduct*. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. **Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exlaim. " Outrageous."**

- 14 -

expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

> *Charfauros* at 72, (*quoting* Comment d. to RESTATEMENT (Second) of Torts §46). In fact, the Court went on to *emphasize* "There is no occasion for the law to intervene in every case where someone's feelings are hurt." *Id*

*Charfauros* at 73, (*quoting* Comment d. to RESTATEMENT (Second) of Torts §46) (emphasis in original). It absolutely strains credulity to think that being included in a reduction in force is something that *no reasonable person could be expected to endure*, yet that is exactly what plaintiffs must convince this Court of in order to proceed with their claim. If credence is given to the Plaintiffs' claims, then every person who is ever let go from a job would have a claim against their former employers.

The Commonwealth's Supreme Court made very strong statements that preclude an award for emotional distress based on business-related angst. In *Charfauros*, the Court held that that "worry" about impacts on a business would not support a claim for emotional distress. Nor is "difficulty finding a job" compensable. Not surprisingly, the Commonwealth Supreme Court seems to prefer actual medical testimony from a physician. *See Mendiola v. Marianas Agupa Enterprises, Inc.*, 5 N. Mar. I. 169, 1xx (1998) ("The jury heard testimony from Dr. Hocog confirming that Angie suffered from a medical illness, acute anxiety, and not just 'nerves or an imaginary condition'") The Plaintiff did not seek medical treatment for their alleged emotional distress[21] and therefore cannot sustain their claim.

Not to belabor the point, but it is instructive to note that other courts have granted summary judgment against plaintiffs who have alleged to have suffered greater distress. *See, e.g., Mucklow v.*

---

[21] See CMT Decl. at par. 3

- 15 -

*John Marshall Law School*, 531 N.E.2d 941, 947 (cite date) ("Nor does the distress alleged" [claims plaintiff suffered severe emotional distress manifested by anxieties, depression, and other physical manifestations such as the loss of time, loss of ability to concentrate, and interference with peace of mind] "measure up to allow recovery under this theory"). The *Strong-Thorne Mortuary* case puts the lack of severity of the present plaintiffs' claims that they were emotionally damaged by losing their jobs into perspective. *See Jaynes v. Strong-Thorne Mortuary, Inc.*, 954 P.2d 45 (N.Mex 1997). In *Strong-Thorne Mortuary*, the court held that as a matter of law, the plaintiffs did not suffer distress that was extreme enough to sustain a claim of intentional infliction of emotional distress. *See* id. at 50 ("To recover emotional distress damages, those damages must be 'severe.' By 'severe' we intend that a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances. The facts of this case do not support a finding of intentional infliction of emotional distress based on this objective standard.") (citations and quotations omitted).

## CONCLUSION

Based on the foregoing, L&T respectfully requests that the Court enter summary judgment in favor of L&T on all causes of action, theories of recovery and this lawsuit in its entirety.

Dated this 4th day of August 2006

/s/ Colin M. Thompson
**COLIN M. THOMPSON, ESQ.**
Attorney for Defendant