F I L E D
Clerk
District Court

AUG 3 1 2006

For The Northern Mariana Islands
By———————————
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
### FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ABELLANOSA, JOANNA, et al., | Civil Action No. 05-0010 |
| **Plaintiffs,** | |
| v. | **DECLARATION OF JOCELYN TOBIAS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **L&T INTERNATIONAL CORPORATION,** | |
| **Defendant.** | |

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

I, JOCELYN TOBIAS, hereby declare as follows:

1.      I am over the age of eighteen years old, have personal knowledge of the facts set forth herein, am competent to testify as to these facts if called as a witness in a court of law, and if called would testify as stated herein.

2.      I am a citizen of the Republic of the Philippines. I was hired by L & T International Corporation as a nonresident contract worker, to work in the position of Hand Packer in February 2004. During the hiring process, L&T did not pay for my health certificate. Instead L&T used my existing health certificate from my previous employment.

3.      I worked for L&T as a Hand Packer for three (3) months, more or less, until May 13, 2004 when I, together with numerous other Filipinos, were told that our employment contract was terminated effective immediately for the stated reason of a reduction in force.

4.      During my short stint as Hand Packer, L&T never gave me copies of any rules and regulations concerning discipline, termination, employee conduct or grievance procedures, and to my knowledge and/or information and belief, none of my co-workers Plaintiffs were given copies of such documents prior to termination by L&T.

5.    Plaintiffs' position as Hand Packers was advertised for a wage of $3.05 hourly.

6.    There was no individualized measurement or testing to determine each Packer's individual performance or production. The only production measurement or test was done by counting the machine output (production) from the different lines of Packers. There was really no way for me as an individual packer to control or show an increase in the number of products because I was just one individual on the line with many others.

7.    Prior to signing my employment contract and at the time the contract was presented to me in the Human Resources (HR) for signing, I was not given an opportunity or time to read the contract before signing it. The person at the window just slipped the document through the counter-window with the pages turned back, showing only the signature page, and pointed to where I was to sign it, which I did. If I hesitated in signing I fear I might lose the chance to work for L&T. I saw the same procedure happen with workers who signed before and after my turn.

8.    Were were employed and worked for L & t International Corporation as a hand packer, in 2004 I and my co-workers were present on or about May 13, 2004, when I and other workers in the hand packing section were summoned by the calling of our individual names over the public address system to meet and report to the human resources (HR) office.

9.    I did not know why I (We) were being called to come to HR.

10.    I thought that perhaps we were being called regarding receipt of our anticipated ATM Card that the company had us previously filled-out an application for, as they said to make it easier and more convenient for us workers to access and get our anticipated bi-weekly wage payments without having to stand in line waiting for and trying to cash payroll checks.

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

2

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96050 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

11.    As we arrived at the designated meeting room I observed other workers being asked to give and surrender our company ID badge-cards, which I and my co-workers did. Corazon Quing, Malou Ernest and Rhodora Bernabe known to us as HR staff were present at the May 13, 2004 meeting.

12.    That I did not see or hear Corazon Quing read or reading from any document or the so-called "communication plan" as described and stated in Exhibit "A" attached to the Declaration of Corazon Quing.

13.    More specifically, I (we) were not told as stated by Corazon Quing that I (we) the workers, had the right to appeal our termination to the "Legal Department" of L&T or to any one else.

14.    Neither Malou Ernest, Corazon Quing or any one else at the May 13, 2004 meeting, informed us, that the purpose of the so-called second check was "to cover for 10 days pay in lieu of notice," as stated in paragraph 7, Declaration of Corazon Quing.

15.    It was my honest belief that I and my co-workers were terminated on May 13, 2004 and that the termination was effective immediately on and from May 13, 2004, because I (we) were told by HR staff at the May 13, 2004 meeting that today (May 13, 2004) was our last day of employment and at the meeting they demanded that we give up and turn in our company ID cards which were required and needed for company employees to enter company premises; and in addition being required to "turn over any and all company properties in your possession... on or before May 13, 2004" as stated in the Notice of Termination.

16.    As a result I believed and felt that I was forced to stop working on May 13, 2004, the same date that the Notice of Termination (dated May 12, 2004) was given to me. Hence, I was not given any prior Notice of Termination.

17.    I and the other plaintiffs worked a work schedule and shift, and worked Monday

3

through Saturday, seven (7) hours a day, six (6) days a week, for a total of forty-two (42) hours each work week, including two (2) hour overtime each work week.


18. On the day we were terminated, I was shocked and was caught by surprise. I felt like everything had fallen apart for me at that time. At that time, I wanted to shout... I wanted to scream to let go of my negative emotions. But I got hold of myself.

19. When I left L&T, I was really feeling extremely bad. I was thinking of my terminated employment with L&T and all my dreams, aspirations and expectations went down with it. I was very upset at that time that I could not sleep. It is just too much for me to bear.

20. My child was severely affected as I started being harsh on him, scolding him, and shouting at him for almost insignificant matters.

19. At the time o f my termination no one from L&T offered to assist me in finding other employment or told me that they would or could assist me in getting work with affiliate companies of L&T.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this 31st day of August, 2006.


/s/

_____
Jocelyn Tobias
Declarant

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753