Colin M. Thompson, Esq.
Law Offices of Colin M. Thompson
PMB 917, Box 10001
Saipan, MP 96950
Telephone: (670) 233-0777
Facsimile:   (670) 233-0776

*Attorney for Defendant*

F I L E D
Clerk
District Court

SEP 1 2 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT

## FOR THE

## NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| ABELLANOSA, JOANNA et. al., | ) | Civil Action No. 05-0010 |
| | ) | |
| **Plaintiffs,** | ) | **REPLY** |
| | ) | |
| vs. | ) | |
| | ) | |
| **L&T INTERNATIONAL CORPORATION.** | ) | |
| | ) | Date: September 14, 2006 |
| **Defendant.** | ) | Time: 9:00 a.m. |
| | ) | Judge: Hon. Alex R. Munson |

## INTRODUCTION

L&T International Corporation ("L&T") submits this Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment[1].  This Reply will point to the absence of evidence supporting Plaintiffs' claims. Since Defendant properly moved the court for summary judgment based on Plaintiffs lack of evidence, the burden shifts to the Plaintiffs under Rule 56(e) of the Federal Rules of Civil Procedure to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to

---

[1] To the extent the Court interprets the Plaintiffs' opposition as a cross motion, Defendant opposes entry of summary judgment in favor of the Plaintiffs on each as every claim.

1

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 91 L. Ed. 2d 265, 274 (1986).

Seventy three of the seventy six plaintiffs **did not** submit declarations. How can they establish their claims without presenting direct evidence of, *inter alia,* their emotional distress, their reliance on false promises or measure of damages, if any? Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322. Only three plaintiffs submitted affidavits: (1) Rosario R. De La Cruz; (2) Mila M. Sapiandante; and (3) Jocelyn Tobias (collectively "Declarants"). However, even the Declarations fail to provide sufficient evidence to create a genuine issues of material fact for the jury on *their own claims*, much less the other seventy three plaintiffs who presented no direct evidence whatsoever. None of the Declarants state that they were induced to accept employment with L&T because of false promises made to them by L&T. None present evidence that L&T acted "outrageously" when it terminated their employment. None present evidence to create a genuine issue of material fact that the Plaintiffs were terminated for any reason other than because of a reduction in force.

Beyond the testimony of the Declarants, there is only silence: no declarations from the other plaintiffs, no submission of documents to support claims of illegal deductions or breach of contract, no medical records or doctor's reports to substantiate emotional distress and no expert opinions. Summary judgment is proper if, after adequate time for discovery, the non-moving party fails to establish the existence of an element essential to its case and on which that party would bear the burden of proof at trial. *Id at* 322. If there is a complete failure of proof on an essential element, there is no longer a genuine issue of material fact. *Id* at 323. As shown more specifically below, there is a complete failure of proof on essential elements of each claim and therefore judgment should be entered in favor of defendant.

## THE FRAUD CLAIM

In opposition, Plaintiffs argue that because the Employment Contracts refer to other provisions-company rules previously filed with the Department of Labor the contracts are not integrated. This is the Plaintiffs sole effort to prove claims for fraud and deceit. What remains of the analysis is a dearth of evidence.

Plaintiffs argue that parol evidence should be allowed because the Employment Contracts refer to "Company Rules and regulations previously filed with DLI".[2] But, the Employment Contracts provide for integration[3]. The Commonwealth Superior Court ruled that if a contract provides for integration by its terms, then the contract is integrated. "In order to look past this clear indication of the parties' intent, the court would have to find that the Memorandum of Agreement was not an "integrated document" as defined by Restatement (Second) of Contracts § 209 (1981). On the contrary, by its terms, the memorandum here is fully integrated." [4]  Furthermore, under CNMI statute, a non-resident may only work pursuant to an approved written contract.[5] This statue mandates integration of non-resident workers contracts. Finally, reference to a specific document does not destroy and integrated contract, but merely expands the scope of integration to include that specifically identified document.[6]

As a consequence of the integration of the Employment Contract, any alleged promise made by L&T to the Plaintiffs about their employment should be discarded. "The parol evidence rule provides that a binding, completely integrated, written agreement discharges all other agreements, written or oral, that were made before the completely integrated agreement, to the extent that the prior agreements are

---

[2] Despite the argument, Plaintiffs do not present parol evidence relating to the terms and conditions of employment as alleged in the FAC.

[3] "Entire Agreement. The foregoing terms and conditions constitute the sole, entire agreement of the Parties herein and shall supersede any other agreement, written, verbal or otherwise . See Exhibit A to the declaration of Jack S. Torres pp 3-4.

[4] *Ramon C. Mafnas, v. Matao C. Yokeno*, et al., In The Superior Court For The Commonwealth Of The Northern Mariana Islands Civil Action No. 90-0550 (Decision and Order on Cross-Motions for Summary Judgment)(December 7, 1993)

[5] 3 CMC §4437(d) No employer or nonresident worker shall execute any contract, make any other agreement, or change any existing contract, in writing or otherwise, regarding the employment of such worker, without the approval of the chief, and no nonresident worker shall perform labor or services within the Commonwealth except pursuant to an approved contract or an approved change to this contract.

[6] *Pio v. John B. Gilliland Constr., Inc.*, 560 P.2d 247, (Ore. 1975) (Memorandum Agreement incorporated by reference a Master Agreement and agreements establishing trust funds; Court found that the execution of the Memorandum Agreement was an integration of the final agreement of the parties, and "collateral oral agreement" was in direct conflict with the express words of the integration and was, therefore, necessarily inoperative.)

within the scope of the completely integrated agreement." RESTATEMENT (SECOND) OF CONTRACTS § 213(2).    In a recent Ninth Circuit decision, the Court affirmed the district court's dismissal of an employee's claim for promissory fraud based on the application of the parol evidence rule.    In *Brokaw v. Qualcomm Inc.* the court found that the

> "[e]mployment documents squarely establish that *Brokaw* was an at-will employee and that any stock options granted to him were scheduled to vest over a five-year period and expire shortly after the termination of his employment. These express agreements require us to affirm the district court's decisions on Brokaw's contract-based claims and his claims of promissory fraud, negligent misrepresentation, and unjust enrichment. *See Bank of America Nat'l Trust & Savs. Ass'n v. Pendergrass*, 4 Cal. 2d 258, 48 P.2d 659, 661 (Cal. 1935) (holding that California law does not permit parol evidence of "a promise directly at variance with the promise of the writing"); *California Medical Assn. v. Aetna U. S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 172, 114 Cal. Rptr. 2d 109 (Cal. Ct. App. 2001) (holding that an unjust enrichment claim cannot lie where "express binding agreements exist and define the parties' rights").*Brokaw v. Qualcomm Inc.*, 122 Fed. Appx. 305, 306 (9th Cir. 2004).

This court should reach the same result and enter judgment in favor of L&T.

However, even if the court finds that the Employment Agreement was not integrated, the absence of evidence on other elements justifies the grant of summary judgment.    Again, there are only three declarations.    None of the Declarants mention anything about a false promise made to them by L&T. There is no evidence that L&T intentionally made false promises to any plaintiff to induce them to accept employment.[7]    There is evidence that L&T did not make false promises.[8]    None of the Declarants mention that they accepted employment because of they relied on a false promise.[9]    Plaintiffs, Russel Aquino, Amalia Balcita, Corazon Domine, Belinda Mendoza, Marla Mateo, Delma Bantillo and Amalia Miranda all made admissions in their depositions that are contrary to the existence of fraud and deceit.[10] Amalia Miranda testified that no one at L&T promised here employment for any length of time, but that

---

[7] Fraud and negligent misrepresentation both require a false statement relied upon by another. In addition, fraud requires the statement to be made knowingly, i.e., with scienter. (4 Witkin, Summary of Cal. Law (8th ed. 1974) § 446, p. 2711.) *Burton v. Security Pacific Nat. Bank*, 197 Cal. App. 3d 972, 980 (Cal. Ct. App. 1988)

[8] Jack S. Torres presented a declaration in support of L&T's motion in which he testified that all promises made to the Plaintiffs were contained in the Employment Contracts.

[9] See declarations filed in support of Opposition to Motion for Summary Judgment.

[10] See Declaration of Colin M. Thompson filed in support of Motion for Summary Judgment ("CMT Decl.") at ¶ 5.

she expected to work for one year "because it is a contract."[11]  There is no evidence in the record that the Plaintiffs were damaged because of the alleged fraud.  Here, Declarants join in the silence of the other seventy three plaintiffs.  There is a total absence of evidence on most of the elements of fraud.[12]

## THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.

When the District Court previously dismissed the plaintiffs' claim for Intentional Infliction of Emotional Distress ("IIED"), it noted that in order to prevail on the claim for Intentional Infliction of Emotional Distress, a plaintiff must prove four elements: (1) that the conduct complained of was outrageous; (2) that the conduct was intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.  Order filed September 30, 2005 at 8 (citing *Charfauros v. Board of Elections*, 5 N.M.I 188 (1998)).  None of the Plaintiffs presented evidence sufficient to withstand L&T's motion for summary judgment.  Further, L&T has not engaged in any outrageous conduct; L&T did not intentionally or recklessly cause any plaintiff any emotional distress;[13]  L&T's actions were not the proximate cause of any distress allegedly encountered by any plaintiff;[14] and a review of the evidence properly before the Court shows that any distress allegedly sustained by any plaintiff is not severe enough to make out a claim for IIED.[15]  Of the 76 individual plaintiffs, only three (3) filed declarations (Plaintiffs Rosario De La Cruz, Jocelyn Tobias and Mila Sapiandante) and one person (Ariel Cruz) filed an affidavit on behalf of Plaintiff Ruby Carait.  Of the four declarations, only three (De La Cruz, Tobias and Cruz) even attempt to support an IIED claim; Plaintiff Mila Sapiandante's declaration does not

---

[11] CMT Decl. At ¶ 5.

[12] "[o]ne who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to them by their justifiable reliance upon the misrepresentation. Restatement (Second) of Torts § 525 (1977); *Ada v. K. Sadhwani's, Inc.*, 3 N.M.I. 303 (1992).

[13] See declarations of Jack S. Torres and Corazon Quing filed in support of Defendant's motion for summary judgment.

[14] Plaintiffs did not present any competent testimony to establish that any actions or omissions of L&T were the proximate cause of any emotional distress suffered by any plaintiff.  Plaintiffs did not designate any expert witnesses.

[15] Please refer to declarations of Ms. De La Cruz, Ms. Tobias and Mr. Cruz filed in support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.

mention any distress whatsoever. This is not a class action.[16] Accordingly all Plaintiffs may not rely on the assertions made by the Declarants in order to support their claims.    *Charfauros* makes that point very clear: Each individual plaintiff must make out her own claim. *Charfauros*, 5 N.M.I at 204 (grant of summary judgment against Plaintiffs *Charfarous* and *Atalig* affirmed, while Plaintiff got a reversal based on severity of damages she alleged).

L&T did not engage in any outrageous conduct. Plaintiff Ms. Sapiandante's and Ms. Tobias' declarations relate that they felt they were fired on May 13, 2004, that they were told May 13th was their last day of employment and that they had to turn in company property and their ID badge.[17] Plaintiff Tobias adds the allegation that they were "told our employment contract was terminated effective immediately for the stated reason of a reduction in force." Plaintiffs Sapiandante and Tobias fail to introduce admissible evidence detailing any outrageous conduct on the part of L&T. Plaintiff De La Cruz states nothing of the manner of her termination other than that it was "as a result of alleged reduction in force (RIF)…"[18] Plaintiff De La Cruz fails to allege, let alone introduce admissible evidence detailing any outrageous conduct on the part of L&T. Ariel Cruz alleges no first hand knowledge of the manner in which Plaintiff Carait's employment was terminated. A review of the declarations shows that this is a business dispute for which the tort of IIED does not apply. "Injuries to one's business are not compensable through an action for the intentional infliction of emotional distress." *Charfauros* at 203.[19]

---

[16] Were an attempt made to certify this as a class action, L & T notes that the attempt would likely fail, for based on the nature of the IIED claim, it is probable that the common questions could not predominate over individual ones without eliminating or eroding the traditional elements of the tort. See *In re Hotel Charges*, 500 F.2d 86, 89 (9th Cir. 1974)(applying analysis to tort of Fraud).

[17] Declarations of Sapiandante. at ¶ 15 and Tobias at ¶¶ 11, 15.

[18] Declaration of Ms. De La Cruz. at ¶ 4.

[19] The Commonwealth Supreme Court's decision is in line with many other courts that have considered the issue. See *Goosens v. AT&T Corp.*, No. EP-00-CA-002-DB, 2000 WL 33348222, at *3 (W.D.Tex. April 3, 2000) (simply terminating an employee without more cannot amount to IIED); *Taylor v. Houston Lighting and Power Co.*, 756 F. Supp. 297 USDC SO. DIST.R TEXAS, HOUSTON DIVISION 1990) (*citing Grandchamp v. United Air Lines, Inc.*, 854 F.2d 381 (10th Cir. 1988), *cert. denied*, 489 U.S. 1080, 103 L. Ed. 2d 838, 109 S. Ct. 1534 (1989) ("Termination alone is not enough

In the Commonwealth, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it[20]. "[S]tress and pain" that makes life "unbearable" is what one must suffer. Id. at 203. The declarations submitted by three plaintiffs reveal that none of the Declarants suffered emotional distress severe enough to survive summary judgment. Most plaintiffs fail to submit any evidence of emotional distress. It would be unreasonable to infer from the evidence before this court that any plaintiff suffered emotional distress to the extent that any plaintiffs' life became unbearable due to the stress and pain of loosing her job. The alleged distress is not severe enough to support an IIED claim. In the CNMI, it is proper to dismiss the claim even though the plaintiff suffered "worry" or "difficulty finding a job," Charfauros, "shock, humiliation, anger, embarrassment, outrage and frustration," Demapan v. Bank of Guam, 2006 MP 16, P4-6, the very things alleged by two of the Declarants. L&T is entitled to summary judgment on Plaintiffs' claims of Intentional Infliction of Emotional Distress.

---

and the discharge must be accompanied by some extreme or outrageous act."); *Brieck v. Harbison-Walker Refractories*, 624 F. Supp. 363 USDC WD Penn (1985) ("The extremeness of behavior associated with this tort necessarily means that it rarely will be found…While loss of employment is unfortunate and unquestionably causes hardships, often severe, we must acknowledge that it is a common event."); *Dahlberg v. Lutheran Social Services of North Dakota*, 625 N.W.2D 241, 248 (ND 2001) ("the nature of any termination is such that it often produces stress and mental anguish in the person being terminated [and] the test is not whether or not the termination was traumatic, but whether or not the termination was outrageous"); *Crump v. P & C Food Markets, Inc.*, 576 A.2d 441, 448 (Vt. 1990): "We agree with defendant that the mere termination of employment will not support a claim for intentional infliction of emotional distress."); *Gilmartin v. K KVTV--Channel 13, Corpus Christi Broadcasting Co., Inc.*, 985 S.W.2d 553, 557 (Ct. App. Tx. 1998)("The present case is based on a singular incident of termination where an employee received a letter of termination allegedly for improper or pretextual reasons. There was no … outrageous conduct on the part of KVTV"); *Duncan v. Children's National Medical Center*, 702 A.2d 207; (1997 D.C. App) ("generally, employer-employee conflicts do not rise to the level of outrageous conduct.") *McKnight v. Simpson's Beauty Supply, Inc.*, 358 S.E.2d 107, 109 (Ct. App. NC 1987) ("Plaintiff's evidence tended to show only that the discharge was abrupt, without cause, and unexplained which is not enough to support a claim for intentionally inflicting emotional distress").

[20] Charfauros at 203, (quoting Comment d. to RESTATEMENT (Second) of Torts §46) (emphasis in original).

## CLAIMS BASED ON L&T'S ALLEGED FAILURE TO PAY PLAINTIFFS' HEALTH EXAMINATION AND CERTIFICATE COSTS.

L&T's alleged failure to pay for Plaintiffs' health examinations and medical certificates forms the alleged factual basis for part of their Breach of Contract claim and all of their Fair Labor Standards Act claim.[21]  But, Plaintiffs do not produce evidence that they paid for their health examinations or medical certificates.  Only one of the Declarants mentions a health clearance.  Jocelyn Tobias testified that "L&T did not pay for my health clearance.  Instead L&T used my existing health certificate from my previous employment."[22]  At least 34 of the Plaintiffs did not pay for their health clearances, according to Exhibit 6 of the First Amended Complaint.  By their admission and by the absence of evidence, this claim cannot survive summary judgment for any plaintiff.

The absence of evidence of payment for health clearances and medical certificates undermines not only Plaintiffs' breach of contract claims but also their Fair Labor Standards Act Claim ("FLSA").  As the Plaintiffs state "[t]he First and Second Causes of Action both revolve around determination of whether subject health examination fees and health certification fees are employer expenses; hence they may be analyzed in tandem."[23]  Although presenting no evidence on the issue, Plaintiffs argue for the application of the FLSA by alleging that the payment of medical fees brought Plaintiffs wage below the minimum wage in violation of the FLSA.  This claim fails because no evidence was presented to support the payment of fees by the plaintiffs and also because the minimum wage provisions of the FLSA do not apply to the CNMI.[24]  Further, the Plaintiffs present no evidence to support their allegations that they were paid less than the minimum wage in violation of 3 CMC § 4437(b).  Accordingly, summary judgment must be entered on Plaintiffs' second cause of action.

---

[21] See Plaintiffs' Opposition at pp1-10.
[22] See declaration of Jocelyn Tobias at ¶ 3.
[23] Plaintiffs Opposition at p 9; ln. 5-7.
[24] *Doe I, et al. v. Advance Textile Corp., et al,* District Court for the Northern Mariana Islands (Order re: Defendants' Motion to Strike at pg 8) (January 21, 2000)

## **THE UNLAWFUL TERMINATION CLAIM**

Plaintiffs fail to create a genuine issue of material fact about the validity of the termination. Instead, Plaintiffs try to avoid their responsibility to come forward with evidence and shift to the Defendant the burden to produce evidence. "L&T has failed to make a threshold showing that its termination of Plaintiffs was in fact and reality due to and 'because of economic necessity.'"[25] Plaintiffs also argue, while presenting no evidence, that "L&T's so-called RIF policy and rules were pretextual and not even followed or applied in the RIF/Termination of plaintiffs."[26] L&T offered evidence of its lawful terminations. The Plaintiffs contracts were terminated pursuant to the terms and conditions of The Employment Contracts.[27] The Employment Contracts provide for termination in the event of a "reduction in force due to adverse economic conditions or economic necessity."[28]

> The Ninth Circuit has held that a plaintiff cannot create a genuine issue of pretext to survive a motion for summary judgment by relying solely on unsupported speculations and allegations of discriminatory intent. See *Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir. 1989) (a bald assertion that a genuine issue of material fact exists does not preclude summary judgment). Rather, a plaintiff must produce "specific, substantial evidence of pretext." See *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir. 1983); *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890 (9th Cir. 1994); *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 458 (7th Cir. 1999) (to avoid summary judgment, a plaintiff must produce evidence from which a rational trier of fact could infer that the defendant lied about its proffered reasons for failing to promote her or that the reasons had no basis in fact). *Crawford v. MCI Worldcom Communs., Inc.,* 167 F. Supp. 2d 1128, 1135-1136 (D. Cal. 2001)

The Plaintiffs in the instant case have not produced specific substantial evidence of pretext. They produced no probative evidence to show that L&T's stated and sworn reason for terminating the Plaintiffs-a reduction in force- is untrue or unlawful.[29]

---

[25] Plaintiffs' Opposition at p 12; ln. 22-24.
[26] Plaintiffs' Opposition at p 12; ln. 2-4.
[27] JST Decl. at ¶ 30.
[28] JST Decl. at ¶ 30.
[29] "* * * With discharge of employees a normal, lawful legitimate exercise of the prerogative of free management in a free society, the fact of discharge creates no presumption, nor does it furnish the inference that an illegal -- not a proper -- motive was its cause. An unlawful purpose is not lightly to be inferred. In the choice between lawful and unlawful motives, the record taken as a whole must present a substantial basis of believable evidence pointing toward the unlawful one." *Lozano Enterprises v. NLRB,* 357 F.2d 500, 503 (9th Cir. 1966) citing *NLRB v. McGahey,* (5th Cir., 1956) 233 F.2d 406, 412.

1    The termination of Plaintiffs contracts was a lawful business judgment.    The reason for

2    terminating the Plaintiffs was to reduce the work force in line with declining orders.[30]    In 2004, there

3    were 295 employees working as Hand Packagers while today there are only 61 Hand Packagers.[31]

4    Orders dropped from an average of 162,729 dozen garments a month to an average of 64,510 dozen

5    garments a month during that same period of time.[32]    Courts, including the Ninth Circuit[33], recognize

6    that reduction in force is good cause for termination and will not substitute their judgment for the

7    employer without a strong evidentiary showing.

8

9    > Thus respondent showed that the parent corporation made a business judgment to
     > reorganize not only its manufacturing but also its marketing operations, the
10   > marketing to be conducted by a different division, with the result that appellant's
     > services were no longer needed. This constituted good cause to terminate appellant.
11   > (See *Gianaculas v. Trans World Airlines, Inc.* (9th Cir. 1985) 761 F.2d 1391,
     > 1395.) Appellant made no showing to the contrary, that this reason was pretextual
12   > or that respondent acted in bad faith toward him; the motion for summary judgment
     > was therefore properly granted. ( *Crosier v. United Parcel Service, Inc.* (1983) 150
13   > Cal.App.3d 1132, 1138-1139, 1140 [198 Cal.Rptr. 361].) *Clutterham v. Coachmen
     > Industries, Inc.*, 169 Cal. App. 3d 1223, 1227 (Cal. Ct. App. 1985)
14

15   Each of the Plaintiffs failed to produce enough evidence to establish that L&T breached its contract and

16   summary judgment should be entered on all contract claims.

17

18

19

20

21

22   [30] JST Decl at ¶ 21.
23   [31] JST Decl at ¶ 28.
     [32] JST Decl at ¶ 29.
     [33] Coca-Cola made a "business judgment" to sell the coffee portion of its business, eliminating the need for plaintiffs'
24   services. Plaintiffs have made no showing "that this reason was pretextual or that [defendant] acted in bad faith toward
     [them]." Id. Thus, even if we assume that plaintiffs created an issue of fact as to the existence of this implied-in-fact
25   employment contract, Coca-Cola's divestiture of its coffee business constitutes the requisite "good cause." *Joanou v. Coca-
     Cola Co.*, 26 F.3d 96, 99-100 (9th Cir. 1994)

## CONCLUSION

Based on the foregoing, L&T respectfully requests that the Court grant its motion for Summary Judgment. In the alternative, if the Court finds that there exists a genuine issue of material fact on any claim of any Plaintiff, then the Court should issue an Order granting partial summary judgment on those claims for which any plaintiff has failed to present sufficient evidence to raise a genuine issue of material fact.

Respectfully submitted this 11th day of September, 2006.

COLIN M. THOMPSON, ESQ.
Attorney for Defendant