Hill Law Offices
Susupe Village
P.O. Box 500917
Saipan, MP 96950

Tel: (670) 234-6806/7743
Fax: (670) 234-7753

Attorney for Plaintiffs,

F I L E D
Clerk
District Court

SEP 2 9 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **ABELLANOSA, JOANNA, et al.,**<br><br>**Plaintiffs,**<br><br><br>**L&T INTERNATIONAL CORPORATION,**<br><br>**Defendant.** | **Civil Action No. 05-0010**<br><br>**VERIFIED/AMENDED OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>**Date:** <u>October 05, 2006</u><br>**Time:** <u>9:00 a.m.</u><br>**Judge:** <u>Hon. Alex R. Munson</u> |

Joe Hill, Counsel for Plaintiffs, hereby files this Verified Opposition To Defendant's

Motion for Summary Judgment and in support of Plaintiffs' cross motion for Summary

Judgment on all causes of Actions as follows:

## STANDARD OF REVIEW

**A. Summary Judgment - Generally**. Under Rule 56(c), summary judgment is

proper "if the pleadings, depositions, answers to interrogatories, and admissions on file,

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6800/7743 ~ FAX: 234-7753

ORIGINAL

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

"In ruling on a motion for summary judgment, the 'evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor.'" Orsini v. O/S Seabrooke O.N., 247 F.3d 953, 958 (9th Cir. 2001) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, [2513], 91 L.Ed.2d 202 (1986)). Movant bears the initial burden of demonstrating the absence of a genuine question of material fact for trial. Devereaux v. Abbey, 263 F.3d.1070,1074 (9th Cir., 2001) (*en banc*). The underlying substantive law governing the claims determines whether or not it is material. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000); Price v. Taco Bell Corporation, 934 F.Supp. 1193, 1196 (D.Or.1996). Reasonable doubts as to the existence of material factual issues are resolved against the movant. *Addisu*, 198 F.3d at 1134. Where defendant is the moving party and he bears the burden of proof at trial on an affirmative defense, he must come forward with admissible evidence as to each element essential to establish the affirmative defense. Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507, 1514 (9th Cir. 1994); Gifford v. Atchison, Topeka and Santa Fe Ry. Co., 685 F.2d 1149, 1155 (9th Cir. 1982).

Where the movant does not bear the burden of proof at trial, he must make an initial showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, *supra*, 477 U.S. at 325, 106 S.Ct. at 2554. Block v. City of Los Angeles, 253 F.3d 410, 416 (9th Cir. 2001); Schwarz v. U.S., 234 F.3d 428, 436 (9th Cir. 2000).

The Ninth Circuit has characterized this initial showing as the movant's duty to set forth a "*prima facie* case for summary judgment." F.T.C. v. Gill, 265 F.3d 944 (9th Cir., 2001). It has also characterized this as the initial burden of "production." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

2

Under the Rule 56 motion, the movant without the burden of proof bears the ultimate burden of persuasion that it has made out a *prima facie* case entitling it to summary judgment. *Nissan Fire*, *supra*, 210 F.3d at 1102. If movant fails to make out this *prima facie* case, the non-moving party has no obligation to prove anything, even if he still has the ultimate burden of persuasion at trial. *Id.*, 210 F.3d at 1102-1103. In such a case, the nonmoving party defeats the motion for summary judgment without producing anything. *Id.*, 210 F.3d at 1103.

## DEFENDANT'S MOTION

In Defendant's motion they treat plaintiffs' First, Third, Fourth and Seventh Causes of Action jointly as claims for breach of contract.

Defendant L&T moves for summary judgment on Plaintiffs First Cause of Action "because many of the plaintiffs admitted that they did not pay for their health clearance or physical examinations and because L&T was not obligated to pay these fees." (Defendant's Memorandum, page 2).

Defendant asserts that "the plaintiffs' contracts were terminated pursuant to the terms and conditions of the employment contracts."

That the employment contract provides for termination in the event of a "reduction in force due to adverse economic conditions or economic necessity."

Defendant asserts that "First, the Plaintiffs are not parties to the Non-resident Worker Agreement and lack standing to enforce it." Defendant's Memorandum Page 5. (Id. p. 5)

Plaintiffs cross-move for summary judgment or partial summary judgment on all causes of actions in the First Amended Complaint.

Plaintiffs also cross-move for summary judgment on Defendant's Affirmative

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

Defenses raised in the Answers as hereinafter indicated.

## I.

## HEALTH EXAMINATION & CERTIFICATE COSTS ARE EMPLOYER EXPENSES

L&T required each plaintiff listed in Exhibit "6" of the First Amended Complaint (FAC) to provide and use the health certificate then owned by each such Plaintiff for use by L&T in lieu of L&T itself paying for said certificate fee(s) and/or services that L&T as the employer was obligated to pay pursuant to statute, the rules and regulations of DOL and the Department of Health and Social Services (DHSS), and under the Employer's Nonresident Worker Agreement. The Employer's Agreement in pertinent parts, provides:

### SECTION B-AGREEMENT

....

1. For and in consideration of being allowed to employ nonresident worker(s), the employer agrees to the terms and conditions herein set forth by the Director as follows:

A. To strictly adhere to the provisions of the Nonresident Worker's Act and amendments thereto, Wage and Hour Act and all other applicable Commonwealth laws, rules, regulations, the employment contract(s) and this agreement; and to procure copies of these laws.

....

E. Responsible for the repatriation and medical expenses, as well as all other expenses required by law of any nonresident worker to be employed or employed under this Agreement until the worker leaves the Commonwealth or is transferred to another employer.

F. That a minimum of forty (40) hours of work per week will be readily available at all times for the duration of the employment contract for any nonresident worker covered under this Agreement except when a work week is interrupted by recognized Commonwealth holidays, natural disasters, inclement which the Chief, in his sole discretion, determines that the

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

4

<u>Employer's inability to provide forty (40) hours of work was beyond</u> the control of the Employers or an exception is granted. (Emphasis added).

3 CMC §4437(c) (Restrictions and Obligations),  provides in pertinent parts:

"All nonresident employment contracts under this chapter shall provide that <u>the employer is responsible and liable for the insurance or payment of all medical expenses of the nonresident worker</u>, including cost of referral and evacuation for medical treatment outside the Commonwealth, and cost of the embalming and transportation of the body back to the country of origin in the event of death of the nonresident worker." (Emphasis added).

Alien Labor Rules and Regulations, Section II. B. 3. provides in pertinent parts:

"<u>Submission, Review of Other Required Documents.</u>  Upon approval of an Employer's Application and Nonresident Employment Agreement, the employer shall submit a Nonresident Worker Application, which must include the following:

a.  Employment Contract.

....

f.  If the application is to fill a position within the garment industry, the employer must submit all additional documentation required by the Prescreen checklist - New Labor Permits-Garment, which may include a map to the location, bank certification, copy of the lease agreement, etc.

g.  A sworn affidavit by the prospective employer that all of the obligations of the prospective employer and employee related to the application are included in the Employment Contract; including, but not limited to , the application fee, transportation costs, <u>recruitment costs or other costs associated with the nonresident worker's employment;</u> as well as an indication of which party agrees to undertake what obligations. This sworn affidavit does not change a prospective <u>employer's obligation to pay the application fee and repatriation costs.</u>  Emphasis added.

3CMC Section 4438(b) in pertinent parts provides:

"<u>The cost of any examination of a nonresident worker shall be borne by the employer.</u>  The cost of any examination of a member of the family of any nonresident worker shall be borne by either the worker or the employer, as the employment contract shall provide.  The chief shall by regulation provide for annual physical examination of nonresident workers ... by any medical physician licensed ... in the Commonwealth ... when employment under this chapter will continue for more than one year.  The cost of all examinations under this section shall reflect the total cost, including

5

physician fees, of providing the examinations." Emphasis added.

Defendant-movant contends that "... there is no contractual obligation for L&T to pay for an applicant's health clearance or medical examination. The contract of employment does not provide for the payment of these costs." (Defendant's Memorandum, page 6).

However L&T on page 1, paragraph 4, <u>Food, Lodging and Others,</u> of the Employment Contract (Exhibit "A" Memorandum) acknowledges not only its obligation as employer to pay such costs, but prospectively seeks to apportion such costs between employer and employee as follows:

> "4. Medical insurance or payment of all medical expenses of the employee during the employee's legal stay in the Commonwealth ... will be paid by the employer unless applicable law provides otherwise or except as modified by case law. Any changes in CNMI laws that allow employer to have employees bear medical cost, the employees shall pay whatever costs are incurred in excess of what the company subsidizes. "

Thus, L&T's proffered defense and factual assertion that (1) it has no contractual obligation to pay for the medical physical examination and the health certificate fees of plaintiffs, and (2) that the <u>contract of employment does not provide for the payment</u> of these costs, appears to be without legal or factual foundation or authority, frivolous and hence, itself asserted in bad faith.

The legislative intent could hardly be plainer. "The cost of any examination of a nonresident worker shall be borne by the employer." 3 CMC Section 4438(b). And "(a)ll nonresident employment contracts under this chapter shall provide that the employer is responsible and liable for the insurance or payment of all medical expenses of the nonresident worker, including cost of referral and evacuation for medical treatment ...." Section 4437(c).

Alternatively as to L&T's motion to dismiss there remain material and substantive

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6800/7743 ~ FAX. 234-7753

issues of material facts precluding summary judgment regarding the interpretation and application of the stated provisions and terms of the contract relative to covered medical cost and expenses to the extent that these contractual issues are factual, they are, as indicated, for the trier of fact. To the extent that remaining issues raise questions of law, they are for the court, and summary judgment should be entered in favor of Plaintiffs and against Defendant on the <u>First, Third, Fourth and Seventh</u> Causes of Action.

Alternatively, there remain questions of fact as to (1) whether promises or representations were made to Plaintiffs by employees of L&T, concerning the use of and payment for the subject health examination and health certificate fees and (2) whether there was a promise or representation made that led plaintiffs to believe that their employment was secure for the full year term of the contract and that they would be renewed the second year, unless terminated for good cause. See Deposition of Tobias, Page 199/Lines 18-25; Page 200/Lines 1-21; and Page 201/Lines 20-24; Plaintiffs' Affidavits.

The Regulations Governing the Health Screening Requirements of Alien Employees, Commonwealth Register, Volume 19 Number 02, February 15, 1997, Page 15167 et seq. provides in pertinent parts:

> 1. Purpose and Findings
> The purpose of these Rules and Regulations is to establish procedures and protocols for the issuance of Health Certificates to all Alien Employees.
> ....
>
> These new requirements are intended not only to maintain the health of all "Alien Employees who enter and reside in the CNMI to provide employee services to Employers pursuant to the provisions of the Nonresident Worker Act, 3 CMC §4411 <u>et</u>. <u>Seq</u>., but also to ensure the health of CNMI residents by preventing the spread of certain infectious and communicable diseases. It is the intent of the Division of Public Health to provide minimum requirements for the protection of life, health, safety, and welfare of CNMI residents by instituting these Rules and Regulations.
> ....
>
> The health screening of the Alien Employees will not only be beneficial to these workers and the residents of the CNMI, but will also be

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

advantageous to employers.  By overseeing compliance with the health screening of Alien Employees required by these Rules and Regulations, the employer can minimize the high costs of medical treatment here in the CNMI, and avoid the added cost of deportation in the event the Alien Employee is later found to have a communicable disease.  Also relevant to Employers is that Alien Employees afflicted with communicable diseases are less productive.  By ensuring that Alien employees obtain the required health screening, Employees can assure the relative health of the Alien Employees they employ.

....

2.11.  <u>Health Certificate</u> means an authorization issued by the Secretary to an Alien Employee certifying that the Alien employee has been examined and found to be in good health, and free of specified communicable diseases.

....

2.15  <u>Physical examination</u> means a medical examination performed by a Physician.

....

3.3. <u>Cost of Physical Examination.</u>  The cost of the Alien Employee's Physical Examination shall be the financial responsibility of the Alien Employee's Employer.

....

5.3.  <u>Cost of Health Certificates.</u>  The cost of an Alien Employee Health Certificate shall be Twenty dollars ($20.00), payable to the Department upon issuance of the health Certificate.  The Employer of the Alien Employee shall be responsible for the cost of the Health Certificate.

Thus the costs for the medical physical examinations and health certificates are by law determined to be the obligation of the employer of an alien-contract worker and as such are <u>employer expenses</u> based <u>on public policy</u>. Restatement 2d, Contracts, Section 207, Interpretation Favoring the Public, *See* Comment a.

Hence, <u>but for</u> Plaintiffs in Exhibit "6" tendering and giving L&T their unexpired health certificates, L&T as the employer, by law, would have had to pay for the certificate.

L&T by demanding that the Plaintiffs-employees cover these obligations by providing and using health certificates owned by the workers, or paying for new health

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

8

certificates, seeks to shift its obligation to bear the costs of the physical examination and health certificate fees.

Notably in the first instance, L&T contends that it has no obligation to pay the plaintiffs health examinations and health certificate fees. Deposition of Jack Torres p.___, L . Yet L&T finds it convenient and to its economic benefit to have the workers-plaintiffs put up their unexpired certificates instead of L&T paying for a new certificate.

L&T's contention and assertion that it was not obligated by law or under the contract to pay the medical examination and certificates fees of its alien contract workers in spite of the clear law on the subject, could be inferred by a reasonable trier of fact as evincing and supporting an inference and conclusion that L&T prior to and at the time of entering into the contracts did not intend to perform its obligations thereunder, and hence acted fraudulently and with deceit.

## II

## SHIFTING OF EMPLOYER EXPENSES AFFECTS WAGES

The First and Second Causes of Action both in part, revolve around determination of whether the subject health examination fees and health certification fees are employer expenses, hence they may be analyzed in tandem.

In Arriaga v. Florida Pacific Farms, L.L.C., 305 F.3d 1228, 1236-1237 (11th Cir. 09/11/2002) the court in addressing employer expenses determined and reasoned, thusly:

> "The Growers contend that the FLSA was satisfied because the Farmworkers' hourly wage rate was higher than the FLSA minimum wage rate and deductions were not made for the costs the Farmworkers seek to recover. The district court correctly stated that there is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear. An employer may not deduct from employee wages the cost of facilities which primarily

9

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO: (670) 234-6860/7743 ~ FAX: 234-7753

benefit the employer if such deductions drive wages below the minimum wage. See 29 C.F.R. §531.36(b). This rule cannot be avoided by simply requiring employees to make such purchases on their own, either in advance of or during the employment. See id. §531.35; Ayres v. 127 Rest. Corp., 12 F. Supp.2d 305, 310 (S.D.N.Y. 1998). (Footnote omitted)

If an expense is determined to be primarily for the benefit of the employer, the employer must reimburse the employee during the workweek in which the expense arose. See 29 C.F.R. §531.35. (Footnote omitted) Situations in which items such as required tools or uniforms were purchased before the first workweek are not explicitly covered by the regulations. However, there is simply no legal difference between an employer requiring a worker to have the tools before the first day of work, requiring the tools to be purchased during the first workweek, or deducting the cost of the tools from the first week's wages. Compliance with the FLSA is measured by the workweek. See id. §776.4. Workers must be reimbursed during the first workweek for pre-employment expenses which primarily benefit the employer, to the point that wages are at least equivalent to the minimum wage. (Footnote omitted) Cf. Marshall v. Root's Rest., 667 F.2d 559,560 (6th Cir.1982) (affirming district court finding that defendants required waitresses to wear uniforms at work and that the cost of uniforms therefore pushed first week pay below minimum wage). Ibid. pp. 1236-1237.

In Arriaga v. Florida, the court in discussing the application of 29 C.F.R. Section 531.32(c) observed that

"Subsection (c) also lists items which have been held to be primarily for the benefit or convenience of the employer and are not therefore to be considered 'facilities' within the meaning of section 3(m)"; Safety caps, explosives, and miners' lamps (in the mining industry); electric power(used for commercial production in the interest of the employer; company police and guard protection; taxes and insurance on the employer's buildings which are not used for lodgings furnished to the employee; "dues" to chambers of commerce and other organizations used, for example, to repay subsidies given to the employer to locate his factory in a particular community; transportation charges where such transportation is an incident of and necessary to the employment (as in the case of maintenance-of-way employees of a railroad; charges for rental of uniforms where the nature of the business requires the employee to wear a uniform; medical services and hospitalization which the employer is bound to furnish under (various laws). Id. §531.32(c). 29 C.F.R. §531.3 also discuss items that are primarily for the benefit of the employer; the following is a list of facilities found by the Administrator to be primarily for the benefit of (sic) convenience of the employer: The list is intended to be illustrative rather than exclusive: (i) Tools of the trade and other materials and services incidental to carrying on the employer's business; (ii) the cost of any construction by and for the employer: (iii) the cost of uniforms and of their laundering, where the nature of the business requires

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

the employee to wear a uniform. Id. §531.3(d)(2). Ibid. p. 1243; Footnote 19.

### III

### TIME SPENT FOR HEALTH EXAMINATION/ CERTIFICATE COMPENSABLE

Baby Lopez was assigned the responsibility of advising alien workers regarding the processing and requirements for their employment applications with L&T and DOL. Deposition of Lopez, Exhibit "____".

She has so advised workers and processed employment application documents for thousands of applicants since 1988. Deposition of Lopez, P_____, L.  ; P___, L:

Nenita "Baby" Lopez in her deposition testified that she instructed the applicants to go to the clinic for a physical examination and thereafter go and pick up their health certificate.  Deposition of Baby Lopez P.____ L ___; P.___, L____; P.____,L____;; Affidavit of Plaintiffs.

The Plaintiffs as listed in Exhibit "1" FAC, pursuant to L&T's said instruction, went to a health clinic for the examination and/or to the health Services Liaison Office, DOL, San Antonio to pick up the health certificate. See Affidavits of Plaintiffs (those listed in Exhibit "1" FAC).

The time spent in both obtaining the health examination and the health certificate is compensable under the FLSA. Sehie v. City of Aurora, 432 F.3d 749, _____(7th Cir.2005)(observing that "DOL has also issued opinions concluding that when an employer requires an employee to attend physical or mental examinations...during non-working hours as a condition of continued employment, the time spent undergoing such examinations constitutes "hours worked" and is therefore compensable under the FLSA)

4 CMC Section 9222 in pertinent part provides:

11

" "Regular rate" shall be defined according to the guidelines set forth in the federal Fair Labor Standards Acts at 29 U.S.C. Section 207(e)."

3 CMC Section 4437(b) provides in pertinent parts:

"(b) no nonresident worker employed pursuant to this chapter shall be paid less than any minimum wage applicable ... and provided by law. ... Any period of time during which the worker is required to be present at any location within the Commonwealth designated by his or her employer shall be considered <u>working hours</u> for purposes of determining wages and overtime pay." Emphasis added.

Plaintiffs cross- move for partial summary judgment on L&T's liability for such time. Rule 56(c).

## IV

## <u>UNLAWFUL TERMINATION</u>

L & T contends that under the employment Contract, it has an unconditional right to unilaterally terminate its nonresident worker contracts with Plaintiffs.

To the contrary Defendant's right to hire and use alien labor arises from and is restricted to and conditioned on the terms and procedural requirements of the NWA.

Under the NWA the Defendant, as a <u>condition precedent</u> to being allowed to hire/employ Plaintiffs - aliens, specifically agreed under its <u>Employer's Non-resident Worker Agreement,</u> that L&T would be bound by and follow all applicable laws, rules and regulations of the CNMI and DOL and its employment contracts. (Exhibit "8 " First Amended Complaint).

<u>The NWA places limitations on and proscribes procedures for changing or terminating a nonresident alien contract.</u>

12

Alien Rules and Regulations, Section III. Conditions of Employment, provides in pertinent parts:

> F. <u>Notice of Termination for Cause.</u>
> If a nonresident worker is terminated by an employer for cause before the end of the worker's contract, the employer shall give written notice to the worker and to the division at least ten (10) days prior to the worker's expected termination date. The notice shall state the name and LIIDS card number of the worker, <u>the reasons for termination</u>, and the expected date of departure from the Commonwealth. A copy of the termination letter and proof of service on the employee of the same must be attached to the notice.
>
> G. <u>Review of Termination Notice.</u>
> Upon receipt of a written termination notice, the director or his designee <u>shall immediately review the reasons for termination.</u> If the director finds that there is a question as to whether the employer has <u>complied with relevant contractual provisions in terminating</u> the worker or if the terminated worker files a grievance with the Division regarding the termination, the Director shall immediately initiate an investigation as set forth in Section VII. Emphasis added.

L&T has failed to show that it gave any prior notice of the intended termination of Plaintiffs to DOL as mandated in Section III.F.

L&T in failing to give notice and comply with the procedures set forth in subsection F., denied Plaintiffs of their due process review rights under subsection G and L&T in so doing acted in bad faith and breached its covenant of good faith and fair dealing under the contract.

After the May 13, 2004 termination, on or about May 17, 2004 L&T wrote DOL requesting that DOL stop processing and cancel Plaintiffs contracts. Deposition of Jack Torres, Exhibit "L". Notably L&T's action requesting cancellation of Plaintiffs' contracts, occurred during what L&T claimed was the <u>prior notice</u> period i.e. May 13, 2004 to May 23, 2004. When asked what was the purpose of this notice (Exhibit "L") Mr. Torres responded "well, its self explanatory. Exactly what it says." Deposition of Torres, P.34, L1-5. A trier of fact could reasonably infer and conclude that the termination was done in bad faith and

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

in contravention of the covenants of good faith & fair dealing.

The "approval of the chief" (Director) is required to "change any existing contract" or to terminate Plaintiffs contracts, pursuant to 3CMC Section 4437(d), which provides:

> (d) No employer or nonresident worker shall execute any contract, make any other agreement, or change any existing contract, in writing or otherwise, regarding the employment of such worker, <u>without the approval of the chief</u>, and no nonresident worker shall perform labor or services within the commonwealth except pursuant to an approved contract or an approved change to this contract. Any nonresident employment contract or change thereto which has not been approved by the chief or which violates any provisions of this chapter shall, in the discretion of the chief:
> (1)    Be voidable;
> (2)    Be grounds for certificate revocation;
> (3)    Be grounds to disqualify an employer from further use of any nonresident labor.  Emphasis added.

L&T's <u>contract(s) with plaintiffs is thus made voidable</u> by application of Section 4437(d).

**V**

**<u>RIF POLICY</u>**

<u>L&T's so-called RIF policy and rules were pretextual and not even followed or applied in the RIF/termination of plaintiffs.</u>

In pertinent parts L&T's RIF policy mandated that before the RIF the affected employee be given written notice of the reasons for reduction; the effective date of the RIF and the right to appeal the reduction in force.  See REDUCTION IN FORCE (RIF) POLICY DATED APRIL 21, 2003.  Deposition of Jack Torres P.101, L8-17; Exhibit "D".  And paragraph v. requires that employees be given <u>15 days prior written notice</u> of repatriation or severance pay in lieu of notice.

L&T's termination letter(notice) among others, failed to give the 15 days notice or severance pay, and failed to inform plaintiffs of their right to appeal the RIF. (Exhibit "9 "

14

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

FAC).

L&T thus failed to follow its own rules and policies and terminated plaintiffs in contravention of its own policies. A trier of fact could reasonably find and infer from the facts thus presented that the RIF was pretextual and/or conducted in bad faith.

Accordingly L&T's ostensible termination of Plaintiffs was unlawful, being not in compliance with termination procedures mandated under the NWA, Alien Labor Rules and Regulations and under the Employer's Non-resident Worker Agreement, to which Plaintiffs as shown, are third-party beneficiaries, and in contravention of L&T's own written policy and rules, and breached their duty of good faith and fair dealing.

Restatement, Second, Contracts Section 205 Duty of Good Faith and Fair Dealing, see comments a. and d.

Alternatively, when L&T recruited and signed contracts with plaintiffs it knew that because of its already on-going asserted reduction in force and economic /financial condition that it did not want to or intend to employ plaintiffs for a full year.

As early as June 26,2003 Defendant admits that it began a company-wide and on-going re-engineering and RIF based on economic necessity. (See Exhibit "L" and "M" Deposition of Jack Torres).

Given L&T's asserted June 26, 2003 on-going RIF which remained unabated at the time plaintiffs were hired, a reasonable trier of fact could infer or conclude that L&T did not intend to employ plaintiffs for a full year and thus acted in bad faith, and under such facts and circumstances that L&T's representation and promise of employment (for a term of one year) was clearly false and a willful misrepresentation of fact; thus entitling plaintiffs to summary judgment for fraud and deceit under the Sixth Cause of Action.

L&T has failed to make a threshold showing that its termination of Plaintiffs was in fact and reality due to or "because of economic necessity."

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

15

To the contrary L&T admits that it terminated Plaintiffs because of 'declining orders." (Affidavit of Jack Torres, paragraph 21).

Additionally during his deposition Jack Torres testified that had plaintiffs been retained and paid through the expiration dates of their contract, the company would not have been caused to go out of business (Deposition of Jack Torres, page 195/Lines 21-25; page 196/Lines 1-9.)

```
Q    Okay.  Do you believe that L&T would have ah -
     - would have to have closed if the plaintiffs
     were  retained  through  the  term  of  their
     contract?
A    I -- I -- can you repeat that?
Q    Do you believe that L&T would have to close if
     the plaintiffs were retained through the ah,
     term of their contract?
A    I don't think it would close because it's ah,
     we got other activities other than...[pause]--
Q    I  guess  my  question  is,  do  you  think  if
     plaintiffs -- having to pay plaintiffs through
     the  unexpired  term  of  their  contracts  would
     have caused L&T to go out of business?
A    I don't think so.
```

This is in contrast to and conflict with other similarly situated contract employees such as Ariel Cruz who were not terminated but allowed to work through the expiration date of their contracts.  See Declaration of Ariel Cruz. Why not Plaintiffs? Contradictorily on the other hand, L&T admits that it did not consider or offer plaintiffs any position or employment opportunity with its affiliates or parent company Tan Holding Corporation. Defendant's Response to Request For Admission No. 27. L&T has offered no logical explanation for these  incongruities in its ostensible termination and RIF scheme.  A reasonable trier of fact presented with these facts could reasonably infer or conclude that there was in fact no economic necessity warranting either the RIF or the termination of plaintiffs, thus precluding summary judgment for Defendant on the Third, Fourth and Sixth Causes of Action.

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6806/7743 ~ FAX. 234-7753

The Third and Fourth Causes of Action presents questions of good faith and breach of covenants of good faith and fair dealing and the Sixth Cause of Action presents issues of fraud and deceit, thus raising issues of state of mind and hence questions of credibility.

Evaluating credibility is a task reserved for the jury Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct.2505, 2513, 91 L. Ed.2d 202 (1986); Mendocino Envt'l Cot. V. Mendocino County, 192 F.3d 1283, 1302 (9th Cir. 1999) (observing that state of mind questions are factual issues inappropriate for summary judgment).

The so-called Performance Rating was pretextual. There was no stated performance requirements for hand packer in Plaintiffs' contracts. Plaintiffs were recruited and hired by L&T with no expectation or requirement that they have any prior experience as packers or otherwise. Deposition of Jack Torres, pp.155. L8-25, 156, 11-15. The facts support the inference that L&T's so-called "performance rating' was not a condition of employment and was simply pretexual to give an appearance of having met its obligations of fairness in implementing and determining which employees would or should be first subject to the RIF. (See Declaration of Tobias, Declaration of Mila Sapiandante; Declaration of Ariel Cruz); and Declaration of Plaintiffs.

It is undisputed that Plaintiffs did their jobs and were not terminated for not doing their jobs right (Deposition of Jack Torres, p.156, L16-18); and L&T admittedly had no pre-existing grounds or cause to terminate any of the plaintiffs. Deposition of Jack Torres, p.157, L12-16.

Accordingly there are presented genuine issues of material facts as to whether there were in fact the required "economic necessity" and/or whether the proffered grounds for termination "due to the on-going re-engineering and reduction in force due to economic necessity" were pretextual.

It is offered that "declining orders" are and were simply foreseeable risks of doing

17

business and hence not good cause for terminating plaintiffs' contracts after only approximately two months into their annual contract.

L&T's testimony on the use of it so-called order projections to determine manpower needs and RIF is internally inconsistent, not credible and not believable.

When plaintiffs were hired in 2004 Connie Yeung's order projection was that L&T's needed to hire 400 packers. Deposition of Jack Torres P. 146, L2-15.

Notably nowhere does L&T assert that because of the declining orders it could not or would not have been able to complete its annual contractual obligation to Plaintiffs nor that but for the termination of Plaintiffs' contracts, L&T would not have been able to survive financially.

# VI

## UNCONSCIONABLE CONTRACT TERMS

L&T utilized and abused its superior bargaining power/position and its position as the sole drafter of the proffered employment Contract, to insert and impose onerous terms and conditions on Plaintiffs - applicants, not usually associated with or imposed on workers.

Specifically L&T on page 3 of the Employment Agreement defined and listed as for cause terminations (1) reduction in force due to adverse economic conditions or economic necessity or (2) cessation of business or down-size of business operation.

An employer's decision to implement a reduction in force is never considered as grounds giving rise to a for cause termination of the affected workers, at least Plaintiffs have been unable to find any such authority.

Implicitly, termination for cause is associated with the idea and stigma that the affected employee has failed to carry out his duties or breached his contract.

18

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

A <u>for cause</u> termination has an added adverse effect on the worker-plaintiffs who as a result would be prohibited from consideration for transfer relief (to another employer) 3CMC Section 4602(d).

Even assuming arguendo that the referenced conditions occurred, thus permitting L&T to asserts these events as grounds for termination, L&T's obligations under the contracts would not be discharged thereby.

Restatement, Second, Contracts Section 230 in pertinent parts provides:

Events that terminate a duty
(1) Except as stated in Subsection (2), if under the terms of the contract the occurrence of an event is to terminate an obligor's duty of immediate performance or one to pay damages for breach, that duty is discharged if the event occurs.
(2) the obligor's duty is not discharged if occurrence of the event
(a) is the result of a breach by the obligor of his duty of good faith and fair dealing....

L&T inserted other oppressive and unconscionable conditions in its contract form not usually associated with factory-laborer-hand packing positions, in the form of a non-compete clause.

Said terms of the contract as such should be deemed unconsciousable and unenforceable and asserted in bad faith. Restatement, Second, Contract Section 208, comment d.

# VII

## NOT AN INTEGRATED CONTRACT

Jack Torres' representation that "(a)ll promises made by L&T to the Plaintiffs were contained within the employment contracts.," is contradicted by the proffered terms of the contract itself, which provides in pertinent parts:

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6806/7743 ~ FAX: 234-7753

" Other Provisions
The following additional provisions apply to this contract: ... Company rules and regulations previously filed with DLI.' See page 2 of Exhibit "A", Memorandum.

Additionally the contract is <u>made voidable</u> pursuant to 3CMC Section 4437(d).

Likewise, Defendant's argument that the contract is integrated is thereby refuted and not true, as shown above.

First, the employment contract itself, which was unilaterally drafted by the Defendant and "not the standard nonresident contract form used by the CNMI DOL," is not in itself integrated. See Defendant's Responses to Requests for Admission Nos. 8 and 9; DOL Standard Form Contract attached as Exhibit "2" hereto.

Restatement, Second, Contracts section 206 Interpretation Against the Draftsman, Comment a.

Secondly, on its face, the employment contract refers to documents outside the four corners of the contract.

Thirdly, L&T - as the employer, signed with the Director of Labor an Employer's Nonresident Worker Agreement which contains provisions the terms of which are to be applied to the Employment Agreement. See Defendant's Response To Plaintiffs' Request No. 14. Restatement 2d, Contracts, Section 209, Comment c. Proof of Integration.

## VIII
## Return Airfare

Defendant mischaracterizes the nature of plaintiffs' claim for the costs of return airfare in the Seventh Cause of Action.

Plaintiffs seek and requested "a declaration that defendants are obligated to pay for the costs of the return transportation of plaintiffs under their contracts and pursuant to the

NWA under the Seventh Cause of Action." (First Amended Complaint, Prayer.)

It is instructive that this issue of the obligation for return airfare was presented to the jury on Special Verdict Form in Yang v. American Investment Corp. and Jerry Tan, District. N. M. I C.A.No. 93-0020, in which the jury found in Form No. 6 the employer obligated to pay the return airfare.

It should be noted that American Investment Corp. was, on information an belief, an affiliate of L&T.

Accordingly there remain genuine issues of material facts precluding summary judgment on this issue in Defendant's favor.

Alternatively summary and declaratory relief as prayed for by plaintiffs on this claim, may and should be granted to plaintiffs.

## IX

### OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
### ON FIFTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

Defendant's claim that "Plaintiffs' claim must fail because any alleged distress allegedly felt by the Plaintiffs is not severe enough to support a claim of intentional infliction of emotional distress is misplaced and simply begs the question.

Defendant L&T used alien-contract sewers from affiliate company, Concorde, to do hand packing work formerly done by Plaintiffs after their May 13, 2006 termination. (*See* Notice of Violation: Unauthorized Employment; Wrongful Termination of Contract, Director of Labor vs. L&T International,  CAC No. 05-101-06 and Director of Labor vs. Concorde Garment MFG, CAC No. 05-100-05 attached as  *Exh. "1"* hereto; *See* also Declaration of Ariel M. Cruz).

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

Defendant L&T caused to be inserted, as a condition of each Plaintiff's contract, a provision prohibiting each Plaintiff from working for any other garment company or rendering services to any person or company dealing in products or services which compete with any products of or services of L&T, for a period of one year, after each Plaintiff's termination by L&T. L&T terminated Plaintiffs after only 2 to 3 months into their one (1) year contracts and reasonably knowing and being aware that each Plaintiffs, all being garment workers, would by said restriction, not be able to obtain employment with another garment company or service in the CNMI, and that this prospect would cause each alien-Plaintiff severe and extreme emotional distress. Said contractual provision was part of Defendant L&T's contract of adhesion. Thus, when facts at the time of and subsequent to plaintiffs' termination are read and considered in a light most favorable to each Plaintiff, it can not be reasonably concluded or said that a reasonable trier of fact, could not come to believe and decide that, given the totality of the Defendant's conduct, under the circumstances given, Defendant's act and conduct was outrageous, severe and shocking. (See Declaration of Jocelyn Tobias, Ariel M..Cruz, Rosario De La Cruz, and Declaration of Joe Hill).

Regarding Defendant L&T's assertion that medical testimony from a physician regarding emotional distress is needed, first, expert testimony is not required for proof of intentional infliction of emotional distress. *See*, e.g. Richardson v. Fairbanks North Star Borough, 705 P. 2d 454 n. 6 (Alaska 1985) ("Expert medical testimony may be the most effective method of demonstrating the existence of severe emotional distress, but it should not be the exclusive means of ascertaining a party's mental state."). *See* McKnight v. Simpson's Beauty Supply, Inc., 86 N.C. App. 451, 454, 358 S.E. 2d 107, 109 (N.C. Ct. App. 1987) ("Our holding is simply that the jury was capable of determining without the aid of a physician or psychiatrist whether plaintiff was shocked and upset following his abrupt,

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

unexplained dismissal and whether such feelings were caused by defendant's conduct."); Chandler v. Denton, 741 P. 2d 855, 867 (Okla. 1987) ("In most cases, jurors from their own experience are aware of the extent and character of the disagreeable emotions that may result from a defendant's outrageous conduct. Severe emotional distress may be shown either by physical manifestations of the distress or by subjective testimony.")

## X

## AFFIRMATIVE DEFENSES SUBJECT TO SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS

Because Defendant has and/or admits that it has no evidence in support of its claimed defenses. Plaintiffs move for and are entitled to summary judgment as a matter of law on Defendant's Affirmative Defenses raised in its Answer, as follows: 1. Defendant's Second Affirmative Defense that "Plaintiff's claims are barred by Waiver"; 2. Defendant's Third Affirmative Defense that "Plaintiff's claims are barred by Estoppel"; 3. Defendant's Fourth Affirmative Defense that "Plaintiff's claims are barred by Fraud"; 4. Defendant's Fifth Affirmative Defense that "Plaintiff's claims are barred by the Statute of Limitations"; 5. Defendant's Sixth Affirmative Defense that "Plaintiff's claims are barred by Illegality"; 6. Defendant's Seventh Affirmative Defense that "Plaintiff's claims are barred by Laches" ; 7. Defendant's Eight Affirmative Defense that "Plaintiff's claims are barred by Unclean hands"; 8. Defendant's Ninth Affirmative Defense that "Plaintiff's claims are barred by Release" ; and 9. Defendant's Tenth Affirmative Defense that "Plaintiff's claims are barred by Statute of Frauds"; See Defendant's Responses To Interrogatories Nos.69, 70, 71. 72. 73. 74. 75. 76 &  77.

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

**CONCLUSION**

Based on the foregoing, Plaintiffs pray that Defendant's Motion for Summary Judgment be denied in its entirety. Plaintiffs further request and pray that the Court grant Summary Judgment in favor of Plaintiffs on all the causes of actions in the First Amended Complaint and declaratory judgment for return airfare on the Seventh Cause of Action; partial summary judgment on defendant's liability for health fees and wages for time spent for medical examination /certificates and summary judgment against Defendant on its Affirmative Defenses.

I, Joe Hill declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this ___29th___ day of September, 2006.

/8/ _Joe Hill_

**JOE HILL/Declarant**
Attorney for Plaintiffs

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753