F I L E D
Clerk
District Court

SEP 2 9 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| **ABELLANOSA, JOANNA, et al.,** | Civil Action No. 05-0010 |
| Plaintiffs, | |
| v. | **DECLARATION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **L&T INTERNATIONAL CORP.,** | |
| Defendant. | |

I, ANASTACIA CABANIT, hereby declare as follows:

1.    I am over the age of eighteen years old, have personal knowledge of the facts set forth herein, am competent to testify as to these facts if called as a witness in a court of law, and if called would testify as stated herein.

2.    On or about January, 2004, I went to L&T to apply for an advertised job vacancy for hand packers. After filling-up and turning in the application form, I was told that L&T will just call me for further information.

3.    After about three days, an L&T personnel who identified herself as Baby Lopez, called me up for interview. When I reported to L&T, a certain Cory Quing conducted the interview.

4.    During my interview, Cory Quing asked me if I can start working immediately and if my then employer is willing to release me to L&T. Thereafter, I was told to report to Amy Tse for another round of interview. After the second interview, I was told to go home and L&T would just call me for further instruction.

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

ORIGINAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

I.
MEDICAL FEES
(Physical Examination Fee
and Health Certificate Fee)

5.    A few days later, I got a call from Baby Lopez asking me to report to HR office.    When I arrived at HR,   I met with Baby Lopez who asked me to complete the Consensual Transfer documents and have my employer to complete and sign them, which I did. Baby Lopez noted that my health certificate had not yet expired. She told me that L&T would use my health certificate from my then employer.

II.
CONTRACT SIGNING

5.    My first non-resident contract was in 1996.    Basically, annually since then, each year, my employers used and had me sign a standard form labor contract provided by DOL. I became familiar with the basic terms of the DOL standard form contract. A copy of such standard form contract is attached as Exhibit "2" to Plaintiffs' Verified/Amended Opposition.

6.  In 2004, when an L&T HR staff handed me their contract form, with only the signature page showing , and insisting that I sign, I had no reason to believe it was not the standard DOL form contract.  Prior to signing this L&T contract form and at the time it was presented to me in the HR for signing, I was not given an opportunity to read the contract before signing it. When it was presented to me in the HR office, Marlene del Rosario  just pointed to where I was to sign it, and said sign, which I did without reading it. The HR staff was rushing me and other applicants by insisting that I and the other

2

applicants I saw present, hurry up and quickly sign, without delaying the document processing.  From the mood and way the HR staff was acting, I was made fearful that if I didn't just sign the signature page as instructed, I would lose the job opportunity especially since none of the other applicants I saw there held up the line by or took time to read the contract document.  I observed the HR staff acting the same way with other workers who signed before and after my turn.  Neither Marlene del Rosario,  nor any one else, ever showed me my contract document until the time and date they asked me (us) to sign at HR.  I was never given a copy of the L&T contract document I signed before my termination on or about May 13, 2004.  After my termination I was surprised when I later learned of some of the conditions and terms in L&T's self-styled contract.  Had I known that the L&T self-styled contract contained terms restricting me from being employed with other competing companies in Saipan and allowing L&T to terminate me at any time as a reduction in force, I would not have agreed to or signed it.

III.
PERFORMANCE EVALUATION

7.    There was no individualized measurement or testing to determine my or each Packer's individual performance or production.  The only production measurement or test was done by counting the output (production) from each of the different lines of Packers.  There was really no way for me as an individual packer to control or show an increase in the number of products because I was just one individual on the line with many others.  In the packing section our work was performed by groups of workers on so-called

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM·MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

3

lines. The packages or items we were assigned to work on often varied from day to day. Our Head Supervisor in the packing section was Cao, Li Qun, who is Chinese. When I and other Filipino workers tried to ask her questions regarding our work she could not answer nor explain because she does not speak english fluently. (*See* Defendant's Response to Plaintiffs' First Set of Request for Interrogatories No. 49a).

## IV.
## TERMINATION

8. I was employed and worked for L&T International Corporation as a hand packer until May 13, 2004, when I and other workers in the hand packing section were summoned by the calling of our individual names over the public address system, to report to the Human Resources (HR) office. I believe and understand we were called in two batches, one about 3:00 p.m. and one about 5:00 p.m. (*See* Deposition of Jack Torres, page 97, lines 14-17).

9. I did not know why we were being called to come to HR. I thought that we were being called regarding receipt of our anticipated ATM Cards that L&T had previously given us and had us fill out an application for, as they told me and other workers present, to make it easier and more convenient for (us) workers to access and get our anticipated bi-weekly wage payments without having to stand in line waiting for and trying to cash payroll checks. I was made more assured of my continued employment and anticipated pay check by L&T having asked me and other workers to set up these ATM accounts to facilitate our anticipated payroll check payments.

10. As we arrived at the designated meeting room, I observed other workers,

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

4

1  and Corazon Quing, Malou Ernest and Rhodora Bernabe, known to us as HR

2  staff,  were present at the May 13, 2004 meeting.

3  11.  I did not see or hear Corazon Quing read or reading from any document

4  or the so-called "communication plan" as described and stated in Exhibit "A"

5  attached to the Declaration of Corazon Quing.

6  12.  More specifically, I (we) were not told as stated by Corazon Quing that we

7  the  workers,  had  the  right  to  appeal  our  termination  to  the  "Legal

8  Department" of  L&T or to  any one else.

9  13.  Neither Malou Ernest, Corazon Quing nor any one else at the May 13,

10 2004 meeting, informed us, that the purpose of the so-called second check

11 was "to cover for 10 days pay in lieu of notice," as stated in paragraph 7,

12 Declaration of Corazon Quing.  Additionally, L&T's own RIF policy required,

13 as proposed RIF workers, that I (we) be given "written notice of separation at

14 least 15 days prior to the effective date of separation, or severance pay in lieu

15 of notice." (*See* Ex. "D" Deposition of Torres, and  page 88 lines 6-8 and lines

16 20-24).

17 14.  It was my honest belief that I and my co-workers were terminated on May

18 13, 2004 and that  the termination was effective immediately on and from May

19 13, 2004, because I (we) were told by HR staff at the May 13, 2004 meeting

20 that today (May 13, 2004) was our last day of employment and they demanded

21 that we give up and turn in our company ID cards which were required and

22 needed for company employees to freely enter company premises; and more

23 importantly, our I.D.s were swipe-cards for the time-clocks so we could not

24 clock in or out without them, in addition to being required to "turn over any

25 and all company properties in your possession... on or before May 13, 2004"

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

5

as stated in the Notice of Termination. (*See* Ex. "D," Defendant's Memorandum).

15.   As a result I believed and felt that I was terminated and forced to stop working on May 13, 2004, the same date that the Notice of Termination (dated May 12, 2004) was given to me.  Hence, I was not given the required prior notice of termination and/or of the RIF.

16.   I and the other plaintiffs worked a set work schedule and shift, and worked Monday through Saturday, seven (7) hours a day, six (6) days a week, for a total of forty-two (42) hours each work week, which included two (2) hour overtime each work week while employed at L&T.

## V.
## EMOTIONAL DISTRESS

17.   The termination, being announced and coming as it did without any prior notice, counseling or discussion about employment options with other companies or L&T caused me severe shock. After the announcement, I felt weak, mentally and physically drained.  I felt betrayed by such abrupt termination of employment. I became moody. I was restless and could hardly sleep at night.  I was having nausea due to headache and loss of appetite.  My well being  was affected as a I worried too much after the termination. For several months after L&T terminated my employment, I was too embarrassed and ashamed to go to gatherings of friends and acquaintances because of fear of being asked about my sudden firing and termination by L&T. I felt like a social outcast. I  was  even  hesitant  to  go out for fear that I might meet

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

somebody from my former employment and inquired about my predicament with L&T. The termination, being announced and coming as it did without any prior notice, counseling or discussion about employment options with other companies or L&T caused me severe shock. After the announcement, I felt weak, mentally and physically drained.

22.  The way L&T broke the news of termination to us, not individually or privately, but *en masse* in front of all the other employees, resulted in wailing, crying and shouting and pandemonium among the workers present; I and the other workers present were trying to console one another. I was shocked, in a stupor, mortified and dumbfounded. The termination left me physically and emotionally drained from the severe emotional distress caused thereby. I felt restless. In addition, I worried and could not stop thinking of the loss of work and livelihood.

23.  I noticed and felt that I am not the same person before and after the loss of my job at L&T.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 28th day of September, 2006.

/S/ _____
Anastacia Cabanit
Declarant

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

7