46

FILED
Clerk
District Court

SEP 29 2006

For The Northern Mariana Islands
By ________
(Deputy Clerk)

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS**

**ABELLANOSA, JOANNA, et al.,**

Plaintiffs,

v.

**L&T INTERNATIONAL CORP.,**

Defendant.

Civil Action No. 05-0010

**DECLARATION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, Edelita Manzanilla, hereby declare as follows:

1. I am over the age of eighteen years old, have personal knowledge of the facts set forth herein, am competent to testify as to these facts if called as a witness in a court of law, and if called would testify as stated herein.

2. On or about January, 2004, I went to L&T to apply for an advertised job vacancy for hand packers.

3. During my interview, Cory Quing asked me who was my employer and if I was willing to transfer to L&T. I told her who my employer was and yes, I was willing to transfer to L&T. She asked me if my employer was willing to release me. I told her yes.

I.
MEDICAL FEES
(Physical Examination Fee
and Health Certificate Fee)

4. A few days later, I got a call from L&T asking me to report to HR office. When I arrived at HR I met with Baby Lopez, who identified herself as an HR staff person. Baby gave me and asked me to complete the Consensual

Transfer documents and have my employer to complete and sign them, which I did. I gave the completed consensual transfer documents to Baby Lopez at the HR office. Baby Lopez then asked for my health certificate which she noted was to expire in about two months. Baby told me that I would need to get a new medical examination and health certificate before my employment application/documentation could be completed and processed.

5. Baby told me to go to Marianas Medical Center to get the examination. I asked her how the medical examination and health certificate are going to be paid for. Baby said you pay for it now and on your renewal L&T will pay. I understood this to mean that if I did my job and not violate any company rules, that I would be renewed for a second year and that during that second year L&T would pay/repay for the health examination and health certificate fees.

6. Baby instructed me that after the medical examination, I should go to Health Services at DOL and bring back my health certificate, and at that time they can complete the processing of my employment application papers.

7. I was not paid for nor reimbursed by L&T for my services and time spent getting the medical examination and health certificate.

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

## II.
## CONTRACT SIGNING

8. My first non-resident contract was in 1988. Basically, annually since then, each year, my employers used and had me sign a standard form labor contract provided by DOL. I became familiar with the basic terms of the DOL standard form contract. A copy of such standard form contract is attached as

Exhibit "2" to Plaintiffs' Amended Opposition.

9. In 2004, when L&T HR staff Baby Lopez handed me their contract form, with only the signature page showing , and insisting that I sign, I had no reason to believe it was not the standard DOL form contract. Prior to signing this L&T contract form and at the time it was presented to me in the HR for signing, I was not given an opportunity to read the contract before signing it. When it was presented to me in the HR office, Baby Lopez just pushed the document through the counter-window with the pages turned back, showing only the signature page, and pointed to where I was to sign it, and said sign, which I did without reading it. The HR staff was rushing me and other applicants by insisting that I and the other applicants I saw present, hurry up and quickly sign, without delaying the document processing. From the mood and way the HR staff was acting, I was made fearful that if I didn't just sign the signature page as instructed, I would lose the job opportunity especially since none of the other applicants I saw there held up the line by or took time to read the contract document. I observed the HR staff acting the same way with other workers who signed before and after my turn. Neither Baby Lopez, nor any one else, ever showed me my contract document until the time and date they asked me (us) to sign at HR. I was never given a copy of the L&T contract document I signed before my termination on or about May 13, 2004. After my termination I was surprised when I later learned of some of the terms and conditions in L&T's self-styled contract. Had I known that L&T contract contained terms restricting me from being employed with other competing companies in Saipan and allowing L&T to terminate me at any time as a reduction in force, I would not have agreed to it or signed it.

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

## III.
## PERFORMANCE EVALUATION

10. There was no individualized measurement or testing to determine my or each Packer's individual performance or production. The only production measurement or test was done by counting the output (production) from each of the different lines of Packers. There was really no way for me as an individual packer to control or show an increase in the number of products because I was just one individual on the line with many others. In the packing section our work was performed by groups of workers on so-called lines. The packages or items we were assigned to work on often varied from day to day. Our Head Supervisor in the packing section was Cao, Li Qun, who is Chinese. When I and other Filipino workers tried to ask her questions regarding our work she could not answer nor explain because she does not speak english fluently. (*See* Defendant's Response to Plaintiffs' First Set of Request for Interrogatories No. 49a).

## IV.
## TERMINATION

11. I was employed and worked for L&T International Corporation as a hand packer until May 13, 2004, when I and other workers in the hand packing section were summoned by the calling of our individual names over the public address system, to report to the Human Resources (HR) office. I believe and understand we were called in two batches, one about 3:00 p.m. and one about 5:00 p.m. (*See* Deposition of Jack Torres, page 97, lines 14-17).

12. I did not know why we were being called to come to HR. I thought that

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

we were being called regarding receipt of our anticipated ATM Cards that L&T had previously given us and had us fill out an application for, as they told me and other workers present, to make it easier and more convenient for (us) workers to access and get our anticipated bi-weekly wage payments without having to stand in line waiting for and trying to cash payroll checks. I was made more assured of my continued employment and anticipated pay check by L&T having asked me and other workers to set up these ATM accounts to facilitate our anticipated payroll check payments.

14. As we arrived at the designated meeting room, I observed other workers, and Corazon Quing, Malou Ernest and Rhodora Bernabe, known to us as HR staff, were present at the May 13, 2004 meeting.

14. I did not see or hear Corazon Quing read or reading from any document or the so-called "communication plan" as described and stated in Exhibit "A" attached to the Declaration of Corazon Quing.

15. More specifically, I (we) were not told as stated by Corazon Quing that we the workers, had the right to appeal our termination to the "Legal Department" of L&T or to any one else.

16. Neither Malou Ernest, Corazon Quing nor any one else at the May 13, 2004 meeting, informed us, that the purpose of the so-called second check was "to cover for 10 days pay in lieu of notice," as stated in paragraph 7, Declaration of Corazon Quing. Additionally, L&T's own RIF policy required, as proposed RIF workers, that I (we) be given "written notice of separation at least 15 days prior to the effective date of separation, or severance pay in lieu of notice." (*See* Ex. "D" Deposition of Torres, and page 88 lines 6-8 and lines 20-24).

17. It was my honest belief that I and my co-workers were terminated on May 13, 2004 and that the termination was effective immediately on and from May 13, 2004, because I (we) were told by HR staff at the May 13, 2004 meeting that today (May 13, 2004) was our last day of employment and they demanded that we give up and turn in our company ID cards which were required and needed for company employees to freely enter company premises; and more importantly, our I.D.s were swipe-cards for the time-clocks so we could not clock in or out without them, in addition to being required to "turn over any and all company properties in your possession... on or before May 13, 2004" as stated in the Notice of Termination. (*See* Ex. "D," Defendant's Memorandum).

18. As a result I believed and felt that I was terminated and forced to stop working on May 13, 2004, the same date that the Notice of Termination (dated May 12, 2004) was given to me. Hence, I was not given the required prior notice of termination and/or of the RIF.

19. I and the other plaintiffs worked a set work schedule and shift, and worked Monday through Saturday, seven (7) hours a day, six (6) days a week, for a total of forty-two (42) hours each work week, which included two (2) hour overtime each work week while employed at L&T.

V.
EMOTIONAL DISTRESS

20. The sudden termination of my employment by L&T caused me severe

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

shock, as a result I began to experience frequent head aches.

21. I always worry and I could not stop thinking of the loss of work and livelihood. I could not sleep during the first few weeks after the firing. Even now I can not sleep soundly and wake up in the middle of the night worrying and thinking about how I am going to feed and provide for my children and parents who depend on me for support.

22. I became short-tempered and I always fight with my boyfriend. I became incapable of enjoying life since my termination. I turned from being hopeful to being hopeless and despondent.

23. For several months after L&T terminated my employment, I was too embarrassed and ashamed to go to gatherings of friends and acquaintances because of fear of being asked about my sudden firing and termination by L&T.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 29th day of September, 2006.

/S/ ____________________
Edelita Manzanilla
Declarant