F I L E D
Clk
District Court

SEP 2 9 2006

For The Northern Marian
By
(Deputy Cl...)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

JOE HILL
Hill Law Offices
P.O. Box 500917 – Saipan CM-MP 96950 –
TEL. NO. (670) 234-6860/7743 – FAX: 234-7753

| | |
|---|---|
| ABELLANOSA, JOANNA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> L&T INTERNATIONAL CORP., <br><br> Defendant. | Civil Action No. 05-0010 <br><br> **DECLARATION IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

I, MARIBEL T. VILLANUEVA, hereby declare as follows:

1.    I am over the age of eighteen years old, have personal knowledge of the facts set forth herein, am competent to testify as to these facts if called as a witness in a court of law, and if called would testify as stated herein.

2.    On or about February, 2004, I went to L&T to apply for an advertised job vacancy for hand packers. After filling-up and turning in the application form, I was told that L&T will just call me for further information.

3.    After about a couple of days, an L&T personnel who identified herself as Baby Lopez, called me up for interview. When I reported to L&T, a certain Cory Quing conducted the interview.

4.    During my interview, Cory Quing told me that once I am hired, and if my work performance is satisfactory, I would be given overtime and that my employment is assured. On the same day, I was told to report to Amy Tse for another round of interview. After the second interview, I was told to go home and L&T would just call me for further instruction.

ORIGINAL

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

I.
## MEDICAL FEES
(Physical Examination Fee
and Health Certificate Fee)

5.    A few days later, I got a call from Baby Lopez asking me to report to HR office.  When I arrived at HR I met with Baby Lopez, who identified herself as an HR staff person, I was told to submit several requirements.  Baby told me to go to Marianas Medical Center to get the examination.  I asked her how the medical examination and health certificate are going to be paid for.  Baby said you pay for it now and on your renewal L&T will pay.  I understood this to mean that if I did my job and not violate any company rules, that I would be renewed for a second year and that during that second year L&T would pay/repay for the health examination and health certificate fees.  Baby Lopez even asked $20.00 from me as L&T would be the one to secure my health certificate from DOL.

6.    I was not paid nor reimbursed for my services and time spent getting the medical examination.

II.
## CONTRACT SIGNING

7.    My first non-resident contract was in 1993.  Basically, annually since then, each year, my employers used and had me sign a standard form labor contract provided by DOL. I became familiar with the basic terms of the DOL standard form contract. A copy of such standard form contract is attached as ***Exhibit "A"*** to Plaintiffs' Amended Opposition.

8.    In 2004, when L&T HR staff Baby Lopez handed me their contract form,

2

with only the signature page showing , and insisting that I sign, I had no reason to believe it was not the standard DOL form contract. Prior to signing this L&T contract form and at the time it was presented to me in the HR for signing, I was not given an opportunity to read the contract before signing it. When it was presented to me in the HR office, Baby Lopez just pushed the document through the counter-window with the pages turned back, showing only the signature page and pointed to where I was to sign it, and said sign, which I did without reading it. The HR staff was rushing me and other applicants by insisting that I and the other applicants I saw present, hurry up and quickly sign, without delaying the document processing. From the mood and way the HR staff was acting, I was made fearful that if I didn't just sign the signature page as instructed, I would lose the job opportunity especially since none of the other applicants I saw there held up the line by or took time to read the contract document. I observed the HR staff acting the same way with other workers who signed before and after my turn. Neither Marlene del Rosario, nor any one else, ever showed me my contract document until the time and date they asked me (us) to sign at HR. I was never given a copy of the L&T contract document I signed before my termination on or about May 13, 2004. After my termination I was surprised when I later learned of some of the conditions and terms in L&T's self-styled contract. Had I known that the L&T self-styled contract contained terms restricting me from being employed with other competing companies in Saipan and allowing L&T to terminate me at any time as a reduction in force, I would not have agreed to or signed it.

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

3

III.
PERFORMANCE EVALUATION

9.  There was no individualized measurement or testing to determine my or each Packer's individual performance or production. The only production measurement or test was done by counting the output (production) from each of the different lines of Packers. There was really no way for me as an individual packer to control or show an increase in the number of products because I was just one individual on the line with many others.  In the packing section our work was performed by groups of workers on so-called lines.  The packages or items we were assigned to work on often varied from day to day.  Our Head Supervisor in the packing section was Tse, Oi Ling, who is Chinese.  When I and other Filipino workers tried to ask her questions regarding our work she could not answer nor explain because she does not speak english fluently.  (*See* Defendant's Response to Plaintiffs' First Set of Request for Interrogatories No. 49a).

IV.
TERMINATION

10.  I was employed and worked for L&T International Corporation as a hand packer, from on or about February, 2004 to May 13, 2004, when I and other workers in the hand packing section were summoned by the calling of our individual names over the public address system, to report to the Human Resources (HR) office. I believe and understand we were called in two batches, one about 3:00 p.m. and one about 5:00 p.m. (*See* Deposition of Jack Torres, page 97, lines 14-17).

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

4

11.   I did not know why we were being called to come to HR.  I thought that we were being called regarding receipt of our anticipated ATM Cards that L&T had previously given us and had us fill out an application for, as they told me and other workers present, to make it easier and more convenient for (us) workers to access and get our anticipated bi-weekly wage payments without having to stand in line waiting for and trying to cash payroll checks.  I was made more assured of my continued employment and anticipated pay check by L&T having asked me and other workers to set up these ATM accounts to facilitate our anticipated payroll check payments.

12.   As we arrived at the designated meeting room, I observed other workers, and Corazon Quing, Malou Ernest and Rhodora Bernabe, known to us as HR staff,  were present at the May 13, 2004 meeting.

13.  I did not see or hear Corazon Quing read or reading from any document or the so-called "communication plan" as described and stated in Exhibit "A" attached to the Declaration of Corazon Quing.

14.  More specifically, I (we) were not told as stated by Corazon Quing that we the workers, had the right to appeal our termination to the "Legal Department" of  L&T or to  any one else.

15.  Neither Malou Ernest, Corazon Quing nor any one else at the May 13, 2004 meeting, informed us, that the purpose of the so-called second check was "to cover for 10 days pay in lieu of notice," as stated in paragraph 7, Declaration of Corazon Quing.  Additionally, L&T's own RIF policy required, as proposed RIF workers, that I (we) be given "written notice of separation at least 15 days prior to the effective date of separation, or severance pay in lieu of notice." (*See*  Ex. "D" Deposition of Torres, and  page 88 lines 6-8 and lines

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6800/7743 ~ FAX: 234-7753

5

20-24).

16.   It was my honest belief that I and my co-workers were terminated on May 13, 2004 and that the termination was effective immediately on and from May 13, 2004, because I (we) were told by HR staff at the May 13, 2004 meeting that today (May 13, 2004) was our last day of employment and they demanded that we give up and turn in our company ID cards which were required and needed for company employees to freely enter company premises; and more importantly, our I.D.s were swipe-cards for the time-clocks so we could not clock in or out without them, in addition to being required to "turn over any and all company properties in your possession... on or before May 13, 2004" as stated in the Notice of Termination. (*See* Ex. "D," Defendant's Memorandum).

17.   As a result I believed and felt that I was terminated and forced to stop working on May 13, 2004, the same date that the Notice of Termination (dated May 12, 2004) was given to me.  Hence, I was not given the required prior notice of termination and/or of the RIF.

18.   I and the other plaintiffs worked a set work schedule and shift, and worked Monday through Saturday, seven (7) hours a day, six (6) days a week, for a total of forty-two (42) hours each work week, which included two (2) hour overtime each work week while employed at L&T.

## V.
## EMOTIONAL DISTRESS

19.   When L&T terminated my employment, it was nightmare. I became very emotionally upset and disturbed as a result of the termination of my employment at

6

L&T.   The way L&T broke the news of termination to us, not individually or privately, but *en masse* in front of all the other employees, resulted in wailing, crying and shouting and pandemonium among the workers present; I and  the other workers present were crying and hugging each other and trying to console one another. I was shocked, in a stupor, and dumbfounded. The termination left me physically and emotionally drained from the severe emotional distress caused thereby. My whole body was shaking at that time. I felt very nervous, angry, frightened and disappointed over what L&T had done to me and to the rest of the workers. I had trouble sleeping, did not have enough sleep or sleepless over the night. I was really very angry why such thing as this had happened to me. I got feelings of worthlessness, self-hate and inappropriate guilt that even close family members kept their distance from me. I got fears and felt unsafe even in the confines of my own house. I got the feelings of hopelessness and helplessness. I was worried of what will happen to me in the future.  After the termination, I felt fatigue, tiredness, weariness or even weakness.  I lost my appetite to eat.  Most days I felt dizzy and I vomited in the mornings.  I cried a lot and I worry then I end up more troubled and bothered.  Often, I lack the energy to attend to the basic needs of my family.  I had extreme difficulty concentrating due to too much thinking on what would happen to us, especially to my kids, and to my parents in the Philippines who depend on me for support.  I also withdrew from my usual activities and had become inactive. I have also lost interest in having sex with my partner.  I could not control my emotions especially my temper.  I have become more hot-headed that even small things bother me.   I get irritated with my kids and my partner easily.

20.   I wanted to consult a doctor about all the things that I am experiencing

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

7

but I do not have money to pay medical examination fees.  I asked spiritual advice from a priest to enlighten myself and to relieve me of my sufferings.  The priest told me to always pray and believe in Him.

21.    The termination, being announced and coming as it did without any prior notice, counseling or discussion about employment options with other companies or L&T caused me severe shock.  After the announcement, I felt weak, mentally and physically drained.  I felt betrayed by such abrupt termination of employment.  I became moody.  I was restless and could hardly sleep at night.  I was having nausea due to headache and loss of appetite.  My sex life was also affected as a I worried too much after the termination.  For several months after L&T terminated my employment, I was too embarrassed and ashamed to go to gatherings of friends and acquaintances because of fear of being asked about my sudden firing and termination by L&T.  I felt like a social outcast.  I was even hesitant to go out for fear that I might meet somebody from my former employment and inquired about my predicament with L&T.  The termination, being announced and coming as it did without any prior notice, counseling or discussion about employment options with other companies or L&T caused me severe shock.  After the announcement, I felt weak, mentally and physically drained.

22.  The way L&T broke the news of termination to us, not individually or privately, but *en masse* in front of all the other employees, resulted in wailing, crying and shouting and pandemonium among the workers present; I and  the other workers

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96050 ~
TEL. NO. (670) 234-6860/7743 ~ FAX. 234-7753

8

present were trying to console one another. I was shocked, in a stupor, mortified and dumbfounded. The termination left me physically and emotionally drained from the severe emotional distress caused thereby. I felt restless. In addition, I worried and could not stop thinking of the loss of work and livelihood.

23.    I noticed and felt that I am not  the same person before and after the loss of my job at L&T.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 28th  day of September, 2006.

/S/  _____

Maribel T. Villanueva

Declarant

JOE HILL
Hill Law Offices
P.O. Box 500917 ~ Saipan CM-MP 96950 ~
TEL. NO. (670) 234-6860/7743 ~ FAX: 234-7753

9