Colin M. Thompson, Esq.
Law Offices of Colin M. Thompson
PMB 917, Box 10001
Saipan, MP 96950
Telephone: (670) 233-0777
Facsimile: (670) 233-0776

FILED
Clerk
District Court

OCT - 4 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ABELLANOSA, JOANNA et. al., | ) Civil Action No. 05-0010 |
| Plaintiffs, | ) SUPPLEMENTAL REPLY TO<br>) PLAINTIFFS' OPPOSITION TO |
| vs. | ) SUMMARY JUDGMENT |
| L&T INTERNATIONAL CORPORATION. | ) |
| Defendant. | ) Date: October 5, 2006<br>) Time: 9:00 a.m.<br>) Judge: Hon. Alex R. Munson |

### INTRODUCTION

L&T International Corporation ("L&T") submits this Supplemental Reply to Plaintiffs' Amended Opposition to Defendant's Motion for Summary Judgment filed on September 29th 2006. This Supplemental Reply will point to the continued absence of evidence supporting Plaintiffs' claims despite the filing of 72 affidavits on September 29th 2006[1].

Plaintiffs have taken a shot gun approach, firing a barrage of claims at L&T. L&T filed its motion for summary judgment on the basis that Plaintiffs lack the evidence to establish their claims. In response Plaintiffs continue to advance imprecise and unsubstantiated claims. Plaintiffs have failed to

---

[1] The declarations were not served on L&T until October 2, 2006.

1

present to the court admissible evidence to establish the fundamental elements of the causes of action alleged in the First Amended Complaint ("FAC"). For the fraud claim, none of the Plaintiffs say that they were induced to accept employment with L&T because of false promises made to them by L&T. On the Fair Labor Standards Act claim, Plaintiffs fail to present sufficient evidence that illegal deductions impacted their overtime pay. For the claim of Intentional Infliction of Emotional Distress, none present evidence that L&T acted "outrageously" when it terminated their employment or that any one of the Plaintiffs suffered severe emotional distress. None present evidence to create a genuine issue of material fact that they were terminated for any reason other than because of a reduction in force. As shown more specifically below, there is a complete failure of proof on essential elements of each claim and therefore judgment should be entered in favor of defendant.

## THE FRAUD CLAIM

L&T moved for summary judgment on the sixth cause of action titled "Fraud and Deceit" on the basis that L&T did not make any false promises, Plaintiffs did not rely on any false promises, Plaintiff could not reasonably rely on oral promises, if any were made, in light of the integrated written employment contract and the Plaintiffs suffered no damage in reliance on any of the purported false promises. In opposition, Plaintiffs **continue** to argue that the because the Employment Contracts[2] refer to other provisions-company rules previously filed with the Department of Labor-that the contracts are not integrated. Plaintiffs specifically argue that parol evidence should be allowed because the Employment Contracts refer to "Company Rules and regulations previously filed with DLI".[3] This argument fails for a number of reasons.

First, the Employment Contracts provide for integration. "Entire Agreement. The foregoing terms and conditions constitute the sole, entire agreement of the Parties herein and shall supersede any

---

[2] The Director of Labor approved Non-Resident Worker Contracts executed between the Plaintiffs and L&T.
[3] Plaintiffs Verified/Amended Opposition to Defendant's Motion for Summary Judgment and Plaintiffs' Cross Motion For Summary Judgment filed September 29th 2006 ("Amended Op.") at pg 20 lines 2-3.

2

other agreement, written, verbal or otherwise."[4] The integration clauses in "Standard Form Contract" and the "L&T Self-Styled Contract"[5] are exactly the same-verbatim. (Plaintiffs attempt to distiquish between the Employment Contracts and the "Standard Form Contract" is a red herring. The only relevant and material issue is whether the Employment Contracts were approved by the Director of Labor.) Secondly, under CNMI statute, a non-resident may only work pursuant to an approved written contract.[6] It would be illegal for the Plaintiffs to work for L&T without approved contracts. 3CMC §4437 (l) provides that "[i]t shall be unlawful for an employer to hire or employ a person who is not lawfully in the Commonwealth or if such person is a nonresident worker if such nonresident worker's contract has not been approved by the chief." Third, the Employment Contracts were approved by the Director of Labor.[7] The legal effect of the Director of Labor's approval of the Employment Contracts was to demonstrate compliance with the Non-resident Workers Act.[8] Finally, the Employment Contracts were signed by each plaintiff under penalty of perjury.[9] Thus integration is an approved term in every non-resident worker contract, it was a term in the Employment Contracts approved by the Director of Labor and the law provides that the ONLY valid agreement between the Plaintiff and L&T was the Employment Contract.[10]

The Commonwealth Superior Court has ruled that if a contract provides for integration by its terms, then the contract is integrated. "In order to look past this clear indication of the parties' intent, the court would have to find that the Memorandum of Agreement was not an "integrated document" as defined by Restatement (Second) of Contracts § 209 (1981). On the contrary, by its terms, the

---

[4] See Exhibit A to the declaration of Jack S. Torres pp 3-4 and Exhibit 2 to the Amended Op.
[5] See Plaintiffs' Declarations referring to "L&T's Self Styled contract".
[6] 3 CMC §4437(d) No employer or nonresident worker shall execute any contract, make any other agreement, or change any existing contract, in writing or otherwise, regarding the employment of such worker, without the approval of the chief, and no nonresident worker shall perform labor or services within the Commonwealth except pursuant to an approved contract or an approved change to this contract.
[7] See Exhibit A to the declaration of Jack S. Torres p. 4.
[8] "...If the employment contract is not in compliance, the chief shall prepare a corrective addendum to be executed by the employer and the nonresident worker. When the chief is satisfied that all requirements have been met, he shall signify his approval on the employment contract and any addendum and notify the employer." 3 CMC §4434(d)
[9] See Exhibit A to the declaration of Jack S. Torres p. 4. Each Plaintiff signed their employment contract under penalty of perjury.
[10] 3 CMC §4437(d) Supra,

memorandum here is fully integrated."[11]  Contrary to Plaintiffs contention, reference in an integrated agreement to a specific document separate from the integrated agreement does not destroy and integrated contract. [12]  There can be no doubt that the Employment Contracts were completely integrated. "An agreement is integrated unless it is established by other evidence that the writing did not constitute a final expression." *Seol v. Saipan Honeymoon Corp.*, 5 N.M.I. 238, 240 (1999) (citing (SECOND) OF CONTRACTS § 210(1). The Employment Contracts were signed by Plaintiffs under penalty of perjury. Since Plaintiffs acknowledged the truth of the forms of the employment contracts including the integration clause, they should be estopped to deny integration. Plaintiffs failed to present sufficient evidence for this Court to conclude that the Employment Contracts were anything but integrated agreements.

As a consequence of the integration of the Employment Contracts, any alleged promise made by L&T to the Plaintiffs on a subject within the scope of the Employment Contract should be discarded. "The parol evidence rule provides that a binding, completely integrated, written agreement discharges all other agreements, written or oral, that were made before the completely integrated agreement, to the extent that the prior agreements are within the scope of the completely integrated agreement." RESTATEMENT (SECOND) OF CONTRACTS § 213(2).  This general rule for contracts is amplified by the application of the Non-Resident Workers Act that provides:

> No employer or nonresident worker shall execute any contract, make any other agreement, or change any existing contract, in writing or otherwise, regarding the employment of such worker, without the approval of the chief, and no nonresident worker shall perform labor or services within the Commonwealth except pursuant to an approved contract or an approved change to this contract... 3 CMC 4437(d).

The effect of the integration of the Employment Contracts is to discharge all other agreements within the

---

[11] *Ramon C. Mafnas, v. Matao C. Yokeno, et al.*, In The Superior Court For The Commonwealth Of The Northern Mariana Islands Civil Action No. 90-0550 (Decision and Order on Cross-Motions for Summary Judgment)(December 7, 1993)

[12] *Pio v. John B. Gilliland Constr., Inc.*, 560 P.2d 247, (Ore. 1975) (Memorandum Agreement incorporated by reference a Master Agreement and agreements establishing trust funds; Court found that the execution of the Memorandum Agreement was an integration of the final agreement of the parties, and "collateral oral agreement" was in direct conflict with the express words of the integration and was, therefore, necessarily inoperative.)

4

scope of the Employment Contracts.

> The parol evidence rule provides that a binding, completely integrated, written agreement discharges all other agreements, written or oral, that were made before the completely integrated agreement, to the extent that the prior agreements are within the scope of the completely integrated agreement. Restatement (Second) of Contracts § 213(2) at 129 (1979); see also *Abercrombie v. Hayden Corp.*, 320 Ore. 279, 883 P.2d 845, 851 (Or. 1994) (completely integrated writing supersedes or discharges all prior agreements, written or oral, within scope of complete integration). *Seol v. Saipan Honeymoon Corp.*, 1999 MP 9, P13 (N. Mar. I. 1999)

Within the scope of the Employment Contracts were the terms and conditions of employment including the term of one year, the amount of compensation, repatriation obligations, grievance procedures, provision for termination including terminations for cause based on reduction of force due to economic conditions or economic necessity among other terms. Plaintiffs claims based on **implied contracts** or for **fraud,** to the extent presented, should be discharged by operation of the parole evidence rule.

The application of the parol evidence rule, although sufficient in and of itself to support the entry of summary judgment, is not the only basis for summary judgment on the Plaintiffs' fraud claim. Plaintiffs fail to identify a genuine issue of material fact as to each element of fraud. The elements of fraud were set out by the Commonwealth Supreme Court in *Ada v. Sadhwani's, Inc.*

> "[o]ne who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to them by their justifiable reliance upon the misrepresentation. Restatement (Second) of Torts § 525 (1977); *Ada v. K. Sadhwani's, Inc.*, 3 N.M.I. 303 (1992).

What evidence did the Plaintiffs produce to show a misrepresentation of fact, opinion of intention? The Plaintiffs alleged in paragraph 95 of their FAC that L&T "misrepresented to plaintiffs that they could reasonably rely on and expect employment for at least one year, with a promise of renewal for an additional second year with defendant." The terms of the Employment Contracts, signed by each plaintiff under penalty of perjury, directly contradict this allegation. Further, this allegation is not borne

out in the declarations filed by the Plaintiffs. None of the Plaintiff presented evidence of a false promise other than the alleged implied promise of two years employment based on "Baby's" purported statement that L&T would pay for their medical cost "on your renewal L&T would pay."[13] This implication is not reasonable and does not create a genuine issue of material fact. There is evidence that L&T did not make false promises.[14] As a matter of law the Employment Contracts are the only enforceable agreements.[15] None of the Declarants mention anything about an unconditional promise of one year of employment. All of the Plaintiffs worked previously in the Commonwealth and understood that the terms and conditions of their employment would be controlled by the Employment Contracts and not implications from statements made to them by L&T employees.

There is no evidence in the record that L&T **intentionally** made false promises to any plaintiff to induce them to accept employment. "Fraud and negligent misrepresentation both require a false statement relied upon by another. In addition, fraud requires the statement to be made knowingly, i.e., with scienter. (4 Witkin, Summary of Cal. Law (8th ed. 1974) § 446, p. 2711.) *Burton v. Security Pacific Nat. Bank*, 197 Cal. App. 3d 972, 980 (Cal. Ct. App. 1988).

In this legal and factual circumstance, it is per se unreasonable and unjustifiable for the Plaintiffs to rely on any representation or inference other than those contained in the Employment Contract. None of the Plaintiffs mention that they accepted employment because of they relied on a false promise.[16] Plaintiffs, Russel Aquino, Amalia Balcita, Corazon Domine, Belinda Mendoza, Marla Mateo, Delma Bantillo and Amalia Miranda all made admissions in

---

[13] Declaration of Abellanosa, Joanna (and other plaintiffs) at page 2; ln. 13.
[14] Jack S. Torres presented a declaration in support of L&T's motion in which he testified that all promises made to the Plaintiffs were contained in the Employment Contracts.
[15] 3 CMC §4437(d) Supra,
[16] See declarations filed in support of Opposition to Motion for Summary Judgment.

their depositions that are contrary to the existence of fraud and deceit.[17] Amalia Miranda testified that no one at L&T promised her employment for any length of time but that she expected to work for one year "because it is a contract."[18] The Commonwealth law provides that the Employment Contracts are the ONLY enforceable agreement. None of the Plaintiffs were new to the Commonwealth and it is reasonable for the Court to infer that they understood that the Employment Contracts represented their entire agreement with L&T. Each Plaintiff signed the Employment Contract under penalty of perjury swearing that the terms of the Employment Contract were true and correct. In this context, it would have been unjustifiable for the Plaintiffs to rely on implications, innuendo or even false statements, if they were made. The evidence on record as well as commonsense and experience suggest that the Plaintiffs accepted employment with L&T with the expectation that they and L&T would be bound by the terms of the Employment Contracts.

Finally, there is no evidence in the record that the Plaintiffs were damaged because of the alleged fraud. This is an essential element of fraud to which Plaintiffs presented not a shred of evidence. The Court has no basis to infer that the Plaintiffs suffered a pecuniary loss caused by their justifiable reliance on false promises. Proof of damages must not be speculative. Without evidence of fraud damages, the Court must enter judgment in favor of the Defendant.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendant L&T properly moved for summary judgment on the fifth cause of action titled "Intentional Infliction of Emotional Distress" ("IIED") based on, among other things, an absence of evidence: that L&T intended to cause the Plaintiffs emotional distress; that the behavior of L&T was outrageous; and the failure of Plaintiffs to show that they suffered severe emotional distress. The

---

[17] See Declaration of Colin M. Thompson filed in support of Motion for Summary Judgment ("CMT Decl.") at ¶ 5.
[18] CMT Decl. At ¶ 5.

7

Plaintiffs have failed to support their claim and summary judgment should be granted in favor of L&T and against every plaintiff.

Plaintiffs, in their opposition, have failed to cite a single Commonwealth or Ninth Circuit case dealing with IIED. *See* Verified/Amended Opposition to Defendant's Motion for Summary Judgment and Plaintiffs' Cross Motion for Summary Judgment filed September 29, 2006 at 21-23. They have failed to address the Commonwealth cases cited in Defendant's motion. *See id.*

The cases the Plaintiffs do cite tend to prove L &T's point. In *Richardson* and *McKnight,* each appellate court held proper the trial courts' DENIAL of Plaintiffs' IIED claim. *See Richardson v. Fairbanks North Star Borough*, 705 P. 2d 454, 456-57 (Alaska 1985); *McKnight v. Simpson's Beauty Supply, Inc.,* 358 S.E.2d 107, 109 (N.C.Ct. App. 1987). [19] The Plaintiffs' other cited authority, *Chandler v. Denton,* 741 P.2d 855, (Okla. 1987), involves an interesting probate case wherein an administrator of an estate cross and counter- claimed against his former in-laws, seeking damages for assault, battery, extortion, trespass and a violation of his right to privacy. He alleged they came to his home, kicked in the front door, committed assault and battery and extorted from him a $ 32,000 check by holding a knife to his genitalia and threatening to castrate him if he didn't pay the money. *Chandler,* 741 P.2d at 859-60. *Chandler* is factually distinguishable from the instant case.

The sum of Plaintiffs' argument appears to be that L&T's properly supported motion was somehow "misplaced" and "simply begs the question." Verified/Amended Opposition to Defendant's Motion for Summary Judgment and Plaintiffs' Cross Motion for Summary Judgment filed September 29, 2006 at 21. L&T will not rehash the authority provided to the Court in its previous motions or

---

[19] In quoting from *McKnight*, the Plaintiffs omitted the following language which severely undercuts their assertion: "Which is not to say, of course, that medical testimony is not necessary when the claimed result is an unusual emotional state, not within the common knowledge and experience of laymen, that in itself requires medical diagnosis." *McKnight,* 558 N.E.2d at 109. L & T asserts that, insofar as any Plaintiff has alleged an unusual medical condition, medical testimony is required, and notes that each Plaintiff has failed to identify any expert willing to testify regarding any aspect of any element of any of Plaintiffs' claims.

provided by the Court when it previously dismissed the plaintiffs' claim, other than to reiterate the contention, unaddressed by the Plaintiffs, that they allege nothing more than a business dispute, which, in the CNMI, is not actionable as a claim for emotional distress. "Injuries to one's business are not compensable through an action for the intentional infliction of emotional distress." *Charfauros v. Board of Elections*, 5 N.M.I 188, 203 (1998).

A review of the declarations filed with the Court reveals that the plaintiffs have not alleged facts sufficient to maintain a claim. First, the plaintiffs do not allege conduct that is "outrageous." Generally, they allege that they were: told to report to the Human Resources office, they were given checks, they were told to return company property, and this happened "en masse." It does not appear anything material has been added to their claim since this Court first dismissed the claim. *Compare* Complaint filed March 31, 2005 *with* First Amended Complaint filed October 17, 2005. The Plaintiffs declarations add nothing material. L&T did nothing outrageous, and there was nothing outrageous about the manner in which the employment relationship ended.

Next, Plaintiffs do not submit evidence of L&T's intention to cause any plaintiff any emotional distress. This, too is fatal to their claim.

Third, the plaintiffs do not, and as a matter of law, cannot allege damages severe enough to maintain their claim. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Charfauros*, (*quoting* Comment d. to RESTATEMENT (Second) of Torts §46). There is no admissible evidence in the record of damages severe enough to maintain the claim. L&T made a business decision and acted reasonably when implementing it. A review of the record shows that the plaintiffs allege a breach of contract and are attempting to twist it into a tort. In short, nothing has changed since this Court first dismissed this claim, and Defendant L&T remains entitled to summary judgment on all 76 IIED claims.

**THE SECOND CAUSE OF ACTION**

L&T moved for summary judgment on Plaintiffs' Second Cause of Action Fair Labor Standard Act ("FLSA") claim. Plaintiffs alleged in their Second Cause of Action that "[a]s a result of defendant requiring plaintiffs to pay or provide for their respective physical examination and health clearance fees, said plaintiffs received or were paid less than the minimum wage and overtime wages prescribed under FLSA, MWHA, and the NWA for the respective pay periods."[20] Plaintiffs also allege "[a]lternatively, defendant's acts in requiring plaintiffs to pay or provide said fees and services constitute and are deemed unauthorized deductions from the wages or kickbacks resulting in each plaintiff being paid less than the minimum wage and applicable overtime wage rate."[21] To the extent that Plaintiffs "FLSA claims" relate to the first forty hours or to illegal deductions, the claims are not viable in the Commonwealth. Additionally, the failure of the Plaintiffs to present admissible evidence supporting the elements of these claims mandates the grant of summary judgment in favor of L&T.

This Court ruled previously that the Fair Labor Standards Act does not provide an independent claim for excessive or illegal deductions. "The FLSA does not provide an independent claim for relief based on excessive or illegal deductions."[22]

> A claim for failure to pay adequate overtime compensation based on illegal or excessive deductions is cognizable where such deductions reduce the regular rate of pay and the overtime is then calculated on that reduced wage. 'Where deductions are made from the stipulated wage of an employee, the regular rate of pay is arrived at on the basis of the stipulated wage before any deductions have been made'. 29 C.F.R. §531.37(b). A claim for failure to pay overtime may also be cognizable where deductions are made only in overtime workweeks or where the amount deducted for facilities is increased in overtime workweeks. 'Deductions made only in overtime workweeks, or increases in the prices charged for articles or services during overtime workweeks will be scrutinized to determine whether they are manipulations to evade the overtime requirements of the [FLSA]'. 29 C.F.R. §531.37(a).[23]

---

[20] FAC at ¶ 70
[21] FAC at ¶ 71
[22] *Doe I, et al. v. Advance Textile Corp.*, et al, District Court for the Northern Mariana Islands (Order re: Defendants' Motion to Strike at pg 14; lines 2-3.) (January 21, 2000) (Appended to this Supplemental Reply for the Court's convenience).
[23] Id at 11.

Thus, section 207 of the FLSA does provide a remedy in the Commonwealth when illegal deductions affect overtime wages. However, Plaintiffs have presented no evidence that their overtime pay was reduced due to illegal deductions. Moreover, Plaintiffs produce no evidence that they were ever paid less than $4.58 per overtime hour (the stipulated contract pay times 1.5).

Secondly, because the minimum wage provisions of the FLSA are not applicable to the CNMI,[24] any claim that deductions by defendant affected the minimum wage owed to plaintiffs is controlled exclusively by the Commonwealth law. Plaintiffs did not produce evidence to showing any affect on their overtime pay caused by the alleged illegal deductions. Further, Plaintiffs present no evidence that their overtime premium was calculated on a rate other than the rate stipulated in the Employment Contracts. Finally, Plaintiffs presented no evidence that deductions increased in overtime weeks or were made only in overtime weeks. Assuming, *arguendo*, that the expense of health clearances and medical exams paid by the some plaintiffs prior to employment did constitute an illegal deduction, this one time deduction **could not** affect overtime pay because it did not change the rate of pay and it did not exceed the earnings in the first forty hours of work. The fact is that even if the deductions claimed were illegal, they did not impact the Plaintiffs overtime pay.[25]

Plaintiffs also claim in the Second Cause of Action in the FAC that the medical costs and health clearance fees constituted illegal deductions from their minimum wage in violation of Nonresident Workers Act (NWA) and the Minimum Wage and Hours Act (MWHA). However, Plaintiffs either fail to meet the jurisdictional prerequisite for making this claim or fail to present evidence on an essential element. The NWA provides a mandatory administrative procedure prior to the initiation of a civil action for violations of the NWA and MWHA.

> Notwithstanding 1 CMC § 9112, no civil action may be brought by a nonresident worker against an employer for violation of the Minimum Wage and Hours Act (4 CMC § 9211 et seq.) and/or the Nonresident Workers Act (3 CMC § 4411 et seq.) unless the nonresident worker has first filed a written complaint concerning those violations with the Chief of Labor no later than 30 days after the violation is alleged to have occurred. Said civil action, if any, shall be commenced in any court only after

---

[24] Section 503 of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America.
[25] See declaration of Josephine Autencio filed concurrently with this Supplemental Reply.

the director or his designee, after a hearing, has issued a decision on the complaint favorable to the nonresident worker and the employer fails or refuses to pay any assessment made by the director within 10 days after receiving notification of the director's decision, the entire sum of money that the decision says is owed by the employer to the employee. Such payment shall be made through the director. 3 CMC 4434 (f).

Plaintiffs fail to present evidence of compliance with 3 CMC 4434 (f). The language of the statute is clear "no civil action may be brought" unless the conditions of the statute are met. Without evidence of compliance with this statute, this Court must enter summary judgment on these claims. Accordingly, summary judgment must be entered on Plaintiffs Second Cause of Action.

Alternatively, should the Court disagree the analysis above, the Court must dismiss the Second Cause of Action as to those plaintiffs listed on Exhibit 6 to the FAC. At least 34 of the Plaintiffs did not pay for their health clearances.[26] By their admission, this claim cannot survive summary judgment for these 34 individuals because even if L&T was obligated to pay for the health clearances, these 34 plaintiffs suffered no damage. Plaintiffs' fail in their attempt to construct a theory of liability such that despite the fact that these 34 plaintiffs did not pay for their health clearances or medical exams, L&T is nonetheless liable for breach of contract and violations of FLSA and the NWA. If there was no payment, there can be no inferred deduction-legal or illegal.

Finally, all of the Plaintiffs except Ms. Abellanosa, testified in their declarations that they paid their health clearance fees and medical exam costs **before entering** the Employment Contract. It is clear that L&T's contractual obligations began only after the effective date of the Employment Contracts. If there exists an extra-contractual obligation to pay for the health clearances and medical costs of transfer applicants, then Plaintiffs have failed to establish compliance with 3 CMC 4434 (f) and this Court must dismiss the claim.

//

//

//

## **CONTRACT**

Plaintiffs fail to create a genuine issue of material fact about the validity of the termination. Instead, Plaintiffs try to avoid their responsibility to come forward with evidence and shift to the Defendant the burden to produce evidence. "L&T has failed to make a threshold showing that its termination of Plaintiffs was in fact and reality due to and 'because of economic necessity.'"[27] Plaintiffs also argue, while presenting no evidence, that "L&T's so-called RIF policy and rules were pretextual and not even followed or applied in the RIF/Termination of plaintiffs."[28] Indeed, L&T has met its burden by placing at issue the absence of facts to establish Plaintiffs claims. L&T has offered evidence of its lawful terminations. The Plaintiffs contracts were terminated pursuant to the terms and conditions of The Employment Contracts.[29] The Employment Contracts provide for termination in the event of a "reduction in force due to adverse economic conditions or economic necessity."[30]

> The Ninth Circuit has held that a plaintiff cannot create a genuine issue of pretext to survive a motion for summary judgment by relying solely on unsupported speculations and allegations of discriminatory intent. See *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989) (a bald assertion that a genuine issue of material fact exists does not preclude summary judgment). Rather, a plaintiff must produce "specific, substantial evidence of pretext." See *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 458 (7th Cir. 1999) (to avoid summary judgment, a plaintiff must produce evidence from which a rational trier of fact could infer that the defendant lied about its proffered reasons for failing to promote her or that the reasons had no basis in fact). *Crawford v. MCI Worldcom Communs., Inc.*, 167 F. Supp. 2d 1128, 1135-1136 (D. Cal. 2001)

The Plaintiffs in the instant case have not produced specific substantial evidence of pretext. They produced no probative evidence to show that L&T's stated and sworn reason for terminating the Plaintiffs-a reduction in force- is untrue or unlawful.[31]

---

[26] According to the Exhibit 6 of the First Amended Complaint thirty four plaintiffs did not pay for their health clearances or medical exams.
[27] Plaintiffs' Opposition at p 12; ln. 22-24.
[28] Plaintiffs' Opposition at p 12; ln. 2-4.
[29] JST Decl. at ¶ 30.
[30] JST Decl. at ¶ 30.
[31] "* * * With discharge of employees a normal, lawful legitimate exercise of the prerogative of free management in a free society, the fact of discharge creates no presumption, nor does it furnish the inference that an illegal -- not a proper -- motive

The termination of Plaintiffs contracts was a business judgment. The reason for terminating the Plaintiffs was to reduce the work force in line with declining orders.[32] In 2004, there were 295 employees working as Hand Packager while today there are only 61 Hand Packagers.[33] Orders dropped from an average of 162,729 dozen garments a month to an average of 64,510 dozen garments a month during that same period of time.[34] Courts, including the Ninth Circuit[35], recognize that reduction in force is good cause for termination and will not substitute their judgment for the employer without a strong showing of pretext.

> Thus respondent showed that the parent corporation made a business judgment to reorganize not only its manufacturing but also its marketing operations, the marketing to be conducted by a different division, with the result that appellant's services were no longer needed. This constituted good cause to terminate appellant. (See *Gianaculas v. Trans World Airlines, Inc.* (9th Cir. 1985) 761 F.2d 1391, 1395.) Appellant made no showing to the contrary, that this reason was pretextual or that respondent acted in bad faith toward him; the motion for summary judgment was therefore properly granted. ( *Crosier v. United Parcel Service, Inc.* (1983) 150 Cal.App.3d 1132, 1138-1139, 1140 [198 Cal.Rptr. 361].) *Clutterham v. Coachmen Industries, Inc.,* 169 Cal. App. 3d 1223, 1227 (Cal. Ct. App. 1985)

The Plaintiffs fail to make a strong showing of pretext. Instead the Plaintiffs rely on the Court to deny the summary judgment motion based on weak inferences. For example, "[a] trier of fact could reasonably infer and conclude that the termination was done in bad faith and in contravention of the covenants of good faith and fair dealing"[36] based on purported late notice

---

was its cause. An unlawful purpose is not lightly to be inferred. In the choice between lawful and unlawful motives, the record taken as a whole must present a substantial basis of believable evidence pointing toward the unlawful one." *Lozano Enterprises v. NLRB*, 357 F.2d 500, 503 (9th Cir. 1966) citing *NLRB v. McGahey*, (5th Cir., 1956) 233 F.2d 406, 412.
[32] JST Decl at ¶ 21.
[33] JST Decl at ¶ 28.
[34] JST Decl at ¶ 29.
[35] Coca-Cola made a "business judgment" to sell the coffee portion of its business, eliminating the need for plaintiffs' services. Plaintiffs have made no showing "that this reason was pretextual or that [defendant] acted in bad faith toward [them]." Id. Thus, even if we assume [**10] that plaintiffs created an issue of fact as to the existence of this implied-in-fact employment contract, Coca-Cola's divestiture of its coffee business constitutes the requisite "good cause." *Joanou v. Coca-Cola Co.*, 26 F.3d 96, 99-100 (9th Cir. 1994)

[36] Amended Op at pg 13-14; lines 23-1.

14

to the Department of Labor. This is not material.  How were the Plaintiffs damaged by this event?  Because the evidence before this Court demonstrates L&T's good faith adherence to the terms of the Employment Contracts, summary judgment should be entered.

## CROSS-MOTION

The Court should disregard Plaintiffs purported Cross-motion for Summary Judgment on Affirmative defenses because it was not timely served, notice is improper and the Plaintiffs inadequately establish the basis for their motion.  If the Court is inclined to allow this motion, Defendant's respectfully request additional time to respond and submit evidence.

## CONCLUSION

Based on the foregoing, L&T respectfully requests that the Court grant its Motion for Summary Judgment or, in the alternative, grant Partial Summary Judgment.

Dated this 4th day of October, 2006.

/s/ _____
COLIN M. THOMPSON, ESQ.
Attorney for Defendant