FILED
Clerk
District Court

JAN 2 1 2000

For The Northern Mariana Islands
By _____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| DOES 1, et al., On Behalf of Themselves and All Others Similarly Situated, | ) ) ) | Civil No. 99-0002 |
| Plaintiffs, | ) ) ) | ORDER RE: DEFENDANTS' MOTION TO STRIKE |
| v. | ) ) | |
| ADVANCE TEXTILE CORP., et al., | ) ) | |
| Defendants. | ) ) ) | |

This matter came before the court on November 18, 1999, for hearing on Defendants'

Motion to Strike and to Dismiss Claims,[1] Richard W. Pierce, Stephen J. Nutting, Brian W.

_____

[1]Defendant Advance Textile Corporation's (ATC) motion to strike and to dismiss is joined by defendants United International Corp., Pang Jin Sang SA Corp., Neo Fashion Inc., American Investment Corp., Concorde Manufacturing Corp., Global Manufacturing Inc., L&T International Corp.,and Trans-Asia Garment Forte. In its November 18, 1999 Notice of Order, the court granted ATC's motion to dismiss the claims asserted against ATC by plaintiffs who did not work for ATC for failure to state a claim upon which relief can be granted, as well as similar motions to dismiss filed by defendants American Pacific Textile, Inc., Hansae (Saipan), Inc., Mariana Fashions, Inc., Marianas Garment Manufacturing, Inc., Michigan, Inc., and Top Fashion Corp. The court now addresses defendant ATC's motion to strike or dismiss claims relating to illegal deductions and wages for the first forty hours of work in a workweek.

AO 72
(Rev.8/82)

1   McMahon, David A. Wiseman, Eric S. Smith, G. Anthony Long, Colin Thompson, Joseph Horey

2   and Patrick Swan appeared on behalf of defendants.  Timothy H. Skinner, Pamela Parker, and

3   Michael Rubin appeared on behalf of plaintiffs.

4           Upon consideration of the written and oral argument of counsel, the court GRANTS

5   defendants' motion to strike the allegations and claims related to wages for the first forty hours of

6   work in a workweek, GRANTS defendants' motion to dismiss plaintiffs' claim for violation of

7   § 207 of the Fair Labor Standards Act (FLSA) through illegal and excessive wage deductions,

8   and GRANTS defendants' motion to strike plaintiffs' request for accounting from the Prayer for

9   Relief.  The court GRANTS plaintiffs' request for leave of court to amend their complaint in

10  order to allege facts sufficient to support violation of § 207 of the FLSA through illegal or

11  excessive deductions, if applicable.

12

13

14

15  I.      Standards for Motions to Strike and Motions to Dismiss

16          Fed. R. Civ. P. 12(f) sets forth the standard that courts must apply in considering a motion

17  to strike.  Rule 12(f) provides that upon motion of a party, "the court may order stricken from any

18  pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

19
            "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and
20          money that must arise from litigating spurious issues by dispensing with those
            issues prior to trial...."  (citation omitted).  "'Immaterial' matter is that which has
21          no essential or important relationship to the claim for relief or the defenses being
            pleaded."  (citation omitted).  "'Impertinent' matter consists of statements that do
22          not pertain, and are not necessary, to the issues in question."  (citation omitted).

23  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993).

24

25

26

                                            2

1    Fed. R. Civ. P. 12(b)(6) permits a party to move for dismissal of any claim for "failure to

2    state a claim upon which relief can be granted." The standard for a motion to dismiss for failure

3    to state a claim is as follows:

4
         A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a
5        cognizable legal theory' or 'the absence of sufficient facts alleged under a
         cognizable legal theory.' *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696,
6        966 (9th Cir. 1988).

7
         A court must accept as true all material allegations in the complaint, as well as
8        reasonable inferences to be drawn from them. *NL Industries, Inc. v. Kaplan*, 792
         F.2d 896, 898 (9th Cir. 1986); *see also Russell v. Landrieu*, 621 F.2d 1037, 1039
9        (9th Cir. 1980 (finding that the complaint must be read in the light most favorable
         to the plaintiff). However, a court need not accept as true unreasonable
10       inferences, unwarranted deductions of fact, or conclusory legal allegations cast in
         the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618,
11       624 (9th Cir.), *cert. denied*, 545 U.S. 1031 (1981) (additional citations omitted).

12   Burgerong v. Uvawas, 922 F. Supp. 1450, 1462 (C.D. Cal. 1996).

13

14

15   II.   Allegations and Claims Relating to the First 40 Hours of Work

16       Plaintiffs' First Amended Complaint (Complaint) alleges that defendants violated the

17   FLSA through illegal and excessive wage deductions for food and housing which reduced

18   plaintiffs' regular rate of pay and overtime premiums below the rate defendants were legally

19   obligated to pay. Both the FLSA and CNMI law define wages to include monetary remuneration

20   and remuneration in the form of facilities provided to employees such as board and lodging;[2]

21

22       [2]FLSA § 203(m) provides "'[w]age' paid to any employee includes the reasonable cost, as
23   determined by the Administrator, to the employer of furnishing such employee with board,
     lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by
24   such employer to his employees..." 29 U.S.C. § 203(m). The CNMI Code provides "'[w]age'
     paid to an employee means the legal tender of the United States, or checks on banks convertible
25   into cash on demand at face value, and includes in addition thereto the reasonable cost, as
     determined by the department, to the employer of furnishing an employee with board, lodging or
26   other facilities which are customarily furnished by such employer to his or her employees." 4 N.

deductions are therefore permissible.  However, plaintiffs claim that the defendants used such

deductions to avoid paying the legally required minimum wage and overtime premium and

illegally profited from the deductions.

Defendants move to dismiss or strike the allegations and claims in plaintiffs' Complaint

relating to the alleged failure to pay the legally required wages for the first forty hours of work in

a workweek through excessive and illegal deductions.[3]  Defendants assert that these claims and

allegations refer to a failure to pay minimum wages, and as such are "state law" claims which this

court has determined should be pursued in the local courts for the Commonwealth of the

Northern Mariana Islands (CNMI).  Defendants contend that the minimum wage provisions of the

FLSA, which do not apply in the CNMI, encompass the first forty hours of employment in a

workweek and any claim relating thereto is accordingly a state law claim.

Plaintiffs claim the FLSA provides an independent claim for relief based on excessive

deductions.  Plaintiffs contend that the provisions of the FLSA relating to payment of wages in a

form other than cash apply in the CNMI and that it is only the dollar amount of the minimum

wage set forth in § 206 of the FLSA that is not applicable in the CNMI.

Plaintiffs are incorrect when they state that the FLSA provides an independent claim for

relief based on excessive deductions.  The cases cited by plaintiffs clearly state to the contrary that

a claim based on excessive deductions is a claim for unpaid minimum wages.  *See* Bureerong v.

Uvawas. 922 F. Supp. 1450, 1478 (C.D. Cal. 1996) (improper deductions from wages are

wrongfully withheld wages and may be pursued as a claim for unpaid minimum wages under

---

Mar. I. Code § 9212(g).

[3]Defendants cite the following portions of the Complaint:  ¶ 59. lines 2-3; ¶ 86, line 10; ¶ 88, line 16; ¶ 89, lines 23-26 and 1-4; ¶ 92 [sic]. line 10; ¶ 93, line 25; ¶ 94, line 5; and ¶ 100.

AO 72
(Rev.8/82)

§ 216(b) of the FLSA); Soler v. G & U, Inc., 477 F. Supp. 102, 104 (S.D.N.Y. 1979) (where it is determined that deductions are unreasonable, "then to the extent that such deductions have been made the defendants may be liable to their employees 'in the amount of their unpaid minimum wages.'"). Because it is clear that the FLSA does not provide an independent claim for relief based on excessive deductions, the issue becomes whether the provisions of the FLSA governing wages paid in the form of facilities are part of the FLSA's minimum wage provisions which do not apply in the CNMI.

Section 503 of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (Covenant) states "[t]he following laws of the United States, presently inapplicable to the Trust Territory of the Pacific Islands, will not apply to the Northern Mariana Islands except in the manner and to the extent made applicable to them by the Congress[4] by law after termination of the Trusteeship Agreement: . . . (c) the minimum wage provisions of Section 6 [of the FLSA]." Covenant § 503. Plaintiffs argue that § 503(c) should be interpreted to mean that only the dollar amount of the minimum wage established by the FLSA is not applicable to the CNMI and that the FLSA provisions regarding deductions for facilities are applicable. The language of the Covenant as well as the Covenant's negotiating history supports a conclusion that facilities, to the extent they are part of the minimum wage paid to plaintiffs, are governed by CNMI law and do not present a claim under the FLSA in the CNMI. Plaintiffs' suggested interpretation is too narrow and runs counter to the purpose of vesting legislative authority over minimum wage provisions in the CNMI with the CNMI government.

---

[4]Congress has not acted to make the minimum wage provisions applicable to the CNMI.

5

AO 72
(Rev. 8/82)

The Covenant's exclusion of the CNMI from the minimum wage provisions of the FLSA was based on the disparity in the prevailing economic conditions of the CNMI and the United States.  Such concerns are equally apposite whether they apply to the minimum wage rate of pay or to facilities provided as part of the minimum wage.  The following commentary is provided in the Section-by-Section Analysis of the Covenant to Establish a Commonwealth of the Northern Mariana Islands prepared by the Marianas Political Status Commission (MPSC Analysis):

> After extensive study the MPSC [Marianas Political Status Commission] was convinced that the local economy in the Northern Marianas cannot now support the minimum wage laws which are generally applicable in the United States.  These laws are based on the cost of living and prevailing wage levels in the highly developed American economy. Imposition of these requirements on private employers in the Northern Marianas prematurely might force many employers out of business and contribute to a substantial increase in the cost of living.  The Government of the Northern Marianas will have the authority to set its own minimum wage laws for private employers, as well as for its own employees, if such laws appear appropriate.  These laws -- unlike the Federal laws -- can be adjusted to suit local conditions.

Marianas Political Status Commission, MPSC Analysis § 503(c) (1975).  The analysis prepared by the Senate Committee on Interior and Insular Affairs and by the Administration regarding § 503 of the Covenant similarly states:

> The immediate introduction of [the coastwise] laws into the Northern Mariana Islands may cause serious economic dislocation.  For that reason their introduction should await special scrutiny to be made after the establishment of the Commonwealth.

> The same consideration applies to the introduction of the Minimum Wage Laws (Subsection (c)).  Congress realizes that the special conditions prevailing in the various territories require different treatment....  In these circumstances, it would be inappropriate to introduce the Act [FLSA] to the Northern Mariana Islands without preliminary studies.  There is nothing which would prevent the Northern Mariana Islands from enacting their own Minimum Wage Legislation.

S. Rep. No. 94-433, pp. 65-94 (1975).[5]

---

[5] The Administration Memorandum is inserted into the House of Representatives Hearings: To Approve "The Covenant to Establish the Commonwealth of the Northern Mariana Islands" and for

6

In recognition of the particular circumstances of the CNMI, the local government was given authority to implement its own minimum wage provisions. That such grant of authority includes the power to regulate the minimum wage whether paid in cash or facilities is consistent with the rationale for conferring on the CNMI the authority to implement its own minimum wage legislation.

Moreover, § 502(b) of the Covenant read *in pari materia* with § 503(c) makes it clear that the phrase "minimum wage provisions" in § 503(c) was broader than just the minimum rate of pay. Section 502(b) provides that "[t]he laws of the United States regarding . . . the conditions of employment, including the wages and hours of employees, will apply to the activities of the United States Government and its contractors in the Northern Mariana Islands." Covenant, § 502(b). The Senate Report states "[t]his provision is important because those laws will be generally inapplicable to the Northern Mariana Islands until the Congress undertakes to fully apply these laws to the Northern Mariana Islands as provided in section 503(b) and (c)." S. Rep. No. 94-433, pp. 65-94 (1975). Because the drafters of the Covenant expressly provided that the laws of the United States regarding the "conditions of employment, including wage and hours of employees" would be applicable to the activities of the United States Government within the CNMI, it is clear that they contemplated such provisions as they relate to private employers in the CNMI would be left to the CNMI government to regulate.

---

other Purposes: Hearings before the Subcommittee on Territorial and Insular Affairs of the Committee on Interior and Insular Affairs, House of Representatives, 94th Cong. 626-655 (1975).

AO 72
(Rev.8/82)

The CNMI has implemented its own minimum wage provisions[6] as provided for by the Covenant. The CNMI defines wages to include facilities provided to an employee (4 N. Mar. I. Code § 9212(g)), and has established requirements for an employer to follow in order to make deductions for room and board from an employee's wages (3 N. Mar. I. Code § 4434(c)).[7] Further, the CNMI, through its Department of Labor and Immigration, has promulgated regulations establishing a maximum dollar amount constituting a reasonable deduction for room and board and has provided that all nonresident worker contracts must include an itemization of the deductions from an employee's salary (3 N. Mar. I. Code § 4434(c)) and must be approved by the Chief of Labor (3 N. Mar. I. Code § 4434(a)).

The court concludes that the deductions from wages in the form of facilities are part of the minimum wage provisions of the FLSA that do not apply to the CNMI. The CNMI government has been given authority over its own minimum wage laws and has acted on that authority by establishing a minimum wage rate of pay and requirements for payment of wages in the form of facilities. Any claim that plaintiffs have been deprived of the minimum wage through illegal or

---

[6]"The department shall adopt rules and regulations as are necessary to carry out the purposes of this chapter or to prevent the circumvention or evasion of this chapter and to safeguard the minimum wage rates established.... Such rules and regulations may provide for reasonable deductions from the minimum wage applicable under this chapter for board, lodging or other similar benefits furnished by an employer to his employee." 4 N. Mar. I. Code § 9236.

[7]Plaintiffs argue that the provision of 3 N. Mar. I. Code § 4434(c) requiring that the deductions are "not in violation of any applicable federal or Commonwealth law or regulation promulgated by the director" would be meaningless surplusage unless the CNMI legislature understood that the federal law concerning deductions from wages does in fact apply in the CNMI. As defendants point out, because the CNMI legislature used the qualifier "applicable," an equally valid interpretation is that the CNMI legislature understood that it had the authority to enact its own minimum wage provisions in lieu of the federal provisions and that it acted on that authority by delegating to the CNMI Director of Labor the power to determine the reasonable deductions for facilities. This interpretation is consistent with the language and negotiating history of § 503(c) of the Covenant.

excessive deductions is therefore a local cause of action and such claims were dismissed by this court. Any allegation relating to the first forty hours of work in a workweek are superfluous and not necessary to the resolution of plaintiffs' claims for overtime violations. Accordingly, defendants' motion to strike the allegations and claims insofar as they relate to the first forty hours of employment is granted as to ¶ 59, lines 2-3; ¶ 86, line 10; ¶ 88, line 16; ¶ 91, line 10; and ¶ 94, line 5 of the Complaint.

III.    Claim for Violation of FLSA § 203(m)

Defendants argue that plaintiffs may not assert a claim for violation of FLSA § 203(m),[1] which is the definition of the term "wage." Plaintiffs state that they are making a claim under § 216(b) that the deductions, which plaintiffs allege are unreasonable and therefore violative of § 203(m) and the implementing regulations, were used to deprive plaintiffs of their legally required wages and overtime.

As stated previously, the FLSA does not provide an independent claim for relief based on excessive or illegal deductions. A claim that deductions for board and lodging reduce a plaintiff's wages below the minimum and affect the overtime premium is a violation of § 206 and § 207, respectively. Because plaintiffs' claims that the deductions reduced plaintiffs' wages below the minimum wage are claims for failure to pay minimum wages, they are local claims and have been dismissed by this court. To the extent that plaintiffs contend the deductions for board and lodging affected their overtime wages, plaintiffs may assert a violation of FLSA § 207. Accordingly, the court grants defendants' motion to dismiss the claim for violation of FLSA § 203(m) asserted in

_____

[1] Defendants cite ¶ 89 and ¶ 100 of the Complaint.

9

1  ¶ 89, lines 23 to 26 and ¶ 100 of the Complaint. Plaintiffs are granted leave of court to amend

2  their Complaint to reassert their claims insofar as they constitute a violation of FLSA § 207.

3  However, as discussed below, plaintiffs must sufficiently allege that deductions made by

4  defendants affected their overtime wages.

5

6

7  IV.    Allegations and Claims for Violation of § 207 Relating to Improper Deductions

8          Plaintiffs allege that defendants' deductions for food and housing reduce plaintiffs'

9  overtime premiums and/or the regular rate of pay upon which the overtime is calculated.

10  Defendants argue that plaintiffs' allegations are conclusory and fail to state a § 207 overtime

11  violation based on deductions for food and housing.[9] A claim that the cost of board and lodging

12  improperly affects the overtime wage is cognizable under the FLSA; however, plaintiffs have

13  failed to sufficiently allege such a claim in their Complaint. Plaintiffs have not alleged any facts to

14  show how defendants' deductions for board and lodging affected their overtime premium.

15

16  Plaintiffs' allegations are merely conclusory and thus insufficient to state a claim for failure to pay

17  overtime based on illegal deductions.

18

19

20  [9] Defendants cite ¶¶ 88 to 91 and ¶ 100 of plaintiffs' Complaint. Plaintiffs allege "section
[203(m)] also prohibits defendants from deducting from plaintiffs' wages more than the expenses

21  actually incurred for the housing and board provided and prohibits employers from taking
deductions at all unless plaintiffs knowingly and voluntarily agree to the deductions free of

22  coercion. Defendants have not complied with these obligations." Complaint ¶ 89. "Defendants

23  have violated the overtime provisions of the FLSA, 29 U.S.C. § 207, to the extent they failed to
consider these deductions in calculating plaintiffs' regular rate of pay, thereby reducing plaintiffs'

24  overtime premiums." Complaint ¶ 90. "Defendants make and continue to make these illegal and
excessive deductions for housing and board to avoid paying plaintiffs their full overtime premium.

25  As a result of defendants' common practices and patterns of conduct, plaintiffs are deprived of
the full wages and overtime premiums due to them. Defendants have systematically violated and

26  continue to violate the FLSA in order to profit illegally from plaintiffs' labor." Complaint ¶ 91.

10

AO 72
(Rev. 8/82)

A claim for failure to pay adequate overtime compensation based on illegal or excessive deductions is cognizable where such deductions reduce the regular rate of pay and the overtime is then calculated on that reduced wage.[10]  A claim for failure to pay overtime may also be cognizable where deductions are made only in overtime workweeks or where the amount deducted for facilities is increased in overtime workweeks.[11]

Because plaintiffs are paid a stipulated wage, plaintiffs' overtime premium must be based on that wage.  Plaintiffs, however, have not alleged facts to show that the overtime premium was calculated on a rate other than the stipulated wage.  Plaintiffs only make a conclusory allegation that defendants failed to consider the deductions in calculating plaintiffs' regular rate of pay. Complaint ¶ 90.  Further, plaintiffs have not alleged that the amount deducted for facilities is increased in overtime workweeks or that certain deductions are made only in overtime workweeks.  Plaintiffs have failed to allege any facts that would support a claim for unpaid overtime based on improper deductions from wages.

Plaintiffs further argue that it is too early in the litigation to tell what constitutes plaintiffs' regular rate of pay on which overtime should be calculated and that it is a factual question.  While plaintiffs' contention may be true, it does not aid their argument that the alleged deductions for board and lodging affected overtime premiums.  Deductions can only affect overtime if the

_____

[10]"Where deductions are made from the stipulated wage of an employee, the regular rate of pay is arrived at on the basis of the stipulated wage before any deductions have been made." 29 C.F.R. § 531.37(b).

[11]"Deductions made only in overtime workweeks, or increases in the prices charged for articles or services during overtime workweeks will be scrutinized to determine whether they are manipulations to evade the overtime requirements of the [FLSA]." 29 C.F.R. § 531.37(a).

AO 72
(Rev.8/82)

1  overtime was calculated on plaintiffs' rate of pay after the deductions had been taken or if the

2  deductions exceeded plaintiffs' earnings for the first forty hours of work.[12]  Plaintiffs' Complaint

3  alleges no set of circumstances upon which it could reasonably be inferred that the overtime

4  premiums have been affected by the deductions.

5      Plaintiffs also contend that the deductions exceed the value to plaintiffs and defendants are

6

7  profiting on the deductions, thereby depriving plaintiffs of their full wages and overtime.

8  However, even if true, plaintiffs have stated at most a claim for unpaid minimum wages to the

9  extent of the profit.[13]  Unless the deductions exceed the wages plaintiffs earn in a forty hour

10  workweek, such deductions could not affect the overtime premium because the overtime premium

11  is based on plaintiffs' stipulated wages, whether received in cash or facilities.

12      Because plaintiffs have failed to allege sufficient facts to support their claim for unpaid

13

14  overtime based on improper deductions from wages, dismissal of the overtime claim to the extent

15  it is based on alleged excessive and illegal deductions is proper.  See Balistreri, 901 F.2d at 966.

16  The court therefore grants defendants' motion and dismisses the allegations in ¶ 89, lines 1-4;

17

18

19

20  [12]Plaintiffs allege in ¶ 59 of the "Collective Action Allegations" portion of their Complaint that
the action is brought on behalf of workers "including those workers whose overtime premiums
and/or regular rate of pay were reduced or eliminated by illegal deductions."  Plaintiffs have failed
21  to allege any facts to further support this conclusory allegation.

22  [13]"When [board, lodging, or other facilities] are furnished to the employee at a profit, the
23  deductions from wages in weeks in which no overtime is worked are considered to be illegal only
to the extent that the profit reduces the wage (which includes the "reasonable cost" of the
24  facilities) below the required minimum."  29 C.F.R. § 531.36.  "It is the Administrator's opinion
that deductions may be made...on the same basis in an overtime workweek as in nonovertime
25  workweeks (see § 531.36),...providing the amount deducted does not exceed the amount which
26  could be deducted if the employee had only worked the maximum number of straight-time hours
during the workweek."  29 C.F.R. § 531.37.

12

AO 72
(Rev.8/82)

1   ¶ 90, and ¶ 91 of the Complaint insofar as they purport to assert a claim for failure to pay

2   overtime based on improper deductions.

3

4   V.    Request for Accounting

5

6           Plaintiffs' prayer for relief requests "an order requiring defendants to provide an

7   accounting." Complaint, Prayer for Relief ¶ 3. Defendants argue that the FLSA does not provide

8   for a claim for accounting, nor is it a remedy available under the FLSA. Plaintiffs state that they

9   are not alleging a claim for accounting but are merely requesting the court to direct an accounting

10  to determine the hours worked, a statement of deductions and wages and overtime due.

11  Defendants respond that such information is within the purview of discovery.

12          Accounting is a form of action recognized by early common law courts and later by courts

13  of equity. *See* 1 Dan B. Dobbs, Law of Remedies §4.3(5) (1993). The contemporary law of

14

15  accounting provides three distinct grounds for invoking accounting.[14] *See* id. Because plaintiffs

16  have stated they are not asserting a claim for accounting, the only ground for accounting that may

17  be relevant here is accounting as discovery.

18          A second version of accounting was in effect hardly more than a discovery order,
            originating in equity at a time when discovery was not generally available
19          otherwise. The defendant, once prima facie grounds for accounting was shown,
            was compelled to produce his books or other data needed. In light of extensive
20          modern discovery, this kind of accounting probably has little or no use today.

21

22  Id. Because plaintiffs are essentially requesting information that may be obtained in discovery,

23  plaintiffs' request for accounting in their prayer for relief is unnecessary. Accordingly, the court

24  grants defendants motion to strike ¶ 3 of the Prayer for Relief from the Complaint.

25

26          [14]The three grounds for accounting under modern law are accounting for profits, accounting
        as discovery, and accounting to capture profits and force proof from defendant. Dobbs, *supra*.

13

## VI.    Conclusion

The FLSA does not provide an independent claim for relief based on illegal or excessive deductions. Any such claim based on improper deductions is a claim for unpaid wages under either the minimum wage provisions or the overtime provisions of the FLSA. However, because the minimum wage provisions of the FLSA are not applicable to the CNMI, any claim that deductions by defendants affected the minimum wage owed to plaintiffs is a local claim and has been dismissed by this court. *See* Order Re: Defs.' Mot. to Dismiss Local Claims, Aug. 6, 1999. Further, the allegations and claims are superfluous and unnecessary to the resolution to plaintiffs' overtime claim. Accordingly, defendants' motion to strike the allegations and claims insofar as they relate to the first forty hours of employment is granted as to ¶ 59, lines 2-3; ¶ 86, line 10; ¶ 88, line 16; ¶ 91, line 10; and ¶ 94, line 5 of the Complaint.

Plaintiffs' claims that defendants violated FLSA § 203(m) through illegal and excessive deductions are only cognizable as claims for unpaid minimum wages (§206) or overtime premiums (§207). Accordingly, defendants' motion to dismiss the claims for violation of FLSA § 203(m) asserted in ¶ 89, lines 23 to 26 and ¶ 100 of the Complaint is granted. Plaintiffs are granted leave of court to amend their Complaint to reassert their claims insofar as they constitute a violation of FLSA § 207.

Plaintiffs have asserted a claim for unpaid overtime based on improper deductions. Plaintiffs have failed, however, to allege sufficient facts to support their claim for unpaid overtime based on improper wage deductions. Accordingly, the court grants defendants' motion and dismisses the allegations in ¶ 89, lines 1-4; ¶ 90, and ¶ 91 of the Complaint insofar as they purport to assert a claim for failure to pay overtime based on improper deductions. Plaintiffs are granted

AO 72
(Rev.8/82)

leave to amend their Complaint in order to allege facts sufficient to support violation of § 207 of the FLSA based on illegal or excessive deductions, if applicable.

Plaintiffs also request an accounting in their Prayer for Relief. Because plaintiffs are essentially requesting information that may be obtained in discovery, plaintiffs' request for accounting in their prayer for relief is unnecessary. Accordingly, the court grants defendants' motion to strike ¶ 3 of the Prayer for Relief from the Complaint.

Pursuant to the court's November 18, 1999 Notice of Order, plaintiffs' may amend their Complaint to plead with more particularity the claims asserted against the individual defendants. Plaintiffs' shall have 20 days from the date of this order to amend their Complaint. Plaintiffs may re-file their Complaint using Doe appellations pending the decision of the Ninth Circuit.

IT IS SO ORDERED.

Dated this 21ˢᵗ day of January, 2000.

Alex R. Munson
Judge

AO 72
(Rev.8/82)